**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. 06-60905-CIV-ALTONAGA/TURNOFF

F & G RESEARCH, INC.,

        Plaintiff,

  v.

GOOGLE INC.,

        Defendant.

**GOOGLE INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND FOR ATTORNEYS' FEES**

41063-0039/LEGAL12916558.1

## TABLE OF CONTENTS

                                                          **Page**

I.    INTRODUCTION .................................................................................................... 1

II.   OVERVIEW OF THE MATERIAL FACTS ............................................................ 2

    A.    The Patent in Suit Is Directed to the Use of a Scrolling Computer Mouse ........... 2

    B.    Plaintiff Has Previously Sued and Licensed Computer Mice Manufacturers, Including Logitech .......................................................................... 5

    C.    Plaintiff Asserts That Google Is Liable for Contributory Infringement Because It Sells Software "Compatible" With a Scrolling Mouse ....................... 5

    D.    Google Earth Software Is Generally Distributed for Free, and Will Work With Any Kind of Mouse or Without a Mouse ..................................................... 7

III.  SUMMARY JUDGMENT SHOULD BE GRANTED ........................................... 7

    A.    Summary Judgment Is an Appropriate Remedy ...................................................... 7

    B.    Google Has Not Contributorily Infringed as a Matter of Law ............................... 7

        1.    Contributory Infringement Requires a Direct Infringement ...................... 7

        2.    Contributory Infringement is Limited to Sales .......................................... 9

        3.    There is a Substantial Non-Infringing Use for the Google Earth Software ................................................................................................... 10

IV.  GOOGLE SHOULD BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND COSTS ............................................................................................... 12

    A.    Rule 11 and 35 U.S.C. § 285 Allow the Award of Attorneys' Fees Where a Case Is Frivolous ................................................................................................ 12

    B.    Plaintiff Has Repeatedly Made Frivolous Factual and Legal Assertions ............ 13

V.   CONCLUSION ....................................................................................................... 16

41063-0039/LEGAL12916558.1

## I. INTRODUCTION

This case should never have been filed. Plaintiff sued Google Inc. ("Google") for infringement of a patent directed to a specific type of a computer mouse, called a "scrolling mouse." The Complaint asserts that Google sells "scrolling wheel computer mice." Complaint, ¶ 7. The allegation is frivolous — Google does not sell computer mice. Upon being informed of this fact, plaintiff and its counsel should have dismissed the Complaint. Instead, they filed an Amended Complaint, with a new theory—that Google is liable for "contributory" infringement because it distributes Google Earth software that is "*compatible*" with a scrolling mouse. *See* Amended Complaint, ¶ 7; Plaintiff's Reply to Counterclaim, ¶ 6 ("[I]t is the Google Earth software that is the subject of the patent infringement claim.").

Plaintiff's new theory is equally frivolous. Mere compatibility with an allegedly infringing device does not give rise to liability for patent infringement. If plaintiff were correct, liability for patent infringement would extend far beyond the proper scope of the claimed invention. Instead, the "Federal Circuit [has] made clear that the relevant inquiry [in considering a claim of contributory infringement] is whether there are substantial non-infringing uses for a device, *not whether a device is designed so as to allow infringement of a patented process*." *Universal Electronics, Inc. v. Zenith Electronics Corp.*, 846 F. Supp. 641, 651 (N.D. Ill. 1994) (emphasis added). There is, as a matter of law, a substantial non-infringing use for Google Earth. In fact, there are at least three ways it can be used in a non-infringing manner: (a) it can be used without a mouse; (b) it can be used with a mouse that does not fall within the claims of the patent; and (c) it can be used with a mouse that plaintiff has licensed under the patent. With respect to licensing, plaintiff *admitted* that various computer mouse manufacturers are licensed under the patent, including Logitech, the world's largest maker of computer mice. Because licensed users have authority to use the mice, they are, by definition, not infringing the '229 patent if they use the mouse with Google Earth or any other software. *See* 35 U.S.C. § 271(a) (defining infringement as acts done "without authority"); *Anton/Bauer, Inc. v. PAG, Ltd.*, 329

F.3d 1343, 1350 (Fed. Cir. 2003) ("Therefore if Anton/Bauer's customers have an implied license to practice the patented combination, they cannot infringe the '204 patent, and PAG cannot be liable for either inducement of infringement or contributory infringement."). Plaintiff's widespread licensing of the '229 patent creates a "substantial non-infringing use" for Google Earth that precludes any finding of contributory infringement by Google.

Google should also be awarded its attorneys' fees and costs pursuant to Rule 11 of the Federal Rule of Civil Procedures and/or 35 U.S.C. § 285. Plaintiff and its counsel did not do an adequate pre-filing investigation and, even though they now know or should know that there is no factual or legal basis for a claim of contributory infringement, they refuse to withdraw this case. The Complaint asserts that Google sells computer mice – that allegation is factually frivolous. The Amended Complaint asserts that Google is liable for contributory infringement for distributing software that is "compatible" with the patented computer mouse. As discussed above, that assertion is legally frivolous. Further, plaintiff has made a series of baseless legal arguments.

This motion is supported by the Statement of Undisputed Material Facts and the declarations of Brian McClendon and Ramsey Al-Salam filed herewith. Mr. McClendon confirms that Google Earth is generally distributed for free and can be used with no mouse or any type of mouse, including mice that fall outside the scope of the patent claims. Mr. Al-Salam's declaration confirms: (1) that plaintiff and its counsel, despite repeated requests, refuse to withdraw the claims; (2) Google's compliance with the notice requirements of Rule 11; (3) facts concerning plaintiff's licensees; and (4) the estimated fees that Google has incurred in connection with this motion.

## II. OVERVIEW OF THE MATERIAL FACTS

A. **The Patent in Suit Is Directed to the Use of a Scrolling Computer Mouse**

Plaintiff claims that Google has contributorily infringed United States Patent No. 5,313,229 ("the '229 patent") (copy attached as Exhibit A). The '229 patent is entitled "Mouse

and Method for Concurrent Cursor Position and Scrolling Control," and is directed to a special type of computer mouse, with a "supplementary control" for "scrolling." The Abstract of the Patent, which is intended to provide notice to the public of the subject matter of the patent,[1] reads as follows:

> In a manual input device for controlling a cursor on a computer display (*e.g.*, a mouse) a supplementary proportional control device including a spring-loaded lever displaceable from the equilibrium position in either of two directions and protruding out of the mouse housing is provided for concurrently controlling the scrolling operation. The supplementary control signal is generated in response to operation of a lever designed to be driven by the thumb of the same hand which holds the mouse. The control signal varies according to the displacement amount of the lever from its equilibrium position and the displacement direction and thus is used as a scrolling rate and direction control. An associated method is provided for setting the scroll and direction in correspondence to the dominant axis of the cursor's trail. Detecting an approximately circulator movement of the cursor sets the scrolling axis perpendicular to the screen plane (*i.e.*, in a third dimension).

The remainder of the patent confirms that it relates to a computer mouse. The first five drawings (Figures 1A, 1B, 1C, 2, and 3) illustrate the physical mouse. The remaining drawings show the electrical or algorithmic functionality of the mouse. *See* Exh. A, Figure 6 ("Mouse Driver Computer System"). The description of the alleged invention in the patent specifically states that it relates to a special type of computer mouse:

> The present invention relates to computer input devices which a transducer converts translational motion of a housing into a positional signal for controlling movement of a cursor associated with a visual display . . . .
>
> A mouse, as it has become to be known in the lexicography of the prior art, is a widespread computer input device. . . ."

'229 Patent, col. 1, lns. 6-15.[2]

The "Summary of the Invention" explains that it is directed to a "scrolling mouse":

---

[1] 37 C.F.R. § 1.72 provides that the "purpose of the abstract is to enable the United States Patent Trademark Office and the public generally to determine quickly from a cursory inspection the nature and gist of the technical disclosure."

[2] Citations to the '229 patent are based on the column and line number.

> It is an object of the present invention to extend these limits with a new mouse and associated method for improving its control capabilities while maintaining the ease of use and intuitive operation which has made it so popular.
>
> It is also the object of the present invention to provide an improved mouse designed to take advantage of available skills in contemporary users . . . .
>
> It is a basic object of the present invention to provide a mouse which not only enables the user to drive the cursor over a screen of a display means, but also to smoothly scroll the displayed information. . . .

'229 Patent, col. 30, lns. 25-40.

The patent ends with 17 patent "claims" that are intended to "particularly point out" the invention. 35 U.S.C. § 112. The first 11 claims begin with the word "mouse." Plaintiff has not alleged infringement by Google of any of these claims.

The next five claims, including independent[3] claim 12, claim a "method of operating a computer in an interactive manner." Plaintiff alleges these "method" claims are contributorily infringed by Google. Each of these claims expressly requires the use of a mouse with the patented functionality. The claims require, for example, a "mouse connect[ed] to said computer, said mouse comprising . . . supplementary control means for generating a supplementary control signal of variable sign and magnitude under control of said user . . .; said method comprising generating scrolling commands to move information items or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means by said user. . . ."

The patent makes clear that this "supplementary control signal" is generated by the mouse itself:

> According to the invention the mouse . . . includes a supplementary control means for producing a supplementary control signal from which scrolling commands are derived when the supplementary signals input to a computer. The supplementary control means

---

[3] A "dependent claim" incorporates by reference all of the limitations of the independent claim on which it depends. For that reason, a dependent claim cannot be infringed unless an independent claim on which it depends is also infringed.

> includes a displaceable element movable by a digit of the hand moving the mouse and having a bounded range of displacement amounts.
>
> The supplementary control means can be a lever projecting out of the housing to be operated by the user's thumb. . . ."

'229 patent, col. 3, ln. 55 – col. 4, ln. 3.

The method claims thus all require the use of a scrolling computer mouse, where the scrolling functionality is referred to as the "supplementary control means."[4]

**B.  Plaintiff Has Previously Sued and Licensed Computer Mice Manufacturers, Including Logitech**

Plaintiff has sued major manufacturers and distributors of scrolling computer mice. *See* Al-Salam Decl. (attached as Exhibit B), ¶ 5 (identifying past and pending lawsuits, and nature of defendants' businesses.)  As part of a settlement of those lawsuits, plaintiff has licensed various computer mouse manufacturers, allowing them and their users to use the mice with any software they please.  Plaintiff admitted, in reply to Google's counterclaim, that it has licensed the '229 patent to Logitech, Primax Electronics Ltd., Acco Brands, Inc., Sony Corporation, Spec Research, Inc., and Chicony Electronics Company.  Answer and Countercl. ¶¶ 9, 15, 21, 25, 27, and 31 (alleging licensing of specific companies); Plaintiff's Reply to Countercl. ¶ 2 (admitting the allegations).  One of its licensees, Logitech, purports to be the largest distributor of computer mice in the world.  *See* Al-Salam Decl., ¶ 5; Exh. 2.  Plaintiff admits that users of such mice are licensed under the patent.  *See* Answer and Countercl. ¶¶ 9, 16, 22, 26, 28 and 32 (alleging extension of license to users); Defs. Reply to Counterclaim, ¶ 2 (admitting the allegations).

**C.  Plaintiff Asserts That Google Is Liable for Contributory Infringement Because It Sells Software "Compatible" With a Scrolling Mouse**

The Complaint in this action alleges that Google infringes the '229 patent by "distributing and selling within the United States and/or importing into the United States for sale

---

[4] Google is not seeking to construe the specific terms of the patent as might be necessary in a formal claim construction hearing.  Google simply makes the point that the '229 patent is, without qestion, directed to the use of an allegedly inventive type of scrolling computer mouse.

its various line of scrolling wheel computer mice." Complaint ¶ 7. These allegations are factually baseless – Google has never been in the business of selling or importing *any* computer mice, much less the specific scrolling mice claimed by the '229 patent.

Rather than immediately moving to dismiss the Complaint and seeking its attorneys' fees and costs, however, Google attempted to resolve the issue in a reasonable manner without the need for such a motion. Google's in-house counsel called plaintiff's counsel, and explained that he must have made a mistake, because Google does not sell computer mice. Al-Salam Decl. ¶ 2. At that point, plaintiff and its counsel should have admitted their mistake, and withdrawn the lawsuit. Instead, they amended the Complaint to assert the contrived theory that Google is liable for "willful and deliberately infringing the '229 patent by distributing within the United States, software *compatible* with the scrolling mouse of the '229 patent." Amended Compl. ¶ 7 (emphasis added).

They explain their theory in the Joint Discovery Plan and Schedule, where they note that the specific software at issue is Google's Google Earth software:

> The Complaint charges Google with contributory infringement under 35 U.S.C. ¶ 271(c). Contributory infringement is defined by statute as the manufacture, use, offer to sell or sale of a "material or apparatus for use in practicing a patented process, constituting a material part of the invention. . . (this is the Google Earth software product, not the mouse, as alleged in the Amended Complaint, ¶7. Google distributes software that is used with the mouse) shall be liable as a contributory infringer" (parenthetical added). The scrolling mouse is not the material part of the claimed invention in the method claim, claimed to be infringed, as a non-scrolling mouse, e.g., can be used to practice the claimed method invention as long as the mouse has a control to initial [sic] the patented process embodied in the software. Further, in order to avoid infringement, the defendant has the burden of showing, under the statute, which can be rebutted by F&G, that the software is a staple article of commerce suitable for non-infringing use. This is an issue of fact which bars summary judgment of non-infringement, per se, as promulgated by Google, infra.

Statement at 1-2. *See also* Pl. Reply to Countercl. ¶ 7.[5]

---

[5] Plaintiff also alleges in its Amended Complaint that Google has induced infringement of the '229 patent under 35 U.S.C. § 271(b). Am. Compl., ¶ 12. In order to succeed on a claim of inducement of infringement under 35 U.S.C. § 271(b), the plaintiff must establish "first that there has been direct infringement," and "second, that the alleged infringer *knowingly induced infringement and possessed specific intent to encourage another's*

D.   **Google Earth Software Is Generally Distributed for Free, and Will Work With Any Kind of Mouse or Without a Mouse.**

Google Earth software is a computer program that allows users to navigate through satellite images of the Earth by issuing commands to the software. McClendon Decl. (attached as Exhibit C), ¶ 3. Google offers the Google Earth software through its website, http://www.earth.google.com. McClendon Decl. ¶ 2. Google *does not charge users* to use Google Earth software. Id. Google also offers, however, enhanced versions of Google Earth titled "Google Earth Plus" and "Google Earth Pro." Google charges a fee for both the Plus and Pro versions.[6] *Id.* Users can access the features of the program with both scrolling and non-scrolling mice, or even without a mouse, by using keyboard commands. *Id.,* ¶¶4-5.

### III.   SUMMARY JUDGMENT SHOULD BE GRANTED

A.   **Summary Judgment Is an Appropriate Remedy**

"Summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 753 F.2d 1557, 1561 (Fed. Cir. 1988). Indeed, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986), *quoting* Fed. R. Civ. P. 1.

---

*infringement.*" *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304-05 (Fed.Cir.2002) (citations omitted)(emphasis added). Moreover, the alleged inducer must know of the patent and specifically intend the infringement. *DSU Med. Corp. v. JMS Co. Ltd.*, 2006 WL 3615056 *7-9 (Fed.Cir., Dec. 13, 2006) (en banc). Allegations that the alleged inducer merely sold a product capable of infringing and non-infringing use are insufficient as a matter of law. *Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1276 n.6 (Fed.Cir.,2004) ("sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement."). The accused inducer must take "active steps" to encourage infringement. *Id.* In plaintiff's Reply to Google's counterclaim of non-infringement, plaintiff concedes that it is unaware of any action or active steps by Google to induce users of its software to use unlicensed scrolling mice. Answer and Countercl. ¶ 37; Def.'s Reply to Countercl. ¶ 2. Based on this admission and plaintiff's omission of inducement of infringement in its Reply and its Statement of the Case in the Joint Discovery Plan and Schedule, plaintiff appears to have properly abandoned its inducement claim against Google.

[6] Because the navigation functionality for each version is materially the same, Google will not distinguish them herein.

### B.     Google Has Not Contributorily Infringed as a Matter of Law

#### 1.     Contributory Infringement Requires a Direct Infringement

"Under a theory of indirect infringement, [plaintiff] must first prove that [Google's] actions led to direct infringement of the ['229] Patent." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) (granting summary judgment because, in part, plaintiff could point to no specific instances of direct infringement, or any category of infringers that necessarily were infringing); s*ee also Aro Mfg. Co. v. Convertible Top Replacement*, 377 U.S. 476, 482, 84 S. Ct. 1526, 12 L. Ed. 2d 457 (1964) ("[I]t is settled that if there is no *direct* infringement of a patent there can be no *contributory* infringement.") (Emphasis in original.)

Direct infringement of a patent occurs when a party makes, uses, sells, offers for sale, or imports into the United States an infringing product, or practices a patented method in the United States.  See 35 U.S.C. § 271(a); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995), *aff'd* 517 U.S. 370, 116 S. Ct. 1384 (1996) (affirming JMOL of non-infringement because defendant's system did not maintain an "inventory" of clothing). Direct infringement of a method of claim (the only claims alleged to be infringed in the instant case) requires that an entity perform every step of the claimed method. *See Faroudja Laboratories, Inc. v. Dwin Electronic Co. Inc.,* 1999 W.L. 111788 (N.D. Cal. 1999) ("[I]nfringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim.") (granting summary judgment of non-infringement). Further, a method claim is not directly infringed by the sale of an apparatus or product that performs some steps of a method. *See Mendenhall v. Cedarrapids, Inc.*, 5 F.3d 1557, 1579 (Fed. Cir. 1993) ("[T]he sale of equipment to perform a process is not a direct infringement of the process within the meaning of § 271(a)").

Plaintiff has admitted that it has licensed the '229 patent to numerous mouse manufacturers, and that the license extends to the users of those mice. A user of a licensed mouse is, obviously, not directly infringing the '229 patent. *See* 35 U.S.C. § 271 ("whoever, *without authority*, makes, uses, offers to sell, or sells any patented invention . . . infringes the

patent") (emphasis added); *see also Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003) ("Therefore if Anton/Bauer's customers have an implied license to practice the patented combination, they cannot infringe the '204 patent, and PAG cannot be liable for either inducement of infringement or contributory infringement").[7] Accordingly, plaintiff can make no claim for infringement (whether direct or indirect) in connection with users of licensed computer mice.

### 2. Contributory Infringement is Limited to Sales

In addition to proving that Googles' actions led to direct infringement, plaintiff, to establish contributory infringement

> must prove four elements: (1) the defendant sold a component or material for use in practicing the patented method; (2) the component or material constitutes a material part of the invention; (3) the defendant knew that the item it sold was especially made or adapted for use in infringing the patented method; and (4) the item sold is not a staple article or commodity of commerce suitable for substantial non-infringing use.

*Sandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp 2d 1327, 1331 (N.D. Cal. 2000).[8] The first element requires proof of a *sale*. This is consistent with the statute, which provides that contributory infringement occurs where the defendant "offers to sell or sells within the United States or imports into the United States . . . a material or apparatus for use in practicing a

---

[7] In *Anton/Bauer*, the Federal Circuit, in reversing an issuance of preliminary injunction, held that the plaintiff, by selling a "female plate" for use in a battery pack, had provided an implied license to its customers to use the plate with male plates sold by third parties. The court held that a patentee "grants an implied license to a purchaser when (1) the patentee sells an article that has no non-infringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred." 329 F.3d at 1350. Because the customers had an implied license to use the female plate, the court held they could not "infringe the '204 patent, and [the defendant thus] cannot be liable for either inducement of infringement or contributory infringement." *Id.* In the instant case, there is no need to prove that plaintiff has provided an implied license—it has admitted to providing *express licenses* to users of computer mice.

[8] In the Joint Discovery Plan, plaintiff asserts that *Google* "has the burden of showing, under this statute . . . that the software is a staple article of commerce suitable for non-infringing use." Again, as with many of plaintiff's allegations, there is no support for this position. Plaintiff has the burden of proving infringement, including the absence of a substantial non-infringing use for the Google Earth software. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004) ("[Plaintiff] must show that Peterson's components have no substantial non-infringing uses.").

patented process. . . ." As discussed above, and as is evident from visiting the Google website (www.earth.google.com), the Google Earth software is available for *free*.

### 3. There is a Substantial Non-Infringing Use for the Google Earth Software

Further, Google Earth is not especially "made or adapted for use in infringing" the patented method. On the contrary, Google Earth is "suitable for substantial non-infringing use." The substantial non-infringing uses for Google Earth are a sufficient basis for the grant of summary judgment, and are a basis for which plaintiff cannot plausibly argue that it needs discovery.[9]

The fact that an article might be used to infringe a patent is insufficient to establish contributory infringement: "a sale of an article which, though adapted to an infringing use, is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer." *Henry v. A.B. Dick Co.*, 224 US 1, 48 (1912); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 104 S. Ct. 774 (1984) (holding that Sony was not liable for distribution of its Betamax recorder, even if it could be used for infringement, because "sale of an article which though adapted to infringing use is also adapted to other and lawful uses, is not enough to make the seller [and] infringer."); *U.S. Indus., Inc. v. Otis Engineering Corp*, 277 F.2d 282, 290 (5th Cir 1960) (where specific valves had non-infringing "utility, the manufacturer is entitled to make, sell, distribute and install them without regard to whether they will or might be used in [an infringing manner]").

Courts have consistently granted summary judgment where the product has a substantial non-infringing use. In *Universal Electronics, Inc. v. Zenith Electronics Corporation*, 846 F. Supp. 641 (N.D. Ill. 1994), for example, the alleged infringer, Universal, moved for summary judgment of non-infringement claiming that its products—remote controls—were capable of substantial non-infringing uses. Universal's remote control was designed to operate different electrical devices, including some devices patented by Zenith. Zenith claimed that Universal

---

[9] Plaintiff cannot assert that it needs discovery about its own licenses, or how the Google Earth software performs.

contributorily infringed Zenith's patents because a user could use the remote control with Zenith's patented devices. *Id.* at 651. In other words, Zenith alleged that Universal contributorily infringed because the Universal remote control was "compatible" with Zenith's patented devices.

The court rejected Zenith's arguments, and granted summary judgment that Universal's remote control was capable of substantial non-infringing uses. *Id.* at 651-52. The court concluded the remote control could be used to operate electronic devices not manufactured by Zenith, and therefore infringement was not "inevitable." *Id.* at 651. The court noted that the "Federal Circuit [has] made clear that the relevant inquiry is whether there are substantial non-infringing uses for a device, not whether a device is designed so as to allow infringement of a patented process." *Id.* at 651. The court held that "there is no genuine issue of material fact that the Universal transmitter remotes have substantial non-infringing uses and that these remotes can operate many electronic devices not manufactured by Zenith." *Id.* at 652; *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed. Cir. 2004) (affirming summary judgment that defendant was not liable for contributory infringement "because their products are all capable of substantial non-infringing uses").

The reasoning applies with equal force in this case. Google Earth does not need to be used with a computer mouse and can be used with a non-scrolling mouse.[10] These uses are, in themselves, substantial non-infringing uses. In addition, plaintiff admits that it has licensed the '229 patent to a significant number of producers of scrolling mice. In fact, plaintiff has licensed the '229 patent to Logitech, which is the world's largest mouse manufacturer. Al-Salam Decl., Exh. 3. Licensed uses are, by definition, non-infringing uses. As such, any and all uses of a licensed mouse with the Google software constitutes a non-infringing use.

The fact that the software is "compatible" with an infringing mouse is irrelevant if it is also "compatible" with non-infringing, licensed mice. Indeed, plaintiff's theory of contributory

---

[10] The '229 patent concedes that the invention did not invent computer mice in general. They allegedly invented a mouse with a "supplementary control" for scrolling.

infringement is inconsistent with common sense, and reflects an unsupportable attempt to extend its patent to products that plaintiff did not invent. Plaintiff did not invent all software that is merely "compatible" with any type of computer mouse and its alleged patent rights cannot be extended to cover all such software.

In *Universal Electronics*, the court held that remote controls that worked with different devices, both patented and unpatented, had a substantial non-infringing use as a matter of law. Similarly, Google Earth works with non-infringing, including licensed, mice. For that reason, Google's software has substantial non-infringing uses as a matter of law.

### IV.     GOOGLE SHOULD BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND COSTS

#### A.     Rule 11 and 35 U.S.C. § 285 Allow the Award of Attorneys' Fees Where a Case Is Frivolous

Google should be awarded its reasonable attorneys' fees and costs in having to bring this motion. Such attorneys' fees and costs are available under Rule 11 of the Federal Rules of Civil Procedure and/or 35 U.S.C. § 285. Rule 11 imposes specific requirements in the patent litigation context. *See, e.g., View Egg's. Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Prior to filing a complaint for infringement, Rule 11 requires an attorney to (1) apply the claims of each asserted patent to the accused device, and (2) satisfy himself that a proper construction of the claims permits an argument that each element of the claims appears in the accused devices. *See id.* at 986; *see also, Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (mere belief that a device infringes does not constitute a reasonable pre-filing investigation).

Further, under the patent laws, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285. The types of conduct which may form a basis for finding a case exceptional include "vexatious or unjustified litigation, and frivolous suits." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 376 (Fed. Cir. 1994).

When a claim is "clearly hopeless and unquestionably without any possible basis in fact or law," the court has discretion to award attorneys' fees. *Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331, 335 (Fed. Cir. 1984). Further, "the filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless, constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285." *Phonometrics, Inc. V. Choice Hotels Int'l, Inc.*, 186 F. Supp. 2d 1231, 1232-1233 (S.D. Fla. 2002), *aff'd*, 65 Fed. App. 284, 2003 WL 2008126 (Fed. Cir. 2003); *see also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("Where as here, the patentee is manifestly unreasonable in asserting infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.").

This case meets the standards above.

**B.    Plaintiff Has Repeatedly Made Frivolous Factual and Legal Assertions**

Plaintiff's pleadings and allegations in this case are rife with frivolous factual and legal assertions. The Complaint includes the frivolous factual assertion that Google is selling computer mice. Plaintiff had no reasonable basis for that assertion which, in itself, is a sufficient basis for sanctions. At a minimum, when plaintiff and its counsel realized that Google does not sell computer mice, they should have dropped the lawsuit. Instead, they asserted a frivolous legal argument—that Google is liable for contributory infringement by selling "compatible" software. Amended Compl. ¶ 7. As discussed above, that theory makes no sense. So long as a product has a substantial non-infringing use, the provider of that product cannot be liable for contributory infringement.

This was not the only misstatement of the law. In the Joint Discovery Plan, plaintiff also asserts "the defendant has the burden of showing . . . that the software is a staple article of commerce suitable for non-infringing use." Again, this is a not true. Plaintiff has the burden of proving the absence of any substantial non-infringing use for the Google Earth software. *See*

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004) ("[Plaintiff] must show that Peterson's components have no substantial non-infringing uses."); *see also Sandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp. 2d 1327, 1331 (N.D. Cal. 2000).

Plaintiff also asserts another theory in the Joint Discovery Plan and its Reply to Google's counterclaims (¶ 8) – that 35 U.S.C. § 271(d) provides that it can assert contributory infringement even if it has licensed the alleged direct infringer. In particular, plaintiff asserts that under 271(d), a "license to use a (scrolling) mouse to perform the patented process does not relieve the contributory infringer of liability where the material part of the invention claimed is the software embodying the method steps." *Id.* Again, plaintiff's theory is baseless, and reflects a serious misunderstanding of patent law. Section 271(d) relates solely to patent *misuse.* This is made clear in both the legislative history and the interpretation of the statute. *See Aro Mfg. Co. v. Convertible Top Replacement Co*, 365 U.S. 336, 349 n.4, 81 S. Ct. 599, 5 L. Ed. 2d 592 (1961) ("*Aro I")* ("[35 U.S.C. § 271(d)] was designed specifically to prevent the *Mercoid* [320 U.S. 661] case from being interpreted to mean that any effort to enforce a patent against a contributory infringer in itself constitutes a forfeiture of patent rights . . . ."); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 492, 12 L. Ed. 2d 457, 84 S. Ct. 1526 (1964) (*Aro II*) (discussion of statutory purpose of "overruling any blanket invalidation of the [contributory infringement] doctrine that could be found in the Mercoid opinions"). The statute merely provides that no "patent owner *otherwise entitled to relief* for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following . . . ." (emphasis added). The statute has no effect on whether licensing computer hardware or devices such as computer mice, creates a substantial non-infringing use for the software with which it is used — it clearly does.

Further, plaintiff brought this suit without any evidence of the three other elements for proving contributory infringement: a) direct infringement (i.e., that a user that had purchased the Google Earth software was using it with an infringing mouse); b) Google's knowledge of the

patent; and, c) Google's knowledge that its software was being used with unlicensed mice. Plaintiff filed this suit, and filed an amended complaint asserting contributory infringement, without any evidence of direct infringement. In particular, plaintiff has no evidence that any purchaser of Google's Google Earth software has ever used it with an unlicensed, infringing scrolling mouse.

In addition, contributory infringement requires that the infringer knew of the patent, and knew its product would be used to infringe the patent. In *Aro II,* for example, a manufacturer of replacement tops for convertibles was accused of contributory infringement. The manufacturer made tops that fit both General Motors and Ford automobiles. General Motors had a license to the patent, and the Court held that the manufacturer had no liability for sales for General Motors cars. 377 U.S. at 484. With respect to tops made especially for Ford cars, the court held that there was no liability unless the manufacturer *knew* that Ford was not licensed under the patent:

> It is only a sale of a component of a patented combination '*knowing* the same to be especially made or especially adapted for use in an infringement of such patent' that is contributory infringement under the statute.
>
> Was Aro 'knowing' within the statutory meaning because—as it admits, and as the lower courts found—it knew that its replacement fabrics were specially designed for use in the 1952-54 Ford convertible tops and were not suitable for other use? Or does the statute require a further showing that Aro knew that the tops were patented, and knew also that Ford was not licensed under the patent so that *any* fabric replacement by a Ford car owner constituted infringement?
>
> On this question, a majority of the Court is of the view that § 271(c) does require a showing that the alleged contributory infringer "knew that the combination for which his component was especially designed was both patented and infringing."

377 U.S. at 488 (emphasis in original, footnote omitted).

The Court held that the defendant did not have sufficient knowledge to contributorily infringe until it received a letter in which the plaintiff specifically stated that Ford was unlicensed. 377 U.S. at 490-91.

Plaintiff filed this case without any evidence that Google knew of the '229 patent (e.g., plaintiff did not put Google on notice of the patent). At least as important, plaintiff cannot prove that Google knew that its software was being used by purchasers with an infringing (i.e., unlicensed) mouse. Indeed, Google cannot determine what type of mouse users employ with the software. Even if users informed Google of the type of mouse they were using, Google could not determine if that mouse was licensed.[11] In these circumstances, Google cannot be liable for contributory infringement.

For these reasons, Google should be awarded its reasonable attorneys' fees and costs. Mr. Al-Salam's declaration provides an estimate of such costs.

## V.   CONCLUSION

For the reasons set forth above, the Court should grant summary judgment to Google and dismiss the Amended Complaint with prejudice. Google should also be awarded its reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 11 and/or 35 U.S.C. § 285.

---

[11] Plaintiff has admitted, in its pleadings, that it has never identified to Google what brands or manufacturers of scrolling mice are not licensed under the '229 patent, and has never identified to Google any users of Google software that are using the software with an unlicensed mouse. *See* Google Countercl., ¶¶ 34, 35; Plaintiff Reply, ¶ 2 (admitting relevant allegations of counterclaim).

Dated: December 19, 2006

Respectfully Submitted,

FELDMAN GALE, P.A.

/s/ Gregory L. Hillyer
Gregory L. Hillyer
Florida Bar No. 682489
Email: ghillyer@feldmangale.com
Miami Center, Suite 1920
201 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305-358-5001
Facsimile: 305-358-3309

-AND-

PERKINS COIE LLP
Ramsey M. Al-Salam, *Pro Hac Vice*
Email: ralsalam@perkinscoie.com
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendant Google Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2006, I electronically filed the foregoing document, including the Declarations of Ramsey M. Al-Salam and Brian McClendon, with the Clerk of the Court using CM/EFC. I also certify that the document listed above are being served this day on Allen D. Brufsky, Esq., Christopher & Weisberg, P.A., 200 East Las Olas Boulevard, Suite 2040, Ft. Lauderdale, Florida 33301, via transmission of Notices of Electronic Filing generated by CM/ECF.

_____/s/ Gregory L. Hillyer_____