UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 06-60905-CIV-ALTONAGA/Turnoff

F & G RESEARCH, INC.,

        Plaintiff,

vs.

GOOGLE INC.,

        Defendant.

### F & G RESEARCH, INC.'S OPPOSITION AND INCORPORATED MEMORANDUM OF LAW TO DEFENDANT GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEYS FEES

Plaintiff F&G Research, Inc. ("F&G") submits this memorandum in opposition to Defendant Google Inc.'s ("Google") Motion for Summary Judgment and for Attorneys' Fees under Federal Rules of Civil Procedure 11 and 56 and 35 U.S.C. § 285. F&G alleges that Google infringes its patent-in-suit directly *and* indirectly (both induced and contributory). Google moves for summary judgment only on contributory infringement, which will not dispose of all the issues in this case. That is, Google moves for *partial* summary judgment; and it does so while stating that it does not seek construction of the claim, which construction precedent dictates is necessary. Despite this, Google seeks sanctions. Google ignored F&G's letters and emails articulating its claims of direct and indirect infringement. Its brief also ignores those claims. And Google's contributory infringement argument is riddled with fact issues that require (at a minimum) discovery. No discovery has been taken. Google's motion should be denied.

1

## SUMMARY

Defendant Google makes, uses, sells, and offers for sale software that directly and indirectly infringes plaintiff F&G's patent-in-suit. Despite seeking sanctions, however, Defendant does *not* move for summary judgment on direct infringement or induced (indirect) infringement. F&G repeatedly explained to Defendant the bases for its infringement claims. F&G repeatedly proposed merit-based mediation with the parties' agreed-to mediator. Defendant ignored correspondence about the claims and refused mediation. Instead, it filed the instant motion that also does not address the claims.

**Defendant develops, makes, uses, sells and offers to sell software that performs two material parts of the patented method.** Google's product developers, employees and customers perform the patented method. Google knows about the patented method and intentionally directs its customers to perform the patented method. That is direct *and* indirect – both contributory *and* induced – patent infringement. Defendant's motion should be denied for at least the following reasons:

- ➢ Google did not ask the Court to construe the asserted claim as is required to adjudicate infringement.

- ➢ Defendant's contributory infringement arguments raise several genuine disputes of material fact, including, for example, whether: (1) infringing equivalents exist; (2) substantial non-infringing uses exist, (3) Google Earth generates advertising revenue despite "generally free" distribution, and (4) Google or Google Earth users have implied licenses where a licensed mouse is used.

- ➢ Those fact issues require discovery. So do facts necessary for the Court's construction of two claim elements that Google itself admits need to be construed in this case.

- ➢ Google attempts to dismiss F&G's induced infringement claim in a footnote. Why? Google knows liability for induced infringement does not permit it to advance non-infringing uses as a defense. Rather than take on this defeating precedent, Google feints. But Google instructs Google Earth users to use its software with a scrolling mouse and structures that F&G contends are equivalent and therefore infringing. That's intent, it's induced infringement, and Google should <u>not</u> be permitted to escape liability with a footnote.

➢ Defendant's Rule 11 and Section 285 motion should be denied because (1) Google's motion does not dispose of all F&G's claims, (2) rule 56(f) discovery is required, (3) genuine disputes of material fact exist, (4) Google ignores contradictory precedent, (5) Google failed to respond to F&G's correspondence, and (6) Google's Rule 11 notice is not perfected.

(Since Defendant's motion only addresses contributory infringement, F&G need not oppose its motion with regard to direct or induced infringement. Consequently, F&G's statements in this brief regarding its direct and induced infringement claims are made solely for the purpose of opposing Defendant's Rule 11 and Section 285 motion, though some fact issues are common to induced and contributory infringement, as shown below.)

## FACTS

Plaintiff F&G owns United States Patent No. 5,313,229 ("the 229 patent") and asserts that Google infringes Claim 12.  GoogleEx.[1] A. F&G invented and patented a scrolling mouse (e.g., claim1 ).   It also patented a method of use of **the scrolling mouse** or **any equivalent mouse or other device, such as a keyboard**, which provides the function as stated in the **claim preamble** of initiating and performing the method steps (which, F&G claims can be embodied in the mouse, keyboard **or** software; i.e., the scrolling function is in the software, not the mouse which initiates the software).  Google proposes construction of both of the claim elements, i.e., a

---

[1] "GooglEx." means exhibits to Google's opening brief; "Br." means Google's opening brief; "Ex." means exhibits attached to this opposition brief.  Claim 12 states that the invention consists of a "Method of operating a computer in an interactive manner by a user, said computer including a display means and a mouse connected to said computer, said mouse comprising means for generating x-y incremental movement for positioning a cursor at any of a plurality of positions displayed on said display means during interactive operation, binary control means for generating binary control commands for said computer, supplementary control means for generating a supplementary control signal of variable sign and magnitude under control of said user, and communication means for transmitting said movement information and said binary control information to said computer, programmable circuit means in said computer for generating said display means, said display means including display areas accessible by said cursor for triggering execution of scrolling commands on receipt of said binary control commands, while said cursor is positioned on said predetermined display areas; said method comprising generating scrolling commands to move information items or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means by said user, said method including generating of said scrolling commands including the steps of a) analyzing a trail of said cursor at periodic intervals; b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals; c) according to the status variable determined in step b), setting  a scrolling axis to a direction option, said direction options including an up-down option; a left-right option; and a in-out option; and d) scrolling in a scrolling direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal and the status of said status variable.

mouse and the display means and what their function is. A Copy of a letter from Google's counsel as to necessary claim construction, dated December 22, 2006, is attached hereto as **Exhibit 8**.

Google developed and makes, uses, sells, and offers for sale three versions of Google Earth, (a software program for viewing various earth locations). *See* <www.google.com>; GooglEx. C. Google Earth has a display means that is its viewing area. *Id.* A user manipulates a cursor in the Google Earth display means with a scrolling means. Google Earth infringes. Google infringes. Google's users infringe. Google's employees infringe. Google knows about F&G's patent. Google contributorily infringes. Google intentionally instructs users to infringe. *See* Excerpts from Google Earth user manual attached hereto as **Exhibit 9**. Google induces infringement. Google Earth users frequently blog the necessary use of scrolling mice to achieve the desired functionality of the software. See a series of blogs on the "scroll wheel zooming" employed in the Google Earth Software, attached hereto as **Exhibit 10**. (Oddly, Google's proposed claim construction terms say nothing about computer mice. Ex. 8.)

F&G repeatedly gave Google its infringement analysis and sought to license Google as it has other software manufacturers. *See* a copy of F&G's infringement analysis position sent to Google via email on July 31, 2006, attached hereto as **Exhibit 1**. F&G repeatedly sent claim charts showing the infringement. *See* a copy of an email sent to Google attaching claim charts on July 5th and again on July 19th, 2006, attached hereto as **Exhibit 2**. Google did not substantively respond to the merits of F&G's infringement claims; but instead gave an overall rejection. *See* Google's response via email, to F&G's infringement analysis position on July 31, 2006, attached hereto as **Exhibit 3**. Again, on August 17, 2006, F&G forwarded an email to

Google, further outlining its position and attaching a revised claim chart re: Infringement Analysis: Google Earth Software, attached hereto as **Exhibit 4**. Google did not respond.

F&G's Amended Complaint alleges direct, contributory, and induced patent infringement. *See also* Exhibits 1, 2, and 4. Defendant has notice of F&G's three bases for charging patent infringement. On July 31, 2006, F&G wrote (Ex. 1):

> This email follows our previous telephone conversations during which you set out Google's initial position regarding F&G's patent infringement claim. It is our understand that Google believes it can not be held liable for contributory or inducement to patent infringement for two reasons. First, Google alleges that, because it has licensed the '229 Patent, users of licensed mouse products can not directly infringe any of the claims of the '229 patent. You assert that, as a result, there can be no contributory infringement. Second, Google alleges that because there are licensed users, there are substantial non-infringing uses so there can be no contributory infringement even by unlicensed users. We have considered, but do not agree with either position.
>
> With respect to the first item, while F&G's licensees have the right to manufacture products covered by the '229 patent, and end-users have a right to use the manufactured mouse products, this license does not extend to the right to use the mouse to operate unlicensed software. In other words, although there are situations where a user is licensed to use the hardware, one can not go so far as to imply that this right extends to the operation of software that, by its use, practices a method claimed in the '229 patent. It is beyond dispute that the use of the licensed mouse is not necessary to perform the patented method (there are non-licensed mouse products that perform the patented method in connection with the Google Earth program). Therefore, any license of that mouse device is irrelevant. Just because use of the mouse can incidentally or accidentally perform and interact with the Google Earth method and operate the software is proof that the method as embodied in the software infringes as long as there is some control function in the mouse. To conclude otherwise flies in the face of both case law and logic because your position will allow any software vendor the unimpeded right to offer software that practices a claimed method simply because an end-user is licensed to use the underlying hardware. Your imputation of rights to Google goes too far because this logic denies the patentee of its right to collect a reasonable royalty from the infringing third party software developer.
>
> With respect to Google's second allegation, we believe it is missing the point. The analysis regarding whether there are substantial non-

> infringing uses is not applied to the mouse or whether a given mouse is licensed, it is applied to the Google Earth ("GE") software product standing alone. In that regard, there is little doubt that GE is used in conjunction with a mouse. Raising the specter of possibility that the GE software can be used in other manners, such as without a mouse, is not enough to obtain a finding that there are substantial non-infringing uses. As such, we do not believe there are any **substantial** non-infringing uses of the GE software product.
>
> You may wish to take a look at *Met-Coil Systems v. Korners Unlimited*, 803 F.2d 684 (Fed. Cir. 1986) and *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903 (Fed. Cir. 1984) and their progeny. These cases deal with when a license may be implied within the context of a contributory infringement claim. We think you will find that facts of the current situation negate the imputation of any license to an end user to use the GE software product.
>
> At this point, F&G is not willing to dismiss the Complaint and is content to move down the litigation path as it has done many times. However, as I told you when we last spoke, F&G is willing to engage in an early mediation in an effort to bring prompt and amicable resolution. F&G has no interest in pressing a matter for which is does not believe it will prevail. Toward that end, it believes that having a neutral party evaluate the parties' positions and provide an objective analysis will help. If a mediator tells F&G that its position is unwinnable, we believe our client would consider folding up the tent. Similarly, we would expect that Google would be willing to settle if a mediator informs it that F&G's claims are strong. Regardless, the Court in the Southern District of Florida will order mediation as part of its initial set of case management orders.
>
> We have not yet had the opportunity to speak about the specific claim elements and how GE users practice the claimed invention. As an additional courtesy to you and to help you better understand F&G's position in that regard, we will this week be sending you a more detailed claim chart than the one we previously forwarded to you.

Google again did not respond substantively to this claim analysis; but gave an overall rejection on July 19, 2006. F&G sent Google a claim chart twice in July and a revised one in August.

Google again did not respond substantively. On December 5, 2006, F&G wrote:

> Google's Google Earth software utilizes a material part of the patented process claimed in the '229 Patent.

6

As F&G has repeatedly told Google, including in the enclosed email string from July 2006, F&G has grounds for its claim that Google at least contributorily infringes the method claimed in the '229 patent. The Google Earth software utilizes a material part of the patented method.

F&G has a reasonable expectation that discovery will show that a user of the Google Earth software with any mouse (whether licensed or unlicensed) is a direct infringer of the claimed method and that Google had knowledge of the patent with the intent that it be used with any mouse, giving rise to a 35 USC 271 (b) claim of inducement of infringement. It is admitted that Google knows that its software can be used with unlicensed mice." (Google Br. at 14-15.)   It is beyond dispute that the use of a licensed mouse is not necessary to perform the patented method (there are non-licensed mouse products that perform the patented method in connection with the Google Earth program). At the very least this raises an issue of fact which would defeat the motion for summary judgment.

Just because use of the patented and licensed mouse can incidentally perform and interact with the Google Earth method and operate the software is proof that the method as embodied in the software infringes as long as there is some control function in the mouse. Therefore, any license of that mouse device is irrelevant, (but, in any event, the license will not foreclose a claim of infringement under the statutory provisions of 35 USC § 271).

Second, Google's use of its software presents a damages base for Google's "generally free" distribution if its Google Earth software. Google's argument for a sales requirement is unavailing. Google profits by placing others' advertisements on its web site.

Finally, Google can assert neither an implied license nor *bona fide* purchaser defense to F&G's claim of infringement. *Accord Heidelberg Harris, Inc. v. Loebach*, 145 F.3d. 1454, 1458 (Fed. Cir. 1988).  It is no defense to a claim of patent infringement to assert someone else's license.

The *Anton/Bauer* case does not apply here (see Google Br. at 8-9 & ns. 7-8), since the patented method does not require that the patented mouse be used to activate the program and therefore, there is no implied license to use the method even if the mouse and program are marketed separately.  As stated, the mouse is not a material part of the claimed invention.

For at least these reasons, Google's Rule 11 position is untenable. In addition, Google admits that "Prior to filing a complaint for [patent] infringement, Rule 11 requires an attorney to (1) apply the claims of each

> asserted patent to the accused device, and (2) satisfy himself that a proper construction of the claims permits an argument that each element of the claims appears in the accused devices." (Google Br. At 12.) On July 5, 2006, counsel for F&G sent counsel for Google a claim chart showing how direct infringement occurs with the use of a scrolling mouse (one example of an activation device). Google does not take a position on claim construction in its brief, making element (2) of an alleged Rule 11 concern inapposite in this case.
>
> Google has not established that this case is exceptional on the basis that F&G's claim is "clearly hopeless and unquestionably without any possible basis in fact or law" or maintained under circumstances "which the patentee knows, or on reasonable investigation should know, is baseless…." (Google Br. at 13.) As stated above, F&G has good grounds for its claim against Google.
>
> We do not understand your Section 271(d) argument as written and consequently do not consider that you have perfected notice under Rule 11. Please clarify this argument at page 14 of your draft brief. The argument seems to be consistent with Google's characterization of F&G's position that Section 271(d) permits plaintiff to "assert contributory infringement even if it has licensed the alleged direct infringement." And, as stated above, Google cannot assert a *bona fide* purchase defense.
>
> F&G has fully met the requirements of Rule 11and this case is well-grounded and too new to permit a declaration under Section 285. Should Google go forward under Rule 11, F&G will probably act in kind or at least ask for treble and punitive damages as F &G has made it more than abundantly clear what its position is and how Google infringes.

A copy of the December 5, 2006 letter is attached hereto as **Exhibit 5**. Google again did not respond substantively and wrote only this on December 6, 2006:

> Google is not interested paying for an early evaluation at this point--the parties have widely divergent views on the merits that will have to be addressed by the Court. We understand the mediation schedule is due today. We remain willing to mediate in September and understand that the mediator is available. We ask that you submit a mediation schedule in September. We remind you that the court has already said we can do it as late as November, so September is two months before the deadline.
>
> If Google changes its position in light of any interim decisions or developments, we can always do it earlier. Thanks and we assume you will have this filed today.

A copy of Google's December 6, 2006 email is attached hereto as **Exhibit 6**. (F&G had previously, repeatedly sought early mediation. *See* a copy of emails where F&G proposed an early inexpensive merit-based evaluation by the agreed-to-mediator and Google's response flatly refusing such mediation, attached hereto as **Exhibit 7**).

That is, Defendant did not reply to the substance of F&G's direct, contributory, or induced infringement claims in these or other correspondence. Defendant also failed to address the substance of F&G's claims in their instant motion. Despite ignoring correspondence and Rules, Defendant moves for partial summary judgment only on contributory infringement of the asserted method patent claim. Br. at 7-10.

## ARGUMENT

**I.    Summary Judgment of Infringement Presents a Question of Fact That Requires Claim Construction, Which Requirement Google Ignores**

"One of the primary purposes of the summary judgment rule is to dispose of factually unsupported claims or defenses…." *Celotrex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2553 (1986). To resolve this entire action, Google must address all of the factually supportable claims or defenses, including all three types of infringement alleged. F&G need only "make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Id.* at 2552-53.

To adjudicate patent infringement, the Court must construe the asserted claim. *See Pall Corp. v. Hemasure, Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("Analysis of patent infringement starts with 'construction' of the claim, where by the court establishes the scope and limits of the claim, interprets any technical or other terms whose meaning is at issue, and thereby defines the claim with greater precision than had the patentee."). The Federal Circuit directs that "a district

court *must* exercise its power and *duty* to say what the claims mean." *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1355, 1344 (Fed. Cir. 1998) (emphasis added). Google disregards this precedent and specifically states that it does not seek a claim construction of Claim 12 necessary to resolve infringement. Br. at 5 n.4. Google's motions should be denied for this reason alone.

II. **Google Does Not Address One of Plaintiff's Direct Infringement Positions**

In correspondence with Google, F&G repeatedly explained multiple grounds for its infringement positions. Google did not respond. Nor did Google serve any contention interrogatories or discovery requests to flesh out those positions. Google also did not address those positions in its brief. Google's brief fails to address, for example, the entire display area claim element. **F&G contends that Google's development of its accused software, its employees' use of that software, and its customers' use of that software all constitute acts of direct infringement. 35 U.S.C. § 271(a) clearly states "…whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States…during the term of the patent therefore, infringes the patent." Google's brief ignores its own acts of direct infringement as detailed in the claim charts provided in Ex 2 and 4.**

III. **Google Does Not Address Induced Infringement, Liability for Which Lies Regardless of Whether Google Earth Has Non-infringing Uses**

Rule 35 U.S.C. § 271(b) provides: **"Whoever actively induces infringement of a patent shall be liable as an infringer."** Google's attempt to ignore F&G's induced infringement claim reveals is tellingly disingenuous. Br. at 6-7 n.5. Unlike contributory infringement, liability for inducing infringement does not disappear if Google Earth has non-infringing alternatives. "Contributory infringement is limited to selling non-staple articles while one can induce infringement by a variety of conduct, including by selling staple or non-staple products." *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 726 F. Supp. 1525, 1541-42 (N.D. Ill. 1989); *see* Giles S.

10

Rich, *Infringement Under Section 2710 of the Patent Act of 1952*, 21 Geo. Wash. L. Rev. 521, 539 (1953). ("There have been recent cases of active inducement wherein the thing sold had non-infringing uses but acts additional to the mere sale resulted in active inducement and liability for infringement.") Fact issues regarding Google's induced infringement exist. Google should not be permitted to escape liability for inducement by ignoring that. In fact, Google's use of a footnote would not even preserve its disclaimer for appeal. *See Cross Medical Products v. Medtronic Safamor Danek, Inc. et al.*, 424 F. 3d 1293 (Fed. Cir. 2005). **Google's entire "non-infringing use" argument is meaningless in the context of its induced infringement arguments. Inducement also requires that Google's intent be factually verified. Br. at 7-8 n.5. That is a fact-intensive issue that Google also tries to escape with its footnote.**

IV.     **Genuine Disputed Material Facts Compel Denial of Google's Motion for Summary Judgment Directed Only to Its Theory of Non-infringement**

Rule 35 U.S.C. § 271(c) provides:

> "Whoever offers to sell or sells within the United States…a component of a patented…apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article suitable for substantial non-infringing use, shall be liable as a contributory infringer."

F&G disputes material facts that Google argues to support its motion for summary judgment of no contributory infringement. For example, F&G disputes whether a **substantial** non-infringing use exists regarding Google's argument. F&G disputes that Google's software is functional without a scrolling mouse or equivalent. Specifically, the Google Earth user manual instructs its users to use a scrolling mouse. Ex. 9. Google's instructions do not include recitations for individuals that do not use or have scrolling mice or **an equivalent.** A non-scrolling mouse is an equivalent in the context of the claimed method as long as it is functional

11

to initiate the method steps. In this context, the claimed mouse is **not a material part of the invention. The software with its functions are.**

In this vein, F&G disputes whether Google's software, employees and users infringe under the doctrine of equivalents. This doctrine proscribes infringement by structures that are equivalent structures to those in the patent specification and must be separately analyzed. *See* Warner-Jenkinson Company, Inc., et al., v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997); *Lear Siegler, Inc. v. Sealy Mattress Company of Michigan, et al.*, 873 F.2d 1422 (Fed. Cir. 1989). "A finding of equivalence is a question of fact." *See Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 609 (1950). For example, scrolling features on laptop mouse-like pads and modern keyboards (which were created after the filing date of the patent). Google's brief might have (but for all the other issues raised in this brief) stand or fall on its keyboard argument. But equivalents of the scrolling means claim element, present material fact questions that F&G disputes. **Any device could perform the means**. Indeed, Google proposes a claim construction that does not depend upon a mouse. Ex. 8. The patent specification excerpts Google cites (Br. at 3) demonstrate that a mouse is merely an "example" of the "computer input device" that is part of the invention. Google cannot escape having the question of equivalents resolved by the fact finder simply by alleging that it does not use mice. See generally Br. Discovery is necessary regarding Google's non-infringement defense to resolve these material fact issues. Discovery is also necessary for construction of Google's own proposed claim terms that apparently are not limited to mice.

F&G next disputes that Google, its employees, or its Google Earth users who have licensed mice have an implied license to use the claimed **method**. Br. at 2, 7-8. This argument is a red herring. While some users may have an implied license to use the **scrolling** mouse, that

license does not inure to use the Google **method as embodied in its software.** Further, **it is not a defense to any claim of patent infringement to assert another's license.** *See* 35 U.S.C. § 271(d), which clearly states:

> "**No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief…by reason of his having done one of the following: …(1)derived revenue from acts which if performed by another would constitute contributory infringement of the patent; (2) licensed or authorized another to perform acts if performed without his consent would constitute contributory infringement of the patent…"**

Therefore, if Google is correct that the use of the mouse per se is a licensed infringement or enables it to contributorily infringe, the Statute proscribes the use of this act or conduct to defeat a claim of contributory infringement by supplying a material part of the patented process.

**The *Anton/Bauer* case, litigated by the undersigned does not apply here** (see Br. at 2, 8-9 & ns. 7-8), since the patented method does not require that the patented mouse be used to activate the program and therefore, there is no implied license to use the method even if the mouse and program are marketed separately.

Google has the law wrong too. As stated in F&G's correspondence to Google, the mouse is not a material part of the claimed invention as applied to Google's accused software (it is an example, as stated above). The display means is. Google's own proposed claim terms for construction specify that claim element. Ex. 8. Google's brief ignores it.

Because these genuine issues of disputed fact (and law) exist, Google's motions should be denied. At a minimum, Rule 56(f) discovery is needed (which, if granted, compels denial of Google's Rule 11 and Section 285 motion). Each of these disputed facts also applies to **induced infringement. For that issue,** whether the software has non-infringing alternatives is irrelevant, as stated in the previous section. But then Google did not brief inducement.)

**V.     Google Misstates the Law of Infringement to Relieve Itself of Liability**

Google argues that "contributory infringement is limited to sales." Br. at 9-10. Not true. The statute says direct infringement is **making, using,** selling, or offering for sale. 35 U.S.C. § 271(a). The case cited by Google does not re-interpret this legislature.

**VI.    Google's Unfounded Motions for Rule 11 and Section 285 Sanctions Must Be Denied And Should Be the Subject of Costs and Fees Awarded to F&G**

Google's motions for sanctions should not have been made in a motion that would not dispose of all the issues in the case. F&G told Google that last month and disputed Google's notice requirements of Rule 11. Ex. 5. Google did not respond to F&G and still filed this motion for sanctions. *See* Ex. 6. Google has unclean hands to bring this motion and should be ordered to pay F&G's costs and fees to defend against it.

Google admits that Rule 11 "requires an attorney to (1) apply the claims of each asserted patent to the accused device, and (2) satisfy himself that a proper construction of the claims permits an argument that each element of the claims appear in the accused device." Br. at 12. In compliance with this precedent, F&G sent claim charts, three times. Google did not respond either time. F&G explained its case to Google twice. Google's first response was an overall rejection and simply didn't respond the last time.

Google sidestepped directly contradictory precedent regarding claim construction and induced infringement; Google failed to respond to F&G's correspondence; Google proceeded with unperfected Rule 11 notice; Google refused mediation that would have cost thousands of dollars less than litigation. **Google, not F&G, should be sanctioned.** (F&G put Google on notice on December 5, 2006, that it would seek sanctions in the same merits letter that Google did not answer). F&G respectfully requests its attorneys' fees and costs to oppose this motion and to get early merit-based mediation. F&G further seeks as sanctions an Order that Google shall appear in

14

this District in person for mediation within one month of an Order denying Google's motion. (This Order would moot the Court's previous Order for mediation to occur before November 2007, DE# 42.)

## CONCLUSION

As shown above, F&G brought this case with evidence that there is direct infringement, that Google knew about the patent-in-suit, and that Google knows its software is used with scrolling mice, but can be used with any mouse. Compare Br. at 14-15. Discovery will show more. For the foregoing reasons, Google's motions should be denied.

Dated: January 24, 2006
      Fort Lauderdale, Florida

Respectfully submitted,

 s/ Allen D. Brufsky
Allen D. Brufsky, Esq.
Florida Bar Number 133980
abrufsky@cwiplaw.com
CHRISTOPHER & WEISBERG, P.A.
200 East Las Olas Boulevard, Suite 2040
Fort Lauderdale, Florida 33301
Telephone: (954) 828-1488
Facsimile: (954) 828-9122
*Attorneys for Plaintiff, F & G Research, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of January, 2007, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record: **Gregory Hillyer, Esq. and Ramsey Al-Salam, Esq.**, and I certify that I have mailed by United States Postal Service the document to the following parties or counsels of record who are non-CM/ECF participants: **NONE**.

                                                s/ Allen D. Brufsky
                                                Allen D. Brufsky, Esq.

64479