# EXHIBIT 1

## Judith Parrish

| | |
|---|---|
| **From:** | Alan M. Weisberg |
| **Sent:** | Monday, July 31, 2006 9:53 AM |
| **To:** | 'Catherine Lacavera' |
| **Cc:** | ABrufs@aol.com; Judith Parrish |
| **Subject:** | RE: F & G Research, Inc. v. Google Inc. |

Dear Catherine,

    This email follows our previous telephone conversations during which you set out Google's initial position regarding F&G's patent infringement claim. It is our understand that Google believes it can not be held liable for contributory or inducement to patent infringement for two reasons. First, Google alleges that, because it has licensed the '299 Patent, users of licensed mouse products can not directly infringe any of the claims of the '229 patent. You assert that, as a result, there can be no contributory infringement. Second, Google alleges that because there are licensed users, there are substantial non-infringing uses so there can be no contributory infringement even by unlicensed users. We have considered, but do not agree with either position.

    With respect to the first item, while F&G's licensees have the right to manufacture products covered by the '229 patent, and end-users have a right to use the manufactured mouse products, this license does not extend to the right to use the mouse to operate unlicensed software. In other words, although there are situations where a user is licensed to use the hardware, one can not go so far as to imply that this right extends to the operation of software that, by its use, practices a method claimed in the '299 patent. It is beyond dispute that the use of the licensed mouse is not necessary to perform the patented method (there are non-licensed mouse products that perform the patented method in connection with the Google Earth program). Therefore, any license of that mouse device is irrelevant. Just because use of the mouse can incidentally or accidentally perform and interact with the Google Earth method and operate the software is proof that the method as embodied in the software infringes as long as there is some control function in the mouse. To conclude otherwise flies in the face of both case law and logic because your position will allow any software vendor the unimpeded right to offer software that practices a claimed method simply because an end-user is licensed to use the underlying hardware. Your imputation of rights to Google goes too far because this logic denies the patentee of its right to collect a reasonable royalty from the infringing third party software developer.

    With respect to Google's second allegation, we believe it is missing the point. The analysis regarding whether there are substantial non-infringing uses is not applied to the mouse or whether a given mouse is licensed, it is applied to the Google Earth ("GE") software product standing alone. In that regard, there is little doubt that GE is used in conjunction with a mouse. Raising the specter of possibility that the GE software can be used in other manners, such as without a mouse, is not enough to obtain a finding that there are substantial non-infringing uses. As such, we do not believe there are any substantial non-infringing uses of the GE software product.

    You may wish to take a look at Met-Coil Systems v. Korners Unlimited, 803 F.2d 684 (Fed. Cir. 1986) and Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903 (Fed. Cir. 1984) and their progeny. These cases deal with when a license may be implied within the context of a contributory infringement claim. We think you will find that facts of the current situation negate the imputation of any license to an end user to use the GE software product.

    At this point, F&G is not willing to dismiss the Complaint and is content to move down the litigation path as it has done many times. However, as I told you when we last spoke, F&G is willing to engage in an early mediation in an effort to bring prompt and amicable resolution. F&G has no interest in pressing a matter for which is does not believe it will prevail. Toward that end, it believes that having a neutral party evaluate the parties' positions and provide an objective analysis will help. If a mediator tells F&G that its position is unwinnable, we believe our client would consider folding up the tent. Similarly, we would expect that Google would be willing to settle if a mediator informs it that F&G's claims are strong. Regardless, the Court in the Southern District of Florida

will order mediation as part of its initial set of case management orders.

    We have net yet had the opportunity to speak about the specific claim elements and how GE users practice the claimed invention. As an additional courtesy to you and to help you better understand F&G's position in that regard, we will this week be sending you a more detailed claim chart than the one we previously forwarded to you.

Alan M. Weisberg, Esq.*
Christopher & Weisberg, P.A.
An Intellectual Property Law Boutique

200 East Las Olas Blvd., Suite 2040, Fort Lauderdale, FL 33301
1455 Pennsylvania Ave. NW, Suite 100, Washington, DC 20004**

Voice: (954) 828-1488    email: <aweisberg@cwiplaw.com>
Fax:   (954) 828-9122    website: www.cwiplaw.com

*Licensed to Practice Before The United States Patent and Trademark Office
** Not admitted to practice in Washington, D.C.

This email contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this email, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender above by telephone (collect call if necessary) and delete the email from your system. Thank you.