# EXHIBIT 3

**Judith Parrish**

| | |
|---|---|
| **From:** | Catherine Lacavera [clacavera@google.com] |
| **Sent:** | Thursday, August 03, 2006 4:26 PM |
| **To:** | Alan M. Weisberg |
| **Cc:** | ABrufs@aol.com; Judith Parrish |
| **Subject:** | Re: F & G Research, Inc. v. Google Inc. |

Hi Alan,

**REDACTED**

Catherine

```
On 7/31/06, Catherine Lacavera <clacavera@google.com> wrote:
> Confidential - Subject to FRE 408
>
> Hi Alan,
>
> I just left you a voicemail also.  I wanted to clarify our position
> and your client's position.
>
> I think we agree that the Google Earth software does not directly
> infringe the '229 scrolling wheel mouse patent.  If I'm wrong, please
> provide claim charts showing how this could be possible.
>
> Your client's claim appears to be that Google Earth contributorily
> infringes or induces infringement of the '229 patent by providing
> Google Earth software which allegedly could be used with infringing
> scrolling wheel mice.  But your client has already licensed the '229
> patent to a substantial portion of manufacturers and users of
> scrolling wheel mice.  Their use of the mice for any purpose, with
> Google Earth or any other software, does not infringe any claim of the
> '229 patent.  Because there is no direct infringement, Google cannot
> contributorily infringe or induce infringement of the '229 patent.
> There are substantially non-infringing uses of Google Earth with
> non-infringing and/or licensed mice.  Google cannot know what type of
> mice users are using and therefore cannot induce infringement.  These
> are just some of our arguments against infringement, but they are
> dispositive.
>
> The cases you cite are inapposite.  This is not a case of an implied
> license but an express license to all claims of the '229 patent that
> your client granted to a substantial portion of the mice manufacturers
> and their users.  Because licensed mice users cannot directly
> infringe, Google cannot indirectly infringe.
>
> This is a classic case of double dipping.  You cannot extract a
> license fee from Google for licensed users to make licensed uses of
> their mice with Google Earth software (even assuming such a use of a
> mouse would infringe the '229 patent, which we believe it would not).
> We cannot understand how your client can make this claim against
> Google consistent with their obligations under prior '229 patent
> license agreements with mice manufacturors and their users.
>
> We are prepared to go forward if your client insists.  But I hope your
> client will reconsider their position.  I'd be happy to discuss this
> with you further if you think it would be helpful.
>
> Catherine
>
> On 7/31/06, Alan M. Weisberg <aweisberg@cwiplaw.com> wrote:
> > Dear Catherine,
```

1

```
> >
> >       This email follows our previous telephone conversations during
> > which you set out Google's initial position regarding F&G's patent
> > infringement claim.  It is our understand that Google believes it
> > can not be held liable for contributory or inducement to patent
> > infringement for two reasons.  First, Google alleges that, because
> > it has licensed the '299 Patent, users of licensed mouse products
> > can not directly infringe any of the claims of the '229 patent.  You
> > assert that, as a result, there can be no contributory infringement.
> > Second, Google alleges that because there are licensed users, there
> > are substantial non-infringing uses so there can be no contributory
> > infringement even by unlicensed users.  We have considered, but do
> > not agree with either position.
> >
> >       With respect to the first item, while F&G's licensees have the
> > right to manufacture products covered by the '229 patent, and
> > end-users have a right to use the manufactured mouse products, this
> > license does not extend to the right to use the mouse to operate
> > unlicensed software.  In other words, although there are situations
> > where a user is licensed to use the hardware, one can not go so far
> > as to imply that this right extends to the operation of software that, by its use,
practices a
> > method claimed in the '299 patent.   It is beyond dispute that the use
> > of the licensed mouse is not necessary to perform the patented
> > method (there are non-licensed mouse products that perform the
> > patented method in connection with the Google Earth program).
> > Therefore, any license of that mouse device is irrelevant.  Just
> > because use of the mouse can incidentally or accidentally perform
> > and interact with the Google Earth method and operate the software
> > is proof that the method as embodied in the software infringes as
> > long as there is some control function in the mouse.  To conclude
> > otherwise flies in the face of both case law and logic because your
> > position will allow any software vendor the unimpeded right to offer
> > software that practices a claimed method simply because an end-user
> > is licensed to use the underlying hardware.  Your imputation of
> > rights to Google goes too far because this logic denies the patentee
> > of its right to collect a reasonable royalty from the infringing third party software
developer.
> >
> >       With respect to Google's second allegation, we believe it is
> > missing the point.  The analysis regarding whether there are
> > substantial non-infringing uses is not applied to the mouse or
> > whether a given mouse is licensed, it is applied to the Google Earth
> > ("GE") software product standing alone.  In that regard, there is
> > little doubt that GE is used in conjunction with a mouse.  Raising
> > the specter of possibility that the GE software can be used in other
> > manners, such as without a mouse, is not enough to obtain a finding
> > that there are substantial non-infringing uses.  As such, we do not
> > believe there are any substantial non-infringing uses of the GE software product.
> >
> >       You may wish to take a look at Met-Coil Systems v. Korners
> > Unlimited, 803 F.2d 684 (Fed. Cir. 1986) and Bandag, Inc. v. Al
> > Bolser's Tire Stores, Inc., 750 F.2d 903 (Fed. Cir. 1984) and their progeny.
> > These cases deal with when a license may be implied within the
> > context of a contributory infringement claim.  We think you will
> > find that facts of the current situation negate the imputation of
> > any license to an end user to use the GE software product.
> >
> >       At this point, F&G is not willing to dismiss the Complaint and
> > is content to move down the litigation path as it has done many times.
> > However, as I told you when we last spoke, F&G is willing to engage
> > in an early mediation in an effort to bring prompt and amicable resolution.
> > F&G has no interest in pressing a matter for which is does not
> > believe it will prevail.  Toward that end, it believes that having a
> > neutral party evaluate the parties' positions and provide an
> > objective analysis will help.  If a mediator tells F&G that its
> > position is unwinnable, we believe our client would consider folding
```

2

```
> > up the tent.  Similarly, we would expect that Google would be
> > willing to settle if a mediator informs it that F&G's claims are
> > strong.  Regardless, the Court in the Southern District of Florida
> > will order mediation as part of its initial set of case management orders.
> >
> >     We have net yet had the opportunity to speak about the specific
> > claim elements and how GE users practice the claimed invention.  As
> > an additional courtesy to you and to help you better understand
> > F&G's position in that regard, we will this week be sending you a
> > more detailed claim chart than the one we previously forwarded to you.
> >
> > Alan M. Weisberg, Esq.*
> > Christopher & Weisberg, P.A.
> > An Intellectual Property Law Boutique
> >
> > 200 East Las Olas Blvd., Suite 2040, Fort Lauderdale, FL 33301
> > 1455 Pennsylvania Ave. NW, Suite 100, Washington, DC 20004**
> >
> > Voice: (954) 828-1488    email: <aweisberg@cwiplaw.com>
> > Fax: (954) 828-9122      website: www.cwiplaw.com
> >
> > *Licensed to Practice Before The United States Patent and Trademark
> > Office
> > ** Not admitted to practice in Washington, D.C.
> >
> > This email contains PRIVILEGED and CONFIDENTIAL information intended
> > only for the use of the addressee(s) named above. If you are not the
> > intended recipient of this email, or the employee or agent
> > responsible for delivering it to the intended recipient, you are
> > hereby notified that any dissemination or copying of this email is strictly
prohibited.
> > If you have received this email in error, please immediately notify
> > the sender above by telephone (collect call if necessary) and delete
> > the email from your system. Thank you.
> >
> >
>
>
> --
> ................................................................
>
> Catherine Lacavera | IP Litigation Counsel | Google
> email: clacavera@google.com | tel.: 650.253.1678
>
> PRIVILEGE AND CONFIDENTIALITY NOTICE:
> This message may contain privileged and confidential information.  If
> you have received this message in error, please notify the sender by
> return email and then delete the message.  Please do not copy or
> disclose the contents of this message.  Thank you.
>


--
................................................................

Catherine Lacavera | IP Litigation Counsel | Google
email: clacavera@google.com | tel.: 650.253.1678

PRIVILEGE AND CONFIDENTIALITY NOTICE:
This message may contain privileged and confidential information.  If you have received
this message in error, please notify the sender by return email and then delete the
message.  Please do not copy or disclose the contents of this message.  Thank you.
```