# EXHIBIT 4

Dockets.Justia.com

## Judith Parrish

**From:**      Alan M. Weisberg
**Sent:**      Thursday, August 17, 2006 11:00 AM
**To:**        'Catherine Lacavera'
**Cc:**        ABrufs@aol.com; 'Michelle Lee'
**Subject:**   F & G Research, Inc. v. Google Inc.

**Attachments:**     Claim Chart re Claim 12.pdf



Claim Chart re Claim
      12.pdf

Dear Catherine,

Allen Brufsky has returned from his travels and, as I mentioned in a previous email we would do, he and I have had an opportunity to confer regarding Google's position. Having done so, we do not find Google's position convincing and we are prepared to move forward.

By way of further explanation and to clarify statements made in prior emails, we submit that the focus of your analysis is misplaced. While F&G has licensed the '229 Patent to mouse manufacturers and resellers, the mouse itself is not the material element at issue with respect to Google. In this case, it is the Google Earth software product that is the material element and the focus of our client's lawsuit with Google.

We invite your attention again to 35 USC 271 (c) wherein contributory infringement is defined as the offer to sell or sale of "a material or apparatus for use in practicing a patented process, constituting a material part of the invention . . . (as noted previously and above this is the Google Earth software product, not the mouse) shall be liable as a contributory infringer" (parenthetical added). The mouse is not a material part of the claimed invention in this claim as evidenced by the fact that non-scrolling mice, e.g., can be used to practice the claimed method invention of Claim 12, as long as the mouse has a control to initiate the patented process embodied in the software.

35 USC 271(d) restates the well known principle that "no patent owner otherwise entitled to relief for infringement or contributory infringement shall be denied relief . . . by reason of his having done one of the following: . . . (2) licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent." Therefore a license to use a (scrolling) mouse to perform the patented process does not relieve the contributory infringer of liability where the material part of the invention claimed is the software embodying the method steps. While your reasoning may apply if Google sold the scrolling mouse to practice the method and could convince the Court or trier of fact that this was a material part in practicing the process of the claimed invention. However, even in this case see 35 USC 271(d)(1), which precludes Google's proposed line of defense to infringement regardless of what aspect you might consider material. You have refused to cite any law, statutory or case, that supports your position.

We provide an exemplary claim chart showing but one instance of why we believe the Google Earth software product infringes the '229 Patent. We have done so at this time outside of the discovery process only for one claim as a courtesy to you. However, we again state that this claim chart is merely one example. Google should not take this claim chart to mean or imply that F&G is only asserting Claim 12 or that the application of the elements of that claim to the Google Earth software product is F&G's only means of application. For example, although the attached claim chart shows the application of structural components of a scrolling wheel mouse in the preamble, it is also F&G's position that such application is not necessary as any mouse can be used to operate the Google Earth software product and practice the method steps in an infringing manner.

F&G believes its position is strong (certainly strong enough to defeat any MSJ that may be filed by Google) but currently remains willing to discuss an amicable resolution of the matter and explore ways to bring this matter to a quick conclusion. However, such

1

resolution will not simply be F&G dismissing the case and walking away.

    This communication is provided solely for the purpose of settlement and is subject to the provisions of Fed. R. Evid. 408.

Alan M. Weisberg, Esq.*
Christopher & Weisberg, P.A.
An Intellectual Property Law Boutique

200 East Las Olas Blvd., Suite 2040, Fort Lauderdale, FL 33301
1455 Pennsylvania Ave. NW, Suite 100, Washington, DC 20004**

Voice: (954) 828-1488    email: <aweisberg@cwiplaw.com>
Fax: (954) 828-9122       website: www.cwiplaw.com

*Licensed to Practice Before The United States Patent and Trademark Office
** Not admitted to practice in Washington, D.C.

This email contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this email, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender above by telephone (collect call if necessary) and delete the email from your system. Thank you.

FOR SETTLEMENT PURPOSES ONLY
PROVIDED SUBJECT TO FED. R. EVID. 408

## INFRINGEMENT ANALYSIS RE: GOOGLE EARTH SOFTWARE

### CLAIM 12

| U.S. Patent No. 5,313,229 | Cordless Optical Mouse |
|---|---|
| Method of operating a computer in an interactive manner by a user, said computer including a display means and a mouse connect to said computer, said mouse comprising | A method of operating a computer in an interactive manner is provided; the computer is used in an interactive manner to operate the Google Earth ("GE") software program and includes a display monitor and a mouse. |
| means for generating x-y incremental movement information for positioning a cursor at any of a plurality of positions displayed on said display means during interactive operation | In the '229 Patent, the structure for generating x-y incremental movement information includes a pair of rotary encoders 20x and 20y coupled to a ball 14 by a roller 22 which transmits rotation from the ball to the encoders and equivalents thereof such as mice with electro-optical transducers. A corded or cordless mouse uses rotary encoders or an LED and sensor to sense mouse movement along a surface and transmits movement information to a processor, which sends corresponding positional coordinate signals to the computer, which, in connection with the GE software, causes scrolling and/or zooming on the display screen based upon the coordinates received from the mouse. |
| binary control means for generating binary control commands for said computer | Binary control means include push buttons 34, for generating binary signals. The mouse generates data packets containing command information (binary control commands) when the mouse buttons are depressed; this command information is generated and transmitted to the computer for use by the GE software. |
| supplementary control means for generating a supplementary control signal of variable sign and magnitude under control of said user | In the '229 Patent, the supplementary control means include a movable part 42 mounted on a pivot axle 46 fixed to a baseboard 76, which is mounted on a PCB 23. A lever 78, which protrudes through an opening 43 on one side of the housing 19 and is fixed to the movable part, is also included. The lever is spring biased in an initial equilibrium position via |

FOR SETTLEMENT PURPOSES ONLY
PROVIDED SUBJECT TO FED. R. EVID. 408

| | |
|---|---|
| | spring 47. The mouse uses an equivalent scroll wheel and optical encoders, optical detectors, and shaft angle encoders, to generate supplementary control signals; the electric signal created varies in proportion to the number of "counts" that have been accumulated, where a single count is accumulated for an incremental advancement of the wheel in a particular direction away from the equilibrium position; the supplementary control signal therefore is of variable sign and magnitude under control of the user. |
| communication means for transmitting said movement information and said binary control information to said computer | Communication means are referred to in the '229 Patent as a conductor or wireless connection between the mouse and the computer input port. In the Cordless Optical Mouse, movement and binary control information is communicated to the computer via the cable connecting the mouse to the computer (or via a wireless connection depending on the model). |
| programmable circuit means in said computer for generating said display means, | Typically, programmable circuitry and logic devices in a general purpose computer generate GE software images on the display monitor. |
| said display means including display areas accessible by said cursor for triggering execution of scrolling commands on receipt of said binary control commands while said cursor is positioned on said predetermined display areas | A display monitor includes display areas within the GE software window where the cursor may be placed; when the cursor is positioned on the display areas, scrolling commands to cause scrolling within the GE software window are executed upon receipt of the generated data packets. |
| said method comprising generating scrolling commands to move information items or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means by said user | The scrolling commands are generated by the optical encoders, optical detectors, and shaft angle encoders, or equivalent structure; the commands move information or characters on the monitor; this is accomplished by operation of the mouse wheel to generate supplementary control signals. |
| said method including generating of said | The GE software either individually or in |

2

FOR SETTLEMENT PURPOSES ONLY
PROVIDED SUBJECT TO FED. R. EVID. 408

| | |
|---|---|
| scrolling commands including the steps of:<br><br>a) analyzing a trail of said cursor at periodic time intervals | connection with mouse driver software within the computer analyzes and tracks the path of the cursor as it is scrolled.  The computer, including the GE software, analyzes a trail of cursor movement to determine which axis is dominant (x, y, z) in order to scroll in a direction along the dominant axis (i.e. left-right, up-down, or zoom in-out). |
| b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals; | One of ordinary skill in the art would understand that programmed logic that is part of the GE software sets a status variable according to the cursor's trail.  Because scrolling occurs in the direction of the cursor trail when the mouse is moved from its equilibrium position, it may be inferred that a status variable is set that corresponds to the dominant axis of the cursor trail. |
| c) according to the status variable determined in step b), setting a scrolling axis to a direction option, said direction options including an up-down option; a left-right option and a in-out option; and | A scrolling axis is set according to the status variable (which depends upon the dominant axis of cursor movement).  The scrolling axes referred to are x, y and z-directions. |
| d) scrolling in a scrolling direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal and the status of said status variable. | When using the GE software in "trackball" mode, an equivalent to the supplemental control signal described above is generated by the pressing of a mouse button and the subsequent movement of the mouse up or down, or left-right, which causes scrolling (and zooming in-out) of earth image on the display.  Similar operation is observed in "G-Force" mode.  In both "trackball" and "G-Force" modes, rotation of the scroll wheel also causes scrolling in the in-out direction. Therefore, scrolling is accomplished along a scrolling axis and according to the sign of the supplemental scroll signals and the status of the status variable. |

59327

3