## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 06-60905-CIV-ALTONAGA/Turnoff

**F & G RESEARCH, INC.,**

      Plaintiff,

vs.

**GOOGLE INC.,**

      Defendant.

_____/

### <u>ORDER GRANTING PARTIAL SUMMARY JUDGMENT</u>

**THIS CAUSE** came before the Court for a hearing on February 22, 2007, upon Defendant, Google Inc.'s ("Google['s]") Motion for Summary Judgment and Attorneys' Fees [D.E. 43], filed on December 19, 2006. The Court has carefully considered the parties' written submissions, the record and all applicable law, and the oral arguments presented.

Plaintiff, F&G Research, Inc. ("F&G"), is the owner of the right, title, and interest in and to U.S. Patent No. 5,313,229 ("the '229 patent") by virtue of an assignment. The '229 patent relates to an invention entitled "MOUSE AND METHOD FOR CONCURRENT CURSOR POSITION AND SCROLLING CONTROL." (*Amd. Compl.* [D.E. 4] ¶ 6) (emphasis in original). F&G's Amended Complaint alleges that Google is "willfully and deliberately infringing" the patent by distributing within the United States, software compatible with the scrolling mouse described in F&G's patent. (*Amd. Compl.* ¶ 7). Specifically, F&G alleges that Google contributorily infringes the '229 patent, pursuant to 35 U.S.C. § 271(b), and induces infringement, pursuant to 35 U.S.C. § 271(c), by the distribution of its software, which falls within the scope of at least one claim of the '229 patent. (*See id.* ¶¶ 9, 11-12).

Case No. 06-60905-CIV-ALTONAGA/Turnoff

Google now moves for summary judgment on the contributory infringement and induced infringement claims, and moves for attorneys' fees pursuant to Fed. R. Civ. P. 11 and 35 U.S.C. § 285. In its Response to Google's Motion, F&G clarifies that in addition to contributory infringement and infringement by inducement, the allegations may also be read to include a direct infringement claim. (*See id.* ¶ 10 ("[a]s a direct and proximate result of Defendant's infringement of the '229 patent, . . . ."). Accordingly, the Court construes Google's Motion as one seeking a partial summary judgment on the claims of contributory infringement and induced infringement.[1]

## I. <u>STATEMENT OF FACTS</u>[2]

*The Patent*

F&G owns by assignment the right to the '229 patent, which was issued on May 17, 1994 for an invention entitled "Mouse and Method for Concurrent Cursor Position and Scrolling Control." (*See id.*, *'229 patent* [D.E. 4], Ex. A). The invention consists of a special type of computer mouse that includes a "supplementary control" for "scrolling." The '229 patent has 17 claims, which include both product and method claims. The Abstract of the '229 patent describes the invention as follows:

> [i]n a manual input device for controlling a cursor on a computer display (*e.g.*, a mouse) a supplementary proportional control device including a spring-loaded lever displaceable from the equilibrium position in either of two directions and protruding

---

[1] Google did not move for summary judgment on a claim for direct patent infringement, pursuant to 35 U.S.C. § 271(a), upon the belief that F&G had not included such a claim in its Amended Complaint. When informed by F&G in its opposition papers that a direct infringement claim was stated, although the statute was never referenced in the Amended Complaint, Google responded with arguments in its Reply Memorandum as to why summary judgment is also appropriate if the pleading is read to state a claim for direct infringement. It is not proper to raise new arguments in a reply brief, however, and the Court will not consider them here. *See Pattee v. Georgia Ports Auth.*, __ F. Supp. 2d __, 2007 WL 777887, at *2 (S.D. Ga. 2007) (noting that "[m]any district courts in the Eleventh Circuit reject new arguments raised in reply briefs") (citations omitted).

[2] Where any material facts are disputed, this is explained and noted.

2

out of the mouse housing is provided for concurrently controlling the scrolling operation. The supplementary control signal is generated in response to operation of a lever designed to be driven by the thumb of the same hand which holds the mouse. The control signal varies according to the displacement amount of the lever from its equilibrium position and the displacement direction and thus is used as a scrolling rate and direction control . . . .  An associated method is provided for setting the scroll and direction in correspondence to the dominant axis of the cursor's trail . . . .

(*'229 patent*).

The product and method claims of the '229 patent involve a computer mouse equipped with a mechanism (the supplemental control means) that transmits a signal (the supplementary control signal) to a computer that allows users to scroll through information displayed on a computer screen. (*See id.* col. 30, lns. 25-40). The Summary of the Invention of the '229 patent instructs that the basic object of the invention is to "provide a mouse which not only enables the user to drive a cursor over a screen of a display means, but also to smoothly scroll the displayed information at a plurality of speeds and at the same time to control the cursor position." (*Id.* col. 3, lns. 35-40). The Summary also states that the main

advantage of the mouse and *method* according to the invention is that it allows the user to, concurrently and accurately control the scrolling of the text over which the cursor is being moved, thus extending *the mouse's* usefulness to control not only the cursor position but the whole navigation process over a certain data space.

(*Id.* col. 4, lns. 22-28) (emphasis added).

The '229 patent includes nine diagrams. The first five figures are drawings illustrating the invention – a scrolling computer mouse. (*See id.* Figs. 1A, 1B, 1C, 2, 3). The remaining figures show the electrical and algorithmic functionality of the invention. (*See id.* Fig. 6).

Claim 12 of the '229 patent, the claim which F&G maintains Google directly and indirectly infringes, claims a "method of operating a computer in an interactive manner by a user . . . ." (*Id.* col.

3

15, lns. 28-29). Claim 12, a means plus function claim,[3] instructs that the method involves "said computer including a display means and a *mouse connect* [sic] to said computer, said *mouse* comprising means for generating x-y incremental movement information . . . ." (*Id.* col. 15, lns. 29-31). Claim 12 further instructs that the method involves the generating of "scrolling commands to move information items or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means . . . ," by way of the following steps:

a) analyzing a trail of said cursor at periodic time intervals;

b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals;

c) according to the status variable determined in step b), setting a scrolling axis to a direction option, said direction options including an up-down option; a left-right option and a [sic] in-out option; and

d) scrolling in a scrolling direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal and the status of said status variable.

(*Id.* cols. 15-16, lns. 46-61, 1-4).

In communications with Google and in opposition to Google's Motion for Summary

---

[3] At oral argument, counsel for F&G contended that Claim 12 was a means plus function claim as defined by 35 U.S.C. § 112, ¶ 6. A means plus function claim is "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof," and the "claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6; *see also Faroudja Laboratories, Inc. v. Dwin Elec., Inc.*, 76 F. Supp.2d 999, 1004 (N.D. Cal. 1999) (explaining that means plus function claims require that the method claimed be limited to the means defined in the patent's specification and its equivalents). "If the word 'means' appears in a claim element in association with a function," courts presume that section 112, ¶ 6 applies. *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999) (citation omitted). The "presumption collapses, however, if the claim itself recites sufficient structure, material, or acts to perform the claimed function." *Id.*

Judgment, F&G presented two claim charts proposing a claim construction for Claim 12.[4]  The charts are respectively entitled "Infringement Analysis Re: Cordless Optical Mouse" (the "Cordless Mouse Chart") and "Infringement Analysis Re: the Computer Mouse" (the "Computer Mouse Chart") (collectively, the "Claim Construction Charts").  The Claim Construction Charts describe Claim 12 as "[a] method of operating a computer in an interactive manner . . . [in which] the computer is used in an interactive manner and includes a display monitor *and a mouse*." (*Cordless Mouse Chart* [D.E. 49], Ex. 2, at 1) (emphasis added).

Both charts define each step in Claim 12 through the use of a computer mouse.  For example, the Computer Mouse Chart construes the meaning of Step (b) as follows: "[o]ne of ordinary skill in the art would understand that programmed logic in the computer sets a status variable according to the cursor's trail; the Mouse generates a SCROLL variable in the instantaneous value of the roller [sic] exceeds the threshold level." (*Computer Mouse Chart* [D.E. 49], Ex. 2, at 7).  In both charts, the method is explained in terms of a computer mouse with a scrolling control means.  Even though F&G is the preparer of these proposed claim constructions, F&G now contends that the method in Claim 12 may be performed with devices other than a mouse.  (*Resp. to Statement of Undisputed Facts* [D.E. 50] ¶ 3).  Google disagrees.

F&G has licensed the '229 patent to manufacturers and distributors of scrolling mice, including Logitech, one of the world's largest manufacturers of computer mice.  (*See Statement of*

---

[4] At oral argument, counsel for F&G objected to Google's use of the Claim Construction Charts because they were part of written settlement negotiations.  The charts, however, were submitted by F&G with its Opposition to Google's Motion for Summary Judgment.  Because the charts were submitted by F&G, and Google accepts the claim construction proposed by F&G in those charts for purposes of its present Motion, it is proper for the Court to consider them.

Case No. 06-60905-CIV-ALTONAGA/Turnoff

*Undisputed Facts* [D.E. 44] ¶¶ 6-7). F&G's licenses also extend to users of computer mice by the licensees' customers. (*See id.* ¶ 8).

***Google & Google Earth***

Google operates one of the world's most popular Internet search websites and provides online advertising services. In addition, Google offers a free web-based email service and several computer program applications. Google has never been in the business of distributing or selling computer mice. (*Decl. of Ramsey M. Al-Salam* [D.E. 43] ¶ 2).

Google Earth ("GE") is a computer software program that allows users to view and navigate satellite images of the Earth. (*See Decl. of Brian McClendon* [D.E. 43] ¶ 3). Google distributes GE to users for free, but also offers enhanced versions of GE for a fee, including "Google Earth Plus" and "Google Earth Pro." (*See id.* ¶ 2). GE may be used with a keyboard, a computer mouse, or a scrolling computer mouse covered by the '229 patent.[5] (*See id.* ¶ 4).

For example, if a user wishes to use GE without a mouse, he or she may type an address into the "address box" and the program will display a satellite image of the address. (*See id.*). The user may then use the arrow buttons on a keyboard to navigate around the image. (*See id.*). Moreover,

---

[5] In its Response to Google's Statement of Undisputed Facts, F&G disputes that GE works without a mouse on the basis that it

> believes discovery will show unlicensed mouse users use [GE]. Google teaches all mouse users to use scrolling mice. [GE] users frequently blog the use of scrolling mice as necessary to achieve the software's desired functionality, even though a mouse is not the only device that will perform the desired function.

(*Resp. to Statement of Undisputed Facts* [D.E. 50] ¶¶ 9, 12). In its explanation, however, F&G admits that GE may be used without a mouse; therefore, that fact is actually undisputed.

6

a user may also navigate GE with a non-scrolling mouse, by clicking on directional buttons on the screen. (*See id.* ¶ 6). GE does not require the use of any specific brand of computer mouse, nor does Google or the GE program ask users what type of mouse they use. (*See id.* ¶ 8).

***The Litigation***

F&G initiated this lawsuit on June 26, 2006. In its original Complaint [D.E. 1], F&G alleged that Google is "willfully and deliberately infringing the '229 patent by distributing and selling within the United States and/or importing into the United States for sale its various lines of scrolling wheel computer mice." (*Compl.* [D.E. 1] ¶ 7). Upon service of the initial Complaint, Google's in-house counsel informed F&G's counsel that Google does not sell computer mice and requested that F&G withdraw the lawsuit. (*See Decl. of Ramsey M. Al-Salam* ¶ 2).

Instead of withdrawing its lawsuit, on July 6, 2006, F&G filed the Amended Complaint [D.E. 4], alleging infringement by Google through its acts of distribution of "software compatible with the scrolling mouse of the '229 patent." (*Amd. Compl.* ¶ 7). The Amended Complaint further alleges that

> Google has provided . . . software [that] constitutes a material part of the invention covered by the '229 patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use and therefore, the use of the software in conjunction with a scrolling mouse, constitutes [contributory] infringement of the '229 patent under 35 U.S.C. § 271(c).

(*Id.* ¶ 11). As stated, F&G also alleges that Google induced infringement of the '229 patent in violation of 35 U.S.C. § 271(b). Additionally, the Amended Complaint includes more generalized allegations that Google's software directly infringes the '229 patent. (*See id.* ¶ 7).

In the parties' Joint Discovery Plan and Scheduling Report, filed on October 2, 2006, F&G stated that the Amended Complaint charges Google with contributory infringement based upon

Case No. 06-60905-CIV-ALTONAGA/Turnoff

Google's distribution of GE.  (*See Joint Discovery Plan & Scheduling Rep.* [D.E. 26] at 1).  F&G further contends that GE contributorily infringes a method claim in the '229 patent.  (*See id.* at 2).  F&G makes no reference to any claim of induced infringement or direct infringement in the Joint Discovery Plan.

Based on F&G's statement in this document, Google filed its Motion for Summary Judgment on the grounds that GE does not contributorily infringe the '229 patent because GE has substantial noninfringing uses.  In its Motion, Google contends that F&G abandoned its claim for induced infringement (by not addressing it in the Joint Discovery Plan).  Google nevertheless argues, based upon F&G's admission that it is unaware of any active steps taken by Google to induce users of its software to use unlicensed scrolling mice, that F&G has failed to meet its burden to demonstrate a specific intent on the part of Google to induce infringement.  (*See Mot. for Summary Judgment* [D.E. 43] at n.5).  As a result, Google requests that summary judgment also be granted as to F&G's inducement claim.

Little or no discovery has taken place by the two parties since the filing of the Amended Complaint.  F&G issued its first discovery request to Google in February 2007, after F&G filed its papers in opposition to the Motion, and nearly five months after F&G was made aware of Google's intention to file the present Motion for Summary Judgment.[6]

---

[6] In its papers in opposition to the Motion, F&G states that "[a]t a minimum, Rule 56(f) discovery is needed."  (*F&G's Opp. to Summ. Judg.* [D.E. 49] at 13).  However, there has been no showing by F&G – by affidavit – that it was unable to obtain the discovery necessary to support its opposition to the Motion.  *See, e.g., Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983) (nonmovant may not rely on vague assertions that additional discovery will produce needed facts, but rather must demonstrate how postponement of a ruling on the motion will enable it, through discovery, to rebut the movant's showing).

Case No. 06-60905-CIV-ALTONAGA/Turnoff

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (citations omitted). Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return

9

a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### B. Infringement Analysis – Claim Construction

A determination of patent infringement involves a two-step inquiry. *See Markman v. Westview Instruments, Inc.* 52 F.3d 967, 976 (Fed. Cir. 1996). The first step involves determining the meaning and scope of the asserted claim or claims, and the second step entails comparing the properly construed claims to the allegedly infringing device. *Id.*; *see also Rockey v. Cordis Corp.*, Case No. 05-1236 at 5, 2006 WL 678921, at *3 (Fed. Cir. March 16, 2006) ("[t]he first step, claim construction, is a matter of law, which we review *de novo*; . . . [t]he second step is typically a factual question, which we review for clear error. . . .").

The usual procedure for handling a motion for summary judgment on claims of patent infringement would therefore be to first conduct a claim construction analysis. However, because Google does not dispute the description provided in F&G's Claim Construction Charts, and because

the parties have stipulated to postpone claim construction pending the outcome of this Motion,[7] the undersigned does not engage in a formal claim construction analysis here.  Instead, the Court will construe the facts in the light most favorable to F&G and, for purposes of this Motion only, interprets Claim 12 based upon F&G's proposed claim construction as described in its Claim Construction Charts.  It is proper in a motion for summary judgment to accept the claim construction proposed by the party opposing summary judgment if such construction is not disputed by the moving party.  *See Rogers v. Desa Int'l, Inc.*, 166 F. Supp. 2d 1202, 1204 (E.D. Mich. 2001) (applying proposed claim construction for purposes of summary judgment), *aff'd*, 198 Fed.Appx. 918, 921 (Fed. Cir. 2006).

_____F&G's Claim Construction Charts describe Claim 12 as specifically requiring the use of a computer mouse, either wired or cordless, to complete the patented method – "to generate scrolling commands  to move information items on said display means from said supplementary control signal by operation of said supplementary control means."  (*'229 patent* col.15, lns. 46-50).  The charts define the term supplementary control means, which is the item used to complete the steps in the method, as the scrolling wheel of a computer mouse as described in other claims of the '229 patent.  Consequently, each step of Claim 12 requires the use of a mouse that contains the scrolling means described in the patent specification.  Such an interpretation of Claim 12 is proper given the specification of the '229 patent.  *See Faroudja Laboratories, Inc.*, 76 F. Supp. 2d at 1003 (noting that "claim elements expressed as a means or step for performing a specified function are construed

---

[7] It is the clear intention of the parties for the undersigned to evaluate Google's Motion before conducting a claim construction of Claim 12.  In the parties' Joint Motion for Continuance of Claim Construction Deadlines, the parties agreed that "given the nature of the Summary Judgment Motion, the Parties believe it will be beneficial to resolve issues presented therein before engaging in claim construction."  (*Joint Mot. for Continuance of Claim Construction Deadlines* [D.E. 63] at 1).

Case No. 06-60905-CIV-ALTONAGA/Turnoff

to cover the corresponding 'structure, material or acts described in the patent specification' and their

'equivalents'")[8] (quoting 35 U.S.C. § 112, ¶ 6).

With F&G's proposed claim construction as a guide, the Court analyzes the sufficiency of the

contributory and induced infringement claims raised by F&G.

**C. Contributory Infringement**

Pursuant to 35 U.S.C. § 271(c),

> [w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

A claim of indirect infringement, either through inducement to infringe or contributory infringement,

requires that a third party directly infringe the patent at issue. *See Dynacore Holdings Corp. v.*

*United States Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) (granting summary judgment, in

part, because plaintiff could not demonstrate any specific instances of direct infringement). In

addition, a plaintiff asserting a contributory infringement claim must demonstrate the following

elements:

> (1) the defendant sold a component or material for use in practicing the patented method; (2) the component or material constitutes a material part of the invention; (3) the defendant knew that the item it sold was especially made or adapted for use in infringing the patented method; and (4) the item sold is not a staple article or

---

[8] The Court need not address whether there any equivalent structures exist here because F&G's claim construction does not suggest that any exist. Furthermore, "[a] specification that merely mentions the possibility of alternative structures without specifically identifying them is not sufficient to expand the scope of the claim beyond the example used," *Faroudja Laboratories, Inc.*, 76 F. Supp.2d at 1003 (citing *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1551 (Fed. Cir. 1997)), which, in the case of the '229 patent, is a scrolling computer mouse. As discussed *supra*, the '229 patent refers only to a computer mouse and does not describe any alternative structures.

12

commodity of commerce suitable for substantial noninfringing use.

*Scandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp. 2d 1327, 1331 (N.D. Cal. 2000) (granting motion for summary judgment on claim of contributory infringement) (citation omitted).

Direct "infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim." *Faroudja Laboratories, Inc. v. Dwin Elec. Co. Inc.*, 1999 WL 111788, at *3 (N.D. Cal. 1999) (citing *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274-75 (Fed. Cir. 1992)); *see also* 35 U.S.C. § 271(a). In its Amended Complaint, F&G alleges that Google contributorily infringes the '229 patent by distributing software that is compatible with the F&G patented scrolling mouse invention because the software's compatibility with scrolling computer mice constitutes a material part of the invention. (*See Amd. Compl.* ¶ 11). Google's distribution of GE is contributory patent infringement, according to F&G, because GE utilizes a material part of the method in Claim 12 of the '229 patent, which in turn permits users to carry out and infringe the process stated in Claim 12. (*See Joint Discovery Plan & Scheduling Rep.* at 1-2; *F&G's Opp. to Summ. Judg.* at 7).

In this order, the undersigned does not address the issue of whether GE users directly infringe the '229 patent because it is undisputed that GE is capable of substantial noninfringing uses, thereby failing to satisfy the fourth element necessary for a contributory infringement claim.[9] GE may be used with a licensed scrolling mouse, keyboard, or non-scrolling mouse – all noninfringing uses. (*See*

_____

[9] Google contends that F&G has failed to demonstrate that GE was sold to users and that there are no substantial noninfringing uses of GE. Because of the conclusion that GE is capable of substantial noninfringing uses, the Court does not address the remaining three elements. The undersigned notes that Google's contention that F&G failed to demonstrate that GE is "sold" is not dispositive of the claim because Google charges a fee for certain enhanced versions of GE. (*See Decl. of Brian McClendon* ¶ 2).

13

Case No. 06-60905-CIV-ALTONAGA/Turnoff

*Decl. of Brian McClendon* ¶¶ 4-5).

It is undisputed that F&G has licensed the use of the '229 patent to a number of major computer manufacturers, including Logitech, one of the largest computer peripheral manufacturers in the world.  (*See Statement of Undisputed Facts* ¶¶ 6-7).  F&G has admitted that the licenses afforded to those manufacturers also extend to the users of the mice.  (*See Reply to Counterclaims* [D.E. 23] ¶ 2).  Because the users have the authority to use licensed scrolling computer mice covered by the '229 patent, those users cannot directly infringe the '229 patent, and their use of the scrolling mice with GE constitutes a substantial noninfringing use.  *See* 35 U.S.C. § 271(a) (defining direct patent infringement to include "whoever *without authority* makes, uses, offers to sell, or sells any patented invention . . . .") (emphasis added); *see also United States v. Univis Lens Co.*, 316 U.S. 241, 249 (1942) ("[T]he authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold.") (citations omitted); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (noting that "an implied license, like an express license, is a defense to patent infringement").

F&G nevertheless maintains that even if a user owns a licensed scrolling mouse, that license does not extend to the method described in Claim 12 of the '229 patent.  In other words, F&G argues that the method in Claim 12 is completely embodied in GE, and when a user navigates through GE, the user directly infringes the method described in Claim 12, and therefore, the method does not depend upon the use of a scrolling mouse.  F&G's argument, however, runs contrary to F&G's own proposed claim construction for Claim 12, which clearly indicates that the method requires the use of the scrolling mouse described in the patent.  F&G cannot propose a claim construction for Claim

14

12 and then argue against its application.

F&G also argues that the use of a licensed scrolling mouse should not be considered a substantial noninfringing use because of 35 U.S.C. § 271(d), which states, in relevant part that:

> No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: . . . (2) licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) sought to enforce his patent rights against infringement or contributory infringement . . . .

F&G's reliance on section 271(d) is misplaced.  The purpose of section 271(d) is not to preclude the licensed use of a patented product from being considered a substantial noninfringing use in the context of a contributory infringement claim.  Rather, its purpose is to declare certain practices not to be patent misuse even though those practices might otherwise be subject to scrutiny under antitrust laws.  *See U.S. Philips Corp. v. Int'l Trade Com'n*, 424 F.3d 1179, 1185-86 (Fed. Cir. 2005) (holding that section 271(d) was passed by Congress to exempt certain practices from being considered patent misuse).

Moreover, section 273(d)(2) applies to licenses provided to perform acts that equate to contributory infringement.  Here, however, F&G provided licenses to manufacturers and users over the entire '229 patent, which are not acts that may contribute to infringement.  F&G's argument is clearly misplaced because the law is clear – the holder of a patent license does not infringe a patent. *See Carborundum Co.*, 72 F.3d at 878; *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003).

Regardless, the known uses of GE without a mouse and with a non-scrolling mouse are also

substantial noninfringing uses, because F&G's own construction of Claim 12 requires the use of a scrolling mouse to complete the method described. (*See generally, Claim Construction Charts*). GE users may simply type, with their keyboard, the address of a destination which they wish to view and press "enter;" no mouse is required. (*See Decl. of Brian McClendon* ¶¶ 4-5). Users may navigate GE by way of a mouse that lacks a scrolling function. (*See id.*). The Google website provides instructions for users who wish to navigate GE by use of these methods. (*See id.*).

While it is possible that a user with an unlicensed scrolling mouse may use GE and conduct the method described in Claim 12, the fact that GE has many other substantial noninfringing uses makes a grant of summary judgment in Google's favor appropriate on the claim of contributory infringement. *See Dynacore Holdings Corp.*, 363 F.3d at 1277 (affirming summary judgment on contributory infringement claim for defendants "because their products are all capable of substantial non-infringing uses").

### D. Induced Infringement

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To succeed on a claim for induced infringement, a plaintiff must first establish direct infringement of its patent and also "'has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements.'" *Anton/Bauer, Inc.*, 329 F.3d at 1348-49 (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)).

Additionally, a plaintiff must demonstrate that the defendant was aware of plaintiff's patent and that once the defendant was aware of the patent, the defendant "'actively and *knowingly* aid[ed]

and abett[ed] another's direct infringement.'" *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (quoting *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis in original)).  Such intent may be established through either direct or circumstantial evidence.  *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1313 (S.D. Fla. 2006) (citing *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)). However, "'mere knowledge of possible infringement by others does not amount to inducement; specific intent and actions to induce infringement must be proven.'" *DSU Med. Corp.*,  417 F.3d at 1305 (quoting *Warner-Lambert Co.*, 316 F.3d at 1364).

F&G alleges that Google induces infringement of the '229 patent by offering GE to consumers.  Based upon its Opposition to Google's Motion,[10] F&G's theory of induced infringement goes like this: Google had knowledge of the '229 patent and in its distribution of GE to consumers, Google induces infringement because it is aware that the software may be used with unlicensed scrolling computer mice.  The only evidence presented by F&G to demonstrate specific intent, however, is that the GE user manual includes instructions on how to use GE with a scrolling mouse and that GE users' blog[11] postings reference the benefits of using a scrolling mouse with GE.  (*See*

---

[10] Because of Google's understanding that F&G had abandoned its inducement claim, given the description F&G provided in the Joint Discovery Plan & Scheduling Report, Google only included arguments supporting summary judgment on the inducement claim in a footnote of its Motion for Summary Judgment.  F&G argues that Google's reference to the inducement claim should not be considered because it is raised in a footnote.  Google's lengthy footnote, however, includes ample legal analysis with specific case and record citations to support a summary judgment as to the inducement claim.  *Cf., Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1321 n.3 (Fed. Cir. 2005) (holding that party did not preserve for review an argument made in a footnote of its opening appellate brief because party failed to provide record citations and request any relief).  Moreover, F&G has had sufficient opportunity to respond in writing and orally to the argument on the inducement claim.

[11] A blog, or weblog is a user-generated website open to the public where entries are made in journal style.

17

*Opp. to Summ. Judg.*, Exs. 9,10).

F&G's induced infringement claim must fail because there are no disputed material facts showing that Google possessed a specific intent to induce infringement. It is undisputed that Google has never distributed any software that requires the use of a scrolling mouse. (*See Decl. of Brian McClendon* ¶ 7). It is also undisputed that Google does not have any policy or procedure whereby it asks users what type or brand of mouse they use prior to Google distributing its software. (*See id.* ¶ 8). Google has no technical means to determine whether a GE user utilizes the software with a mouse or the brand of such a mouse. (*See id.* ¶ 9). Furthermore, F&G has admitted, in its Reply to Google's Counterclaim, that it knows of no action that Google has ever taken to induce users to use non-licensed scrolling mice with GE.[12] (*See Reply to Counterclaim* [D.E. 23] ¶ 2).

F&G's argument that GE's instructions demonstrate a specific intent on the part of Google to induce infringement of the '229 patent does not create a disputed issue of fact because the instructions also include explanations on how to use GE without a mouse. (*See Opp. to Summ. Judg.*, Ex. 9 at 6). Even if the instructions only explained how to use GE with a scrolling mouse, F&G's claim would still fail because the instructions would benefit those who have licensed computer mice, and as such, they do not support a finding that Google intends to induce users of GE to use unlicensed computer mice. Indeed, the facts demonstrate that Google has no way of knowing whether users are using unlicensed computer mice when they access GE. Without that knowledge or the taking of affirmative steps to induce users to infringe, Google cannot be held liable if a fraction

---

[12] Additionally, F&G failed to allege in its Amended Complaint that Google had knowledge of the existence of the '229 patent before the initial Complaint was filed, nor has F&G alleged any action on the part of Google demonstrating a specific intent to induce infringement of the patent. (*See generally, Amd. Compl.*).

Case No. 06-60905-CIV-ALTONAGA/Turnoff

or more of its users do access GE with unlicensed scrolling mice. *See Warner-Lambert Co.*, 316 F.3d at 1364 (if third party, without inducement from defendant drug manufacturer, prescribes use of drug in an infringing manner, defendant's knowledge of such activity is irrelevant).

### D. Attorneys' Fees and Costs

Google is seeking attorney's fees and costs, pursuant to Fed. R. Civ. P. 11 and 35 U.S.C. § 285, on the basis that F&G's allegations are frivolous because they lack any basis in fact and misstate the law. The undersigned reserves a determination on this question until the conclusion of the case, given that F&G's direct infringement claim remains.

### III. CONCLUSION

In accordance with the foregoing analysis, it is

**ORDERED AND ADJUDGED** that Google's Motion for Summary Judgment and Attorneys' Fees **[D.E. 43]** is **GRANTED**. Partial Summary Judgment is entered as to F&G's claims of contributory and induced patent infringement. The Court defers ruling on Google's Motion with respect to costs and attorneys' fees. The parties shall, within ten (10) calendar days of the issuance of this Order, file a joint scheduling report containing proposed dates for claim construction briefing.

**DONE AND ORDERED** in Chambers at Miami, Miami-Dade County, Florida this 28th day of March, 2007.

*Cecilia M. Altonaga*

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Magistrate Judge William C. Turnoff
counsel of record

19