# EXHIBIT 2

Page 1

```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
 3                  Case 06-60906-CIV-ALTONAGA
 4
      F&G RESEARCH, INC.,
 5
                Plaintiff,
 6
                                        MIAMI, FLORIDA
 7
           vs.
 8
                                        FEBRUARY 22, 2007
 9    GOOGLE, INC.,
10              Defendant.

11
                    TRANSCRIPT OF ORAL ARGUMENT
12                BEFORE THE CECILIA M. ALTONAGA,
                   UNITED STATES DISTRICT JUDGE
13
14    APPEARANCES:
15    FOR THE PLAINTIFF:
                                  ALLEN DAVID BRUFSKY, ESQ.
16                                475 Galleon Drive
                                  Naples, FL 34102 - 239.963.9641
17
                                  JASON BURATTI, ESQ.
18                                ALAN M. WEISBERG, ESQ.
                                  Christopher & Weisberg
19                                200 E. Las Olas Boulevard, Ste. 2040
                                  Fort Lauderdale, FL 33301
20                                954.828.1488
21    REPORTED BY:
22                                BARBARA MEDINA
                                  Official United States Court Reporter
23                                Federal Courthouse Square, Ste. 404
                                  301 North Miami Avenue
24                                Miami, FL  33128-7792    305.523.5518
                                                     (Fax) 305.523.5519
25                                Email:  barbmedina@aol.com
```

Page 2

```
 1  FOR THE DEFENDANT:
 2
         RAMSEY M. AL-SALAM, ESQ.
 3       CATHERINE LACAVERA, ESQ.
         Perkins Coie
 4       1201 3rd Avenue, Ste. 4800
         Seattle, WA 98101 - 306.359.8000
 5       Email: ralsalam@perkinscoi.com
 6       GREGORY L. HILLYER, ESQ.
         Feldman Gale, P.A.
 7       One Biscayne Tower, 30th Floor
         Miami, FL 33131 - 305.358.5001
 8       Email: ghillyer@feldmangale.com
 9  REPORTED BY:
10       BARBARA MEDINA
         Official United States Court Reporter
11       Federal Courthouse Square, Ste. 404
         301 North Miami Avenue
12       Miami, FL 33128-7792   305.523.5518
             (Fax) 305.523.5519
13       Email: barbmedina@aol.com
```

Page 3

```
         TABLE OF CONTENTS
                              Page
Reporter's Certificate ........................ 73

         INDEX TO EXHIBITS
Exhibits         Marked for       Received
                 Identification   in Evidence

Description      Page   Line   Page   Line

         CITATION INDEX
                              Page
Anton/Bauer ................................. 23

DSU ......................................... 10

Elkay ....................................... 32

Heidelberg .................................. 44

Johnson and Worldwide ....................... 38

Judin ....................................... 30

Mercoid ..................................... 29

Philips versus AWC .......................... 32

Universal Electronics versus Zenith ......... 21


     SIDE-BAR CONFERENCE INDEX
Descriptions                  Page
```

Page 4

 1   THE COURT: Good morning. Please be seated.
 2   In F&G Research versus Google, could I have
 3   appearances, please?
 4   MR. BRUFSKY: Yes, Allen Brufsky, for F&G. However, I
 5   would like to introduce Jason Buratti, who was associated with
 6   me in this case originally and he will be handling the argument
 7   today here, subject to your approval, of course. Also, he is
 8   in the firm of Christopher Weisberg.
 9   Part of the motion here was to, for sanctions, and he
10   will be arguing that portion of the motion as well for
11   Christopher Weisberg.
12   THE COURT: I thought I had allowed the firm to
13   withdraw as counsel.
14   MR. BRUFSKY: The firm has withdrawn, Your Honor, but
15   Mr. Buratti has volunteered to do the argument for F&G, with
16   their permission.
17   There was an illness on my part and we could not
18   prepare adequately at the time. Rather than postpone the
19   hearing, Mr. Buratti volunteered to do the argument on behalf
20   of F&G. It was F&G's motion.
21   THE COURT: Any objection from Google?
22   MR. AL-SALAM: This is Ramsey Al-Salam, from Perkins
23   Coie for Google. Google has no objection.
24   THE COURT: I'm sorry. Could you state and spell your
25   name?

Page 5

 1   MR. AL-SALAM: Ramsey Al-Salam, A-l-S-a-l-a-m.
 2   THE COURT: It's good to see somebody who has as
 3   difficult a name as mine.
 4   MR. HILLYER: Good morning, Your Honor. Gregory
 5   Hillyer, from Feldman Gale in Miami.
 6   MR. BRUFSKY: The person to my left is Alan Weisberg.
 7   MR. WEISBERG: I am here solely representing
 8   Christopher and Weisberg on the motion for sanctions.
 9   MR. AL-SALAM: To make the introductions complete, I
10   am here with Catherine Lacavera, in-house counsel for Google.
11   MS. LACAVERA: L-a-c-a-v-e-r-a.
12   THE COURT: All right. Phonetic. Perfect. This is
13   Google's motion.
14   MR. AL-SALAM: Yes, Your Honor.
15   THE COURT: I see we have some technology here in
16   keeping with the theme.
17   Please proceed.
18   MR. BRUFSKY: Your Honor, may I speak to that?
19   THE COURT: Yes.
20   MR. BRUFSKY: Your Honor, we object to this
21   presentation. I mean, all it is -- it was not disclosed to us
22   until about five minutes ago, what this presentation was going
23   to be. Although there is no problem bringing in equipment, we
24   agree to that, but as far as the presentation goes, I mean, it
25   appears, from what I'm seeing here, it's another attempt to

Page 6

1  file another brief.
2       Furthermore, it refers on the first page to some
3  settlement materials which Your Honor knows should not be
4  produced in this proceeding.
5       So, we object to the use of --
6       THE COURT: Aren't you the one, Mr. Brufsky, who has
7  submitted all these settlement materials for my review already,
8  though?
9       MR. BRUFSKY: No. This is a letter --
10      THE COURT: I have looked at a number of settlement
11 papers that have been filed I believe by you.
12      MR. AL-SALAM: Your Honor, there is no letter in here.
13 I'm not sure what Mr. Brufsky is referring to. There is
14 nothing about settlement.
15      Oh, the claim chart --
16      MR. BRUFSKY: Yes.
17      MR. AL-SALAM: That was part of the exhibits to your
18 opposition.
19      THE COURT: If I recall, those were filed by F&G in
20 this case.
21      MR. BRUFSKY: All right. Then I withdraw that
22 objection. But still, Your Honor, we don't know what this
23 presentation is. It seems to me it's just another attempt to
24 file a supplemental pleading at this stage rather than arguing
25 this case.

Page 7

1       THE COURT: Well, typically when parties seek to have
2  technology brought into the courtroom, as Google did and I
3  approved for today's hearing, I will be viewing certain items
4  on a projector or through computer and there are typically
5  visuals that assist a lawyer in making arguments that are
6  typically not within the briefs filed. It's in the nature of
7  demonstrative exhibits that assist me, and, frankly, given the
8  issues that you have all raised in these papers, I think it
9  would be of tremendous assistance.
10      I was just sitting in my office looking through
11 various different websites and looking to see what kind of
12 technology is touted as being required for use with the Court's
13 CM/ECF system, Edline, various other manufacturers, to see what
14 they say, whether one needs to use a mouse, a scrolling mouse,
15 whether that's compatible or not, to get a sense and educate
16 myself on this.
17      Frankly, this is a very novel claim -- yours,
18 Mr. Brufsky -- that a company -- and I know the Google Earth
19 product because my children use it, my husband uses it at home,
20 and I have sat there and looked at our house on the computer --
21 it's a very novel claim that a product such as this one which
22 allows you to look at the earth and focus in and zoom in on a
23 site and, obviously, you use a mouse to get there, that in
24 doing that, the defendant in this case is contributorily to
25 infringing or inducing infringement because some users might be

Page 8

1  utilizing your client's productions without authorization.
2       MR. BRUFSKY: That's not the precise argument.
3       THE COURT: I'm sorry. I can't hear you.
4       MR. BRUFSKY: That's not the precise argument we make,
5  Your Honor. That's not our claim in this particular case.
6       Our claim is that they're using a method which is
7  patented. The method is expressed in claim 12, and I think the
8  Court should understand we are not claiming a mouse. That is
9  one issue, very frankly, which has to be determined by this
10 Court, what is being claimed -- and Mr. Buratti will address
11 that issue -- but I think, you know, to start off this
12 discussion by saying that we have a mouse is not the case.
13 This is not what this case is about.
14      The case is about the utilization of a claimed method
15 by the defendant.
16      THE COURT: I understand.
17      MR. BRUFSKY: Okay.
18      THE COURT: I will allow the presentation. I don't
19 see a problem with it. I think actually it will help --
20      MR. BRUFSKY: If it helps, Your Honor --
21      THE COURT: -- this Court in deciding the issues had.
22      MR. AL-SALAM: Thank you, Your Honor. We appreciate
23 the opportunity to discuss these issues with you because this
24 case really is a case that is suitable for summary judgment.
25      There are no disputed material issues of fact and,

Page 9

1  really, the only dispute is about principles of law. In
2  particular, the principles of contributory infringement and
3  inducement.
4       Now, in terms of the facts, these are the only facts
5  that are necessary to resolve this motion and none of them are
6  disputed:
7       One, Google inns not in the business of making or
8  selling computer mice. Now, they may argue "Well, it could be
9    something equivalent to a computer mouse."
10      That's irrelevant. We're not in the business of
11 making or selling any device, any hardware device, that is
12 necessary for the practice of the method in claim 12 that
13 Mr. Brufsky was just referring to.
14      Secondly, plaintiff has licensed a great number of
15 mice, such that those licensed mice are out on the market and
16 the people, the customers that are using those mice, are
17 entitled to use them under the patent.
18      Third, Google Earth, there is no dispute, they have
19 raised no issues of fact that Google Earth software will work
20 without a mouse; it will work with any mouse, whether or not
21 that mouse has the scrolling feature which is called a
22 supplementary control signal, which the Court doesn't have to
23 worry about that level of technology, but the fact is all the
24 claims require that, and it will certainly work with any
25 licensed mouse.

Page 10

1  Finally -- that takes care of contributory
2  infringement -- when it comes to inducement, as the recent DSU
3  held, inducement requires specific intent on behalf of the
4  defendant to induce an infringing act, and not just to induce
5  the act, but to literally induce infringement. You have to
6  know of the patent and you have to believe that you are
7  inducing infringement and you have to take active steps to do
8  it. There is no evidence Google has ever done that. In fact,
9  it doesn't even make sense. Google doesn't know what mouse or
10 other device is being used by users of Google Earth.
11     It has no control over what they use and it, frankly,
12 doesn't care what they use. Those facts are sufficient for the
13 grant of summary judgment in this case.
14     Now, I said the real issue here is about issues of law
15 and these are all issues that under any scrutiny, it's clear
16 that Google's position is correct.
17     First of all, I have as the first bullet point, the
18 patent relates to a specific type of mouse. I think that's
19 clear from looking at the patent, the abstract, the summary of
20 the invention and all of the claims.
21     I heard Mr. Brufsky say "Well, claim 12 is just a
22 method." We'll take a look at claim 12, but there is no
23 plausible basis for asserting claim 12 doesn't incorporate the
24 need for a mouse. It says it "throughout." Even in the
25 methods steps, it says it requires a supplementary control

Page 11

1  signal.
2      The patent -- in the preamble, it explains that that
3  signal comes from the mouse. Throughout the patent, it
4  explains that that signal is that little lever on the left-hand
5  side --
6      THE COURT: Let me interrupt you if I could for just
7  one second --
8      MR. AL-SALAM: Sure.
9      THE COURT: -- and address one of the first points
10 that F&G makes and that is before we can engage in this
11 discussion of summary judgment, the Court needs to do claim
12 construction.
13     MR. AL-SALAM: Your Honor -- okay.
14     First of all, Your Honor, claim construction is a
15 relative term. The -- to construe the different -- it's not
16 necessary that the Court go through the claims and construe
17 what each of these terms mean. The only level of claim
18 construction that the Court needs to do for purposes of this
19 motion is to recognize that claim 12, the only claim they're
20 asserting, requires use of some type of hardware device that
21 creates a supplementary control signal. In other words, the
22 claim is not limited to simply software, and I think that's
23 clear from any reading of the claim.
24     Finally, Your Honor, doing that level of claim
25 construction, there's nothing wrong with doing that in the

Page 12

1  context of a motion for summary judgment. There's no Federal
2  Circuit decision or other decision that suggests the Court
3  shouldn't do it in this context.
4      The patent -- I don't want to go over the patent ad
5  nauseam with the Court. I mean, the good thing for the Court
6  here is the Court doesn't really have to get into the
7  technology on a detailed basis. It's not necessary for this
8  case. But one thing is clear from any reading of the patent,
9  it relates to a specific type of mouse. It is in the title.
10 It is in the abstract. It is in the summary of the invention
11 which goes on for the very first sentence. The very first
12 sentence of the summary of the invention says that it's
13 directed at a certain type of mouse and an associated method.
14 The method is the method of using the mouse. It's not an
15 abstract method that is somehow divorced from the mouse.
16 Everything in the patent is directed at the mouse and the
17 method of using the mouse. All the drawings relate to the use
18 of the mouse or the method of using it.
19     For example, this figures 1 A, B and C, they show the
20 physical mouse. To the extent that the Court is curious --
21 and, again, this is a level that the Court need not fully delve
22 into -- it's this lever on the left. It's a lever that you can
23 push with your thumb and that creates what they call a
24 supplementary control signal. So, if you're moving the mouse
25 in a direction and you hit the lever, it will scroll in that

Page 13

1  same direction. It tracks what you're doing. All of that is
2  accomplished by the mouse and the mouse driver software. For
3  all mice, that's how it works.
4      THE COURT: So, this method can't be -- well, assuming
5  you don't hook one up, if you are sitting there with a laptop
6  without a mouse, it won't practice the method.
7      MR. AL-SALAM: No, the controlling signal, which is
8  referred to here as the supplementary control signal, is
9  generated by the mouse. There is no evidence that they
10 presented, and they couldn't present any evidence, that those
11 signals are generated by any other manner.
12     In other words, if the Court were to have Google Earth
13 up and be playing around with Google Earth and didn't have a
14 scrolling mouse, it couldn't accomplish the scrolling
15 functionality. That functionality is dependent upon the
16 signals being sent from the mouse -- actually go through the
17 mouse driver software, go to the operating system and then they
18 go up to whatever application you have, whether it's Google
19 Earth or an Excel program or whatever else it is. The patent
20 doesn't claim that they invented software that works with mice.
21 It doesn't even make sense to say that.
22     In fact, if you look at figure 6 -- and, again, we're
23 probably getting into too much detail -- if you look at figure
24 6, it shows three blocks. The first one on the left is the
25 mouse itself, the piece of hardware. The second one is the

Page 14

1  mouse driver software. Your Honor, if you hook up anything to
2  your computer, whether it's a printer or a keyboard or
3  anything, there simply has to be some type of software that
4  interprets the signals that are created by the piece of
5  hardware. That's all it is. That's what driver software is.
6  That driver software interprets the signals and sends them on
7  to the operating system and, ultimately, to the application.
8      If you see in figure 6 on the right-hand side, there
9  is a box that says "Application." That application is simply
10 the software on which you are scrolling. In other words, it
11 could be any software. Obviously, when this alleged invention
12 was created, it was intended to work with existing software.
13 It wouldn't have any functionality if it didn't.
14     Prior to this case, they have sued a number of mouse
15 manufacturers and distributors. That makes sense. That's what
16 the patent covers, and they have used the same form Complaint.
17 In fact, when they sued us, to begin with, they used the exact
18 same form. They sued us and they asserted that we were
19 willfully and deliberately infringing, which, by the way, there
20 is no evidence we even knew of this patent, by distributing and
21 selling various lines of scrolling computer mice.
22     That's the direct infringement claim; we're selling
23 and using what the patent covers, the scrolling mice. That's
24 what they asserted in the Complaint. It was so off, it made
25 such little sense, that Google couldn't, didn't even understand

Page 15

1  why they were sued.
2      So, Ms. Lacavera and other in-house counsel for Google
3  contacted Mr. Brufsky and the plaintiff's counsel said "You
4      must be confused. We're not in the business of selling or
5      distributing computer mice."
6      At that point, they should have just dismissed the
7  Complaint, let it go and we wouldn't have to be here today.
8  Instead, as the Court said, they contrived a new theory, a
9  theory that has no basis in law, and that theory in the Amended
10 Complaint is that we are liable for selling software which is
11 compatible with the scrolling mouse. There is no basis for,
12 one, that they invented software that is compatible with the
13 scrolling mouse.
14     THE COURT: Let me interrupt you for a second there.
15     MR. AL-SALAM: Of course.
16     THE COURT: And this is certainly outside the matters
17 you have all briefed, but isn't there a universe of software
18 out there that is compatible with the scrolling mouse, or is it
19 not? Am I mistaken?
20     MR. AL-SALAM: There is a large universe. In fact, if
21 the test is compatibility with the scrolling mouse, there are
22 going to be a lot of defendants. There is very little software
23 that's not compatible with the scrolling mouse.
24     As the Court, I think, mentioned, you can go to lots
25 of different applications and use the scrolling functionality.

Page 16

1      When we saw this assertion, we said "Wait a minute.
2  You didn't invent software that's compatible with the
3  scrolling mouse. The patent itself revealed that there are
4  existing applications that this mouse will work with."
5      Plus, that's not the test. It's just not the test
6  either under contributory infringement or inducement or
7  anything else and the case law makes that clear.
8      Now, when we asked them to dismiss the case, they
9  didn't. When we got to the joint discovery plan that was filed
10 at the end of September, October 2nd, they articulated their
11 theory as one of contributory infringement. In the reply to
12 our counterclaim, that's the only theory they asserted,
13 contributory infringement.
14     First of all -- I'm sorry -- before I do that, I want
15 to point out claim 12. Again, the Court does not need to go
16 through this claim in detail, in our position, to interpret it
17 in detail. But it says right at the beginning that it's a
18 method of operating a computer, a piece of hardware, in an
19 interactive manner by a user, the computer including, among
20 other things, a mouse connected to the computer, and here are
21 all the things the mouse has to have: It has to have a means
22 for generating X Y movement. It has to have a binary control
23 means, and, perhaps, most importantly, because this is what the
24 invention is based on, it has to have this supplementary
25 control means. The supplementary control means is the lever I

Page 17

1  referred to. Now, that comes back later. Later at the end of
2  the first large paragraph, you see it says "including the
3  generating of    said scrolling commands, including the
4  steps of."
5      Generating scrolling commands. Those scrolling
6  commands are generated by the mouse. It goes further down and
7  you see in D, "Scrolling in a scrolling direction along said
8      scrolling axis determined in step C according to a sign of
9      said supplementary control signal." It's the signal that
10 you get with the lever.
11     Again, there is no plausible basis for asserting that
12 claim 12 doesn't include the requirement of some piece of
13 hardware that's called a mouse that generates commands and
14 signals, including a supplementary control signal that's
15 generated by the supplementary control means that sends signals
16 for scrolling to the computer.
17     If there was any issue about this, they have admitted
18 it in their own claim charts that they attached to their
19 opposition. These claim charts are the claim charts that they
20 sent us and that they have asserted are the basis for asserting
21 infringement.
22     Throughout these claim charts, there are references to
23 a mouse performing the function in the claim. The mouse has
24 electro-optical transducers, it generates the data packages,
25 uses the control wheel. You just have to look through the

Page 18

1  claim charts and it's sufficient for the claim construction for
2  this motion.
3        THE COURT: You don't dispute their claim charts, do
4  you, for summary judgment purposes?
5        MR. AL-SALAM: For purposes of summary judgment, we
6  don't need to dispute their claim charts because their claim
7  charts incorporate the requirement of a mouse.
8        THE COURT: All right.
9        MR. AL-SALAM: Now, as I said, we thought that the
10 only issue here was contributory infringement. That's their
11 only one in the statement of the case in the joint discovery
12 plan. It's the only one they articulated in their reply to our
13 counterclaim. Contributory infringement cannot, as a matter of
14 law, be based on the mere fact that you have something that's
15 compatible --
16       THE COURT: Could I interrupt another second?
17       MR. AL-SALAM: Of course.
18       THE COURT: Paragraph 12 -- excuse me -- of the
19 Amended Complaint alleges a theory of inducing infringement.
20       MR. AL-SALAM: I agree, and I will address inducement.
21 I'm just mentioning -- this is somewhat chronological
22 order. First we got the Complaint that asserted direct
23 infringement. Then we got an Amended Complaint that said
24 contributory and inducement. Then we got the joint discovery
25 plan and the reply that just said contributory. I will start

Page 19

1  with contributory and then I'll address inducement.
2        Inducements under 271(c), right in the statute, there
3  are various requirements of inducement. One is that you have
4  to know, you have to be selling something.
5        THE COURT: I'm sorry. You're speaking of
6  contributory infringement.
7        MR. AL-SALAM: I'm sorry, Your Honor. You're correct.
8        THE COURT: That's all right.
9        MR. AL-SALAM: You have to be selling or offering for
10 sale something, constitutes a material part of the invention
11 and you know it's specially adapted for use in infringement of
12 the patent.
13       That knowing requirement is one of the reasons that
14 contributory infringement doesn't apply here. In fact, in the
15 Aro II case, the Court found you couldn't be liable for
16 contributory infringement, the defendant couldn't, by supplying
17 a convertible top and the patent required the combination of
18 the convertible top and the car. The defendant just supplied
19 the convertible top to Ford. They said "Well, you are not
20   directly infringing because it's not the full combination.
21   You need the car and the top and you just supplied the
22   top."
23       Then it said you couldn't be contributorily infringing
24 unless you knew that Ford wasn't licensed under the patent. In
25 this case, we don't know any of our users are not licensed

Page 20

1  under the patent. There is no evidence we have ever known that
2  any of our users don't have a license.
3        THE COURT: F&G says they need time to do discovery to
4  obviously oppose the summary judgment motion. They haven't had
5  the opportunity, I assume, to delve into the knowledge of
6  Google.
7        MR. AL-SALAM: I'll get to discovery later, but the
8  fact is it's their burden to have a basis for bringing a claim
9  for contributory infringement. It's their burden to present
10 evidence in opposition to a motion for summary judgment of
11 contributory infringement. There is no such evidence.
12       The knowing, the knowledge element, though, we don't
13 even need to rely on. I mean, I guess it's theoretically
14 possible, they could do discovery. Even then it wouldn't be
15 contributory infringement until they told us "This user is
16   using an infringing mouse. Don't let them use Google Earth
17   anymore." Then we would have to have the knowledge to be
18 sending -- allowing that person to use Google Earth.
19       But that's something we don't even need to rely on
20 because the other requirement, one of the other requirements,
21 is that there not be a substantial noninfringing use for the
22 software or the product, and it's their burden to show that
23 there is no substantial noninfringing use. For purposes of
24 this motion today, that's all we're going to rely on. We don't
25 even need to rely on the knowledge element. We'll rely solely

Page 21

1  on the fact there is no genuine issue of fact that the Google
2  Earth software has substantial noninfringing uses.
3        In Universal Electronics versus Zenith case --
4        THE COURT: And as to that element, it's your position
5  there is no need for discovery.
6        MR. AL-SALAM: There is no need. I'll actually
7  address discovery later, but I can address it now. No matter
8  what discovery they could ever do, it couldn't prove that there
9  was no substantial noninfringing use for the Google Earth
10 software because the facts themselves establish that Google
11 Earth can work with no mouse; it can work with a nonscrolling
12 mouse. It doesn't have anything that could be equivalent to
13 the lever, the supplementary control signal, and it can work --
14 this is the easiest -- it works with licensed mice.
15       THE COURT: And there have been at least since the
16 filing of the Amended Complaint about eight months to do that
17 discovery.
18       MR. AL-SALAM: Exactly, and until recently, they
19 served a discovery request on us for the first time. They had
20 at least four to five months where they knew we were going to
21 file the motion. We actually served the motion on them at the
22 end of November and never did they serve any discovery on us.
23       Again, another point I'll make, even now when they
24 asked for discovery, they didn't comply with 56(s) that you
25 submit an affidavit and specify exactly what you need and why

Page 22

1  it will elicit evidence that can create a genuine issue of
2  fact.
3       The Universal Electronics case is instructive. In
4  that case, the Court specifically said the Federal Circuit has
5  made clear, it's not an issue whether a device is designed
6  so as to allow infringement of a patented process which is just
7  like a patented method. That's not the issue. It doesn't
8  matter Google Earth theoretically could be used in a manner
9  that might infringe if you had a scrolling mouse. The question
10 is whether there is a substantial noninfringing use.
11      In the case itself, the Court -- in that case, they
12 said that -- it had to do with remote control. Zenith was the
13 plaintiff. Zenith had a patent on the use of a remote control
14 to control its television. Universal sold one of those
15 universal remotes, works with all types of television. They
16 specifically designed it to work with Zenith televisions. The
17 Court said "The question here is by the fact that they actually
18    designed it to work with Zenith televisions, does that mean
19    it's contributory infringement?"
20      The Court specifically said "No, because it has
21 substantial noninfringing uses."
22      In distinguishing another case, it said "The fact is,
23    infringement using remote control is not " -- and this is
24 the word they used -- "is not. Because it's not inevitable,
25    there are substantial noninfringing uses," and the Court

Page 23

1  granted summary judgment there was no contributory.
2       The Court also said it found as an alternative basis
3  that the owners of the Zenith televisions had an implied
4  license to replace their remote control, but independently it
5  found that there was substantial noninfringing uses for the
6  remote controls because they worked with other televisions.
7       Again, there are independently sufficient bases to
8  find substantial noninfringing use. It works without a mouse.
9  There's no question about that. They have not raised any
10 dispute on that fact. It works with any mouse. No dispute
11 about that. It works with licensed mice and they have broadly
12 licensed the patent. They have licensed the patent to
13 Logitech, which they have admitted is one of the world's
14 largest manufacturers of scrolling mice. That means
15 infringement using Google Earth is not inevitable. There are
16 substantial uses and there's no question that there out there
17 are using Google Earth without using an infringing mouse or
18 using a licensed mouse.
19      By the way, a licensed mouse, there's no such thing --
20 and they used this term in one of their briefs -- licensed
21 infringement. That's an oxymoron. If they are licensed, you
22 can't be infringing. In fact, that's reflected in other cases,
23 in the Anton/Bauer case Mr. Brufsky worked on. In that case,
24 the defendant sold a female portion of a battery pack and they
25 also sold separately, you could buy the male portion and the

Page 24

1  patent covered the combination. But the Court said "As a
2  matter of law, when you sell the female pack side to a
3  customer you are granting an implied license that they can
4  by the male one and create the patented combination" and
5  they said in that case, the customer is not infringing because
6  they're licensed. It says in there, "Of course, the license
7  could be express or implied."
8       Well, here we have an express licensed. It's not
9  implied. It's actually express. They have licensed this
10 patent to people, the users of scrolling mice. In that
11 situation, the users are not infringing, and if they are not
12 infringing, we can't be a contributory infringer for that use
13 because you have to have direct infringement to have
14 contributory.
15      These are -- and I think I have gone through this, but
16 it's clear from the record that they have admitted in their
17 reply to our counterclaims of their licensing, at least five
18 licensees, including Logitech. That takes care of contributory
19 infringement. There is just simply no genuine issue of fact of
20 substantial noninfringing use, and we respectfully request that
21 the Court grant summary judgment on that claim.
22      Unless the Court has questions about the claim, I'll
23 now turn to inducement.
24      Inducement requires two things. The leading case to
25 read is the new DSU case. The Federal Circuit in the DSU case

Page 25

1  clarified what was, arguably, conflicting, at least, ambiguous
2  precedent about the level of intent needed. They said there
3  are two things required to induce infringement, a specific
4  intent to cause infringement and active steps to cause that
5  infringement.
6       When they said "specific intent," they made clear
7  we're not talking about intent to simply cause the acts. In
8  other words, in this case, we're not talking about an intent to
9  have people use scrolling mice. In this case, it would have to
10 be an intent to have people use infringing mice, i.e.,
11 unlicensed mice. That's the intent that's required. There
12 would have to be active steps done to induce such use of
13 unlicensed mice. It would have to be culpable conduct.
14 There's no genuine issue of fact here with respect to
15 inducement. There is no -- again, this is their burden, their
16 burden to establish some genuine issue of fact. Google does
17 not know or care whether you use a mouse or what mouse you use
18 to use Google Earth. Google has done nothing to promote the
19 use of unlicensed or infringing mice. In fact, that has been
20 admitted by the plaintiff in response to our counterclaim.
21      Among the other things that they admitted, they
22 admitted that they're unaware of any action by Google to induce
23 the users of its software to use scrolling mice that are not
24 licensed under the '229 patent. That admission is
25 independently a sufficient basis to grant summary judgment on

Page 26

1  inducement.
2  If the Court has any questions about inducement, I
3  would be happy to address them. Otherwise, we would
4  respectfully request that the Court issue summary judgment on
5  the inducement claim.
6  Now, as the Court mentioned, those are the only two
7  claims in the Amended Complaint. In their opposition, they
8  have raised some issue about direct infringement, but there is
9  no allegation in their Amended Complaint of direct
10  infringement. Now, that was an allegation in their original
11  Complaint, but it's not in this one. In fact, they have
12  admitted that the basis for their claims against us are solely
13  based on our Google distribution or availability of Google
14  Earth software. The Google Earth software is not a mouse. It
15  doesn't have all the elements of even claim 12, so it can't
16  directly infringe claim 12.
17  Now I'll go to discovery. Discovery is one of the
18  other things they requested, and as the Court already pointed
19  out, this case has been pending for approximately eight months.
20  They have known that we were going to file a summary judgment
21  motion for at least five months or four and a half months.
22  They got our summary judgment motion on November 22nd. That's
23  when we served it. They didn't file their opposition for two
24  more months after that and never, during all of this time, did
25  they ever serve discovery on us.

Page 27

1  Further, the Courts have made clear that in opposition
2  to a summary judgment motion, you have to comply with rule
3  56(f) if you want discovery and that rule requires, among other
4  things, that you submit an affidavit that sets forth precisely
5  what discovery you need. Indeed, it should set forth what
6  attempts you have made to get the discovery, and how that
7  discovery will elicit facts that will create a genuine issue of
8  fact.
9  They did not comply with rule 56(f), and a number of
10  Courts have said that, in itself, is a sufficient basis to deny
11  discovery. But, finally, even if we ignore the fact that they
12  sat on their hands and not issued discovery, that they didn't
13  comply with 56(f), the fact is discovery would be futile on
14  these claims.
15  I have already mentioned there's no discovery that
16  could be done which would establish that there isn't a
17  substantial noninfringing use for Google Earth. It works with
18  licensed mice. That's the only fact you need to know. No
19  matter what discovery they are going to do, it's not going to
20  change that fact.
21  Secondly, on inducement, they're never going to be
22  able to establish Google has actively induced someone to use an
23  unlicensed mouse. It doesn't even meet the common sense test.
24  Google doesn't know what mice are being used. They tell people
25  how to use scrolling mice, but that's different. Inducing the

Page 28

1  act of using a scrolling mouse is not the specific intent to
2  induce infringement. Infringement doesn't exist when you use a
3  licensed mouse. So, any discovery would be futile.
4  Finally, Your Honor, as you are aware, we're asking
5  for our fees and costs. We don't do that lightly. We don't
6  want to go around and ask for sanctions every time somebody
7  sues Google, but there is a time when we've done everything
8  reasonable, we've tried our best to be reasonable with the
9  plaintiff and, yet, they pursue a claim that really has no
10  basis in fact or law.
11  The original Complaint that was filed in this case
12  cannot, under any standard, be alleged to have been based on a
13  reasonable investigation. That Complaint, a form Complaint
14  used for a number of mouse manufacturers, was filed against
15  Google and it accused us of distributing and selling computer
16  mice, something that Google is not in the business of doing.
17  Still, we could have answered and moved for summary
18  judgment and sanctions right then. We didn't. We tried to
19  work it out. We tried to let them withdraw it and we could all
20  just go our own ways. They didn't. Instead, they came up with
21  this compatibility theory. There is absolutely no legal basis
22  for the compatibility theory.
23  They have also continued to make arguments that really
24  have no basis in fact, including the 271(d) argument. The
25  271(d), which I don't need to go into in detail, has nothing to

Page 29

1  do with the situation.
2  271(d), as is reflected in the legislative history and
3  in the case law that cited it, is specific with respect to
4  patent misuse. The Mercoid case, if the Court goes back -- and
5  I don't want to go into too much detail here, but the murder
6  could I case -- it's cited in our briefs. You can go back and
7  read it -- what happened there is the plaintiff had a patent on
8  a combination of a thermostat and something, an emission, that
9  turned on a furnace. They accused somebody of contributory
10  infringement for just selling the thermostat. It wasn't the
11  complete array. The Court found that was patent misuse because
12  they were trying to control the sale of a thermostat. The
13  Court said "You don't have a patent on a     thermostat.
14  You just have a patent on the whole system."
15  In response, Congress passed 271(d), which, basically,
16  says "If you license somebody for doing something that would be
17  contributory infringement, it's not patent misuse. If you
18  otherwise have a claim for contributory infringement, you
19  are not committing patent misuse by licensing contributory
20  infringers."
21  That has nothing to do with this case. It says right
22  in the statute. It says "if you otherwise have a claim for
23  contributory infringement." Here, they do not otherwise
24  have a claim.
25  They have also disputed facts that they have already

Page 30

1 admitted in response to our counterclaim. There is just a
2 series of a flouting of the rules and a failure to reasonably
3 investigate the facts.
4     Courts have become increasingly tough on patent
5 plaintiffs because the fact is patents are being abused in the
6 Federal Courts today, which is even leading Congress to look at
7 patent reform legislation.
8     But, as it said in the Judin case, in that case they
9 sanctioned the plaintiff because they had not done a reasonable
10 investigation. They had looked at some laser devices and
11 thought "Well, those look like they infringe" and they relied
12 on their client to tell them. The Court said
13 "That's not enough. That's not a reasonable
14 investigation."
15     Here it was even worse. To sue us for selling
16 computer mice when we're not even at all in that business is
17 not a reasonable investigation. Even Judge Jordan just last
18 month sanctioned a patent plaintiff under rule 11 and 28 USC
19 1927 because they asserted a -- quote -- "unreasonable, if not
20 flimsy, infringement analyses" and they -- quote --
21 "pursued the claims, at the very least, recklessly and
22 unreasonably."
23     That quote applies in this case as well.
24     For those reasons, Your Honor, we request that the
25 Court also award Google its attorneys' fees and costs and

Page 31

1 unless you have questions, that's the end of my presentation.
2     THE COURT: I do not. Thank you.
3     MR. BURATTI: Good morning, Your Honor.
4     THE COURT: Good morning.
5     You could probably turn that off.
6     MR. AL-SALAM: Yes. I'm sorry.
7     MR. BURATTI: Leave it on. I don't mind, actually.
8     Your Honor --
9     THE COURT: Barbara can't hear you. You need to use a
10 microphone.
11     MR. BURATTI: Your Honor, Google advances a novel
12 theory of claim construction, that the Court can go forward
13 with a general acknowledgement that a claim is limited to
14 specific structures in the specification of the patent. The
15 claim defines patent infringement. It's simple. The claim has
16 three parts. The three parts are the preamble --
17     THE COURT: I'm sorry. The claim defines patent
18 infringement?
19     MR. BURATTI: The claim defines the scope to which a
20 patentee is entitled to exclude others from practicing his
21 invention.
22     The claim has three parts. It has a preamble. It has
23 a transitional phrase and it has the claimed elements. Google
24 skipped all of this in its presentation, first saying that no
25 claim construction is necessary, and then it its reply

Page 32

1 asserting that the Court should acknowledge that the claims at
2 issue in the '229 patent are limited to a specific computer
3 mouse.
4     The mouse language in the claim 12 that Google asserts
5 is in the preamble of the claim. The transitional phrase
6 "comprising of," which allows for a claim to have an invention
7 disclosed that has more elements than those are disclosed.
8     The case that's relevant here is the Elkay (ph.) case
9 by the Federal Circuit at 192 F.3d 973. The comprising claim
10 term, of course, allows for any number of elements that are not
11 in the preamble that are in addition to the elements that are
12 cited in the claim method to be present in an infringing
13 device. Method, component, whatever it is that's used that
14 infringes the claim method in this case.
15     There is a hierarchy the Court has to look at when it
16 construes the claim. First, the language of the claim term
17 itself controls. Every claim under the Philips versus AWC
18 case, 52 F.3d 1303, which is the Federal Circuit's most recent
19 enunciation of claim construction principles -- it's not cited
20 in Google's brief. It's probably not cited because following
21 Philips, the DSU Medical Corp., which Google made reference to
22 in its argument a few minutes ago, the Federal Circuit in DSU
23 Medical actually pays some deference to the District Court's
24 claims construction because it looks at some extrinsic evidence
25 and some intrinsic evidence that supported the construction.

Page 33

1 That's the first time I have actually seen that kind of
2 deference paid. But the Court in DSU Medical specifically
3 acknowledges that it's following the Philips guidance.
4     Do we have the changing face of claim construction
5 jurisprudence? Well, we haven't been given the opportunity to
6 brief it, Your Honor, and we --
7     THE COURT: To brief what? I'm sorry.
8     MR. BURATTI: Claim construction.
9     THE COURT: Mr. Al-Salam indicated today he was
10 willing to live with how you have put forward what the patent
11 covers in your own papers for purposes of summary judgment.
12     MR. BURATTI: Which is, therefore, there are
13 equivalent structures under § 112, paragraph 6, that would
14 encompass --
15     THE COURT: You haven't sued under the Doctrine of
16 Equivalents, though, have you?
17     MR. BURATTI: The Doctrine of Equivalents is
18 absolutely in any case which patent infringement is at issue.
19     THE COURT: You haven't alleged it, have you?
20     MR. BURATTI: Absolutely. It's in our opposition
21 papers.
22     THE COURT: No, alleged it. Opposition papers don't
23 contain allegations. They contain arguments.
24     Your Amended Complaint has no allegation that this
25 infringement under the Doctrine of Equivalents. Am I right?

Page 34

1  MR. BURATTI: I'm sorry, Your Honor. Maybe we're
2  misunderstanding one another. But the allegation of patent
3  infringement includes the Doctrine of Equivalents. Any
4  allegation in patent infringement includes the allegation of
5  Doctrine of Equivalents. It's a very fact intensive issue, but
6  the allegation of patent infringement -- I mean, we don't say
7  specifically literal infringement in our Complaint because our
8  allegation is for infringement. So, we've alleged patent
9  infringement both literally and under the Doctrine of
10 Equivalents by giving notice of our claims of patent
11 infringement in our Amended Complaint.
12     THE COURT: You are saying by use of the word
13 "infringement," you have alleged everything.
14     MR. BURATTI: We have alleged any form of
15 infringement that can fall under the notice pleading standard,
16 which would include infringement under the Doctrine of
17 Equivalents, and, indeed --
18     THE COURT: Let's go with what it is F&G supplied in
19 opposition to the motion for summary judgment, this
20 infringement analysis for settlement purposes only. That's
21 attached to your opposition Exhibit F.
22     MR. BURATTI: Yes, our original --
23     THE COURT: Exhibit 4. I'm sorry.
24     So, we go with that. Why do we all need to go through
25 a long and exhaustive claim construction, briefing and hearing

Page 35

1  and order prior to addressing whether or not there are
2  substantially noninfringing uses?
3      MR. BURATTI: Your Honor, Your Honor, Google is
4  absolutely right, a limited claim construction for the purposes
5  of summary judgment hearing and decision would be appropriate,
6  but it said it wasn't specifically asking the Court for that in
7  its opening brief. So, in opposition, we didn't get into the
8  claim construction of the claim element that Google asserts
9  relieves it of liability in this case.
10     THE COURT: You don't, but you argue that there should
11 first be a claim construction conducted before there is ever
12 any consideration of summary judgment.
13     MR. BURATTI: Your Honor, it sounds like you have
14 taken Google's invitation in its footnote 3 of its reply brief
15 to take our argument to mean that we want a full claim
16 construction.
17     The only point that F&G makes in its opposition, it
18 should be entitled to brief the issue of the construction of
19 the claim element that's at issue in the motions. We're not
20 denying that a limited claim construction could resolve this,
21 but we haven't been given the opportunity to address it.
22     THE COURT: You certainly did. Why didn't you address
23 it in opposition to summary judgment?
24     MR. BURATTI: Because Google said in its opening brief
25 that it wasn't asking for a claim construction.

Page 36

1      THE COURT: Right, but if you are the one coming
2  forward affirmatively and saying "Before there could ever be
3  summary judgment here, there needs to be a claim
4  construction." Why not just say "Here it is, Judge.
5  Here's how we propose construing the patent"?
6      MR. BURATTI: Because Google didn't follow the Federal
7  Circuit's rules, respectfully, when it asked the Court not to
8  construe the claim, but to award summary judgment.
9      If you look at its reply brief --
10     THE COURT: I'm not looking at the reply brief. I'm
11 looking at your opposition. Your opposition raises the issue,
12 but it doesn't fully address it. But, yet, you do attach this
13 for settlement purposes only infringement analysis. Why can't
14 I go with that and do a limited claim construction, if that's
15 necessary for summary judgment purposes, and accept, as defense
16 counsel has indicated for summary judgment purposes, how you
17 have construed your own patent? What's wrong with that?
18     MR. BURATTI: There is no reason that the Court can't
19 take that. It's Google's position, though, that there are no
20 equivalents for the structure.
21     We didn't get -- let me start from the beginning
22 actually with the 112 6th paragraph --
23     THE COURT: Excuse me. The what?
24     MR. BURATTI: 112 6th paragraph, the paragraph of §
25 271 -- sorry -- of Title 35 that -- it provides for a means

Page 37

1  plus function claim element, such as the scrolling means claim
2  element at issue here that Google relies upon.
3      Do we use an example in our claim chart of a
4  potentially infringing structure? Yes. Is there more claim
5  breadth? Yes.
6      If the Court were to simply rely on those claim
7  charts, which are -- if the Court were simply to rely on those
8  claim charts, which give some of the patent breadth, but the
9  Court would unreasonably limit and erroneously limit the claim
10 12 to a method that required a specific hardware forum of the
11 structure disclosed in the specification that provides the
12 means for, the means that are claimed in the patent, and what I
13 mean is when you write a means plus function claim term, you
14 look from the claim to the specification of the patent to
15 identify the structure that is disclosed that effects the
16 means.
17     That structure and the patent -- it's called a
18 preferred embodiment -- is the mouse. But if you look at claim
19 6 -- I'm sorry -- figure 6 of the patent that Mr. Al-Salam
20 pointed out earlier, that figure 6 has the little mouse wheel
21 that you see on a scrolling mouse depicted there.
22     Well, if that mouse wheel appeared in the body of a
23 laptop, it would look the same and it would still be a
24 scrolling means. It just wouldn't be the preferred embodiment.
25 The Federal Circuit has held that it's error to limit a claim

### Page 38

1. to its preferred embodiment. That's Johnson and Worldwide 175
2. F. 3d 985. That case says you can't limit a patent claim to
3. its preferred embodiment.
4.     I see on Mr. Hillyer's computer that there is a
5. little -- they're doing this now on these little mouse pads on
6. the laptops. It has got a little up arrow and a little down
7. arrow and scrolling spot. Mine has one of those, too. It
8. looks a little different. If I move my finger up and down, it
9. does the same thing that my scrolling mouse wheel does. I have
10. one of those spinning ball mice at the office and if I move my
11. finger it scrolls just like a scrolling mouse and that's the
12. novel feature of this patent.
13.     If the Court were simply to use the claim charts, as
14. you suggested, and not to provide us with the full
15. opportunities to brief this particular claim element -- maybe
16. not the entire --
17.     THE COURT: I just don't understand why you keep
18. saying I'm not providing you with a full opportunity. You had
19. a full opportunity. You even filed your response in opposition
20. late. You took the time to do it and you could have done it in
21. your response in opposition, couldn't you?
22.     MR. BURATTI: Well --
23.     THE COURT: What prevented you from doing it then?
24.     MR. BURATTI: Again, you know, we were responding to
25. Google's motion. Google said it wasn't requesting a claim

### Page 39

1. construction. It didn't make an argument in its construction
2. brief for --
3.     THE COURT: You could have filed a claim construction
4. brief at any time.
5.     MR. BURATTI: In fact, there is claim construction
6. briefing due to come next month.
7.     THE COURT: You could have done it before.
8.     MR. BURATTI: We would have been happy to brief this
9. issue, but we weren't getting any responses from Google in our
10. requests for mediation, in our requests for them to address why
11. they believed that the patent, you know -- I'm sorry. This is
12. all in our opposition brief.
13.     THE COURT: Right, but I'm not following the reasoning
14. behind their refusal to participate in mediation prevents you
15. from filing a claim construction brief at any time. How does
16. one thing relate to --
17.     MR. BURATTI: I'm sorry. I must have misspoken if
18. that's what came out.
19.     The issues for claim construction that pertain to this
20. motion are the construction of the term "scrolling means."
21. Okay? The term "scrolling means" requires reference to the
22. specification and could we have briefed it? Yes. Did we
23. discuss the problem with Google's request that there not be a
24. claim construction? I mean, we didn't oppose on the basis of
25. claim construction because Google said that it wasn't seeking a

### Page 40

1. claim construction from the Court, and that's it.
2.     THE COURT: But you are somehow interposing the
3. absence of claim construction as an impediment to summary
4. judgment.
5.     MR. BURATTI: It absolutely is. The Federal Circuit
6. dictates that it's the duty of the Court to conduct at least a
7. limited claim construction in this context.
8.     Again, we're not moving, so viewing all of these
9. issues in our favor as nonmovant, we've got a concern that the
10. Court would be entering summary judgment without having a fully
11. briefed normal briefing schedule for claim construction on the
12. issue of the scrolling means claim element, and I've just been
13. handed what I was looking at early, is a February 12th letter
14. from Google to F&G -- before I get into this, I should point
15. out that when a claim is interpreted, it's accorded its
16. ordinary and custom meaning right on the straight claim
17. language. If Google wants a claim meaning that departs from
18. the ordinary meaning, such as a limitation in a specification,
19. particularly to a preferred embodiment, then it has to
20. demonstrate -- it must. The burden is on Google in claim
21. construction to demonstrate that the inventor of the F&G patent
22. in suit intended for the claim terms to have some other
23. meaning. The plain meaning --
24.     THE COURT: Mr. Buratti, why don't we accept for a
25. moment that we're not going to limit the invention to the

### Page 41

1. preferred embodiment -- and I don't think that Google would
2. disagree with that statement -- and that we look at the
3. scrolling feature, putting aside for a moment whether or not
4. there is a mouse that's necessary to achieve scrolling -- and
5. we all agree you don't need a mouse to achieve scrolling. Even
6. I have used laptops and I can scroll with the little button
7. that's provided -- aren't there substantial noninfringing uses?
8. Haven't you all licensed a number of companies already and how
9. is Google responsible for what the user, sitting in the privacy
10. of his or her home, looking through the satellite at the earth
11. uses to achieve those views, because we're getting bogged down
12. in this whole issue of what is the scope of your patent and,
13. frankly, let's agree with you 100 percent that it will not be
14. limited to the preferred embodiment, that I shouldn't be
15. focusing solely on this whole issue of the mouse. What is it
16. that Google does that induces or contributes to infringement?
17. Why don't you address that for me, if you would?
18.     MR. BURATTI: Absolutely.
19.     First, in the context of contributory infringement,
20. Google is correct, if there were substantial noninfringing
21. uses, it wouldn't be liable for contributory infringement. The
22. question here is what is a substantial noninfringing use and
23. what is an insubstantial noninfringing use.
24.     THE COURT: The question is what material facts that
25. are in dispute have you presented as the nonmovant on these

Page 42

1  summary judgment papers to show that there are not substantial
2  noninfringing uses?
3      MR. BURATTI: We provided an excerpt from Google's
4  manual in which it directs its users to use scrolling mice, and
5  we --
6      THE COURT: I'm sorry. Let me stop you there. And,
7  therefore, what?
8      MR. BURATTI: I was going to use the two pieces of
9  evidence together.
10     THE COURT: What's the other one?
11     MR. BURATTI: The end-user blogs in which they say you
12 got to use this scrolling mouse and if you don't use this
13 scrolling mouse, the stuff is no good at all.
14     THE COURT: And, therefore, you have licensed a number
15 of companies that sell scrolling mice.
16     MR. BURATTI: I understand. I --
17     THE COURT: I'm trying to follow --
18     MR. BURATTI: The fact issue of substantiality --
19     THE COURT: What is the fact issue.
20     I'll get to 271(d) in a moment, but the fact issue
21 here is Google tells its users to use scrolling mice and its
22 users use scrolling mice and it appears from its users' use of
23 scrolling mice, there is no substantial use that gives the
24 software its complete functionality -- okay -- the
25 functionality that we accuse in this case. There appears to be

Page 43

1  no functionality that's substantially different without the use
2  of a scrolling mouse.
3      THE COURT: I didn't follow you at all. Go over that
4  again for me, if you would.
5      MR. BURATTI: Okay.
6      Google says use a scrolling mouse. The users use a
7  scrolling mouse. They say "If you don't use a scrolling mouse,
8  the software doesn't meet its full functionality."
9      THE COURT: Let me stop you there. Use a scrolling
10 mouse. We all know you have licensed a number of companies to
11 legally sell and distribute.
12     MR. BURATTI: That's the second step of the analysis.
13     § 271(d) actually does say -- it does apply. If you
14 misuse your patent to assert contributory infringement, which
15 is implicitly what Google is saying we're doing by applying for
16 sanctions.
17     THE COURT: If you misuse your patent. Who is "you"?
18     MR. BURATTI: Sorry. I was speaking generally about §
19 271(d). It does provide for, as Google points out, a defense
20 to patent misuse, but Google has asked for sanctions here
21 because they are telling the Court that F&G has misused its
22 patent by asserting Google infringes it.
23     THE COURT: No. They are asking for sanctions because
24 they say you presented a frivolous claim --
25     MR. BURATTI: I understand.

Page 44

1      THE COURT: -- without any research before you filed
2  the suit --
3      MR. BURATTI: I understand.
4      THE COURT: -- and knowing it's legally and factually
5  unsupportable.
6      MR. BURATTI: And implicitly within its allegation
7  that our claim was frivolous is that we used our patent poorly,
8  we used our patent wrongly.
9      THE COURT: I'm sorry. Has that ever been stated?
10     MR. AL-SALAM: We're not asserting the doctrine of
11 patent misuse, which is a totally separate doctrine that
12 applies under the anti-trust laws.
13     THE COURT: I haven't seen that argued or alleged
14 anywhere.
15     MR. BURATTI: I understand that, Your Honor.
16     What I'm saying here is that it's the way that Google
17 presents its claim that is tantamount to --
18     THE COURT: The counterclaim?
19     MR. BURATTI: Sorry. The Counterclaim, yes.
20     I mean, we have got very clear law. In Heidelberg --
21     THE COURT: They are not seeking rule 11 sanctions on
22 that basis, are they?
23     MR. BURATTI: I understand, Your Honor. I'm trying to
24 illustrate while 271(d) grew up in the context of a patent
25 misuse defense, it doesn't say "patent misuse." The statute

Page 45

1  doesn't. It's part of § 271. It's part of the patent
2  infringement statute. It doesn't require an anti-trust
3  allegation. It requires some kind of allegation that you're
4  not using your patent the way that Congress said you should and
5  when you say that about somebody, then you can respond with --
6  it doesn't -- just because someone else has a license doesn't
7  mean that you get to infringe our patent because they have a
8  license unless you are either a bona fide purchaser or you are,
9  you're the recipient of an Anton/Bauer implied license.
10     THE COURT: Mr. Buratti, you have lost me. I have no
11 idea what it is you are arguing right now. I am trying to
12 focus on substantial noninfringing uses and what material facts
13 in dispute are there that show there are no substantial
14 noninfringing uses and you haven't answered my question.
15     MR. BURATTI: I'll go back to the Google manual and to
16 the use by the consumers of --
17     THE COURT: This is a motion for summary judgment not
18 on the counterclaim, but on the Complaint. Am I right,
19 Mr. Al-Salam? You are not seeking summary judgment on the
20 counterclaim.
21     MR. AL-SALAM: No, Your Honor. We're seeking summary
22 judgment on the Complaint.
23     THE COURT: On the Complaint.
24     MR. BURATTI: The fact issue -- first, the fact issue
25 is is there a substantial versus an insubstantial noninfringing

Page 46

1  use. Okay? I see that Google has done an effective job mixing
2  the two issues here of the license, which shouldn't provide a
3  defense to patent infringement. Okay? That's what 271(d) says
4  in the Heidelberg Harris case --
5      THE COURT: No, it's the existing of the license as
6  evidence that there are substantial noninfringing uses. That's
7  what all of the licenses that you have all issued to various
8  companies show, doesn't it?
9      MR. BURATTI: No, that's not what the law says.
10 Google has confused the law here. It is not a defense to
11 patent infringement to assert someone else's license. In the
12 context of a method claim, if --
13     THE COURT: They're not. They're not saying "Let me
14 defend because you have licensed other people, other
15 companies to use your scrolling process or method."
16     They are saying "The very existence of the fact that
17 you have licensed other companies shows there is
18 substantial noninfringing uses." That's all it shows.
19 It's evidence.
20     MR. BURATTI: Yes.
21     THE COURT: And it's undisputed.
22     MR. BURATTI: That's correct.
23     THE COURT: So --
24     MR. BURATTI: Is it substantial -- I mean, they're
25 relying on the use of mice without scrolling features.

Page 47

1      THE COURT: Or mice with scrolling features which are
2  licensed and properly sold and used.
3      MR. BURATTI: And those are noninfringing uses.
4      THE COURT: Correct.
5      MR. BURATTI: But they depend upon the use and
6  application of a license that someone else has and Google
7  doesn't and that's why those don't bar Google for being liable
8  from infringement. That's the point that we're trying to make
9  here. There is a --
10     THE COURT: So, answer some of the questions I asked
11 Mr. Al-Salam earlier. Every time I buy any computer product
12 that -- I have a whole range of computer games and educational
13 tools at home that my children use, and every time they put
14 that in and start scrolling, are those companies also
15 infringing?
16     MR. BURATTI: The user is not infringing, no.
17     THE COURT: What user?
18     MR. BURATTI: The end-user.
19     THE COURT: No. Are the companies that sell -- you go
20 anywhere and you buy any software and put it into your computer
21 and you use it and you scroll. Either you scroll with a little
22 circle on a laptop or you scroll with a mouse and you play
23 around with it.
24     MR. BURATTI: Maybe. It only depends upon whether the
25 only functional use for that software is with the scrolling

Page 48

1  mouse.
2      THE COURT: Well, without it you really can't play
3  very effectively. It's hard to play those computer games
4  without scrolling.
5      MR. BURATTI: This is the fact issue, whether it's
6  substantial or insubstantial.
7      THE COURT: No, that's not a fact issue. The fact is
8  am I infringing or is the Court system infringing when we all
9  sit around and scroll? Is the United States District Court
10 infringing?
11     MR. BURATTI: Do I have sovereign immunity?
12     THE COURT: No, is the United States District Court
13 infringing when all of us sit around and scroll about?
14     MR. BURATTI: If the software application that you're
15 using achieves its only functionality with the scrolling mouse
16 and you are using a nonlicensed scrolling mouse, then, yes.
17 But if you're using a licensed scrolling mouse, the Court
18 system --
19     THE COURT: Is not.
20     MR. BURATTI: -- is not.
21     THE COURT: Neither is Google, is it?
22     Let me take a break on that one and let you think
23 about that and we'll be right back.
24     MR. BURATTI: All right.
25     [There was a short recess at 10:35 a.m.]

Page 49

1      THE COURT: Please be seated.
2      Mr. Buratti.
3      MR. BURATTI: Thank you.
4      My answer is still maybe, and you've asked me to
5  assume that with any scrolling device that meets the scrolling
6  means in part of claim 12 -- you look down at line 46.
7      THE COURT: Line 46 of what?
8      MR. BURATTI: Column 15, line 46 of the '229 patent,
9  Exhibit 1 to Google's opening brief. It wasn't highlighted in
10 the presentation but -- because they only focus --
11     THE COURT: Line 46 on what page of the patent?
12     MR. BURATTI: Column 15, which is -- it's like page --
13 column 15.
14     THE COURT: Line 46?
15     MR. BURATTI: Line 46 where the patent claim picks up,
16 "Said method comprising." Now it talks about the pieces
17 of the method that are existing in F&G's allegations in the
18 software that's accused.
19     So, if I take your hypothetical question and I take
20 out the scrolling means, some mouse or some computer scrolling
21 mechanism or some other mechanism, and I ask myself what are
22 the fact issues, which is what you've asked me, we didn't hear
23 very much on it from Google because they don't want to face
24 that their software contains each of the method steps that are
25 used in the method of operating the computer that's claimed in

13 (Pages 46 to 49)

February 22, 2007

Page 50

1  claim 12 that is the method claim that's asserted as infringes
2  in this case. It's a complex sort of methods. It hasn't been
3  addressed by Google. They just want this claim to be about a
4  mouse and not about the method.
5      It's the software that embodies the method and if I
6  take your hypothetical, you have illustrated the factors before
7  me as exist in the Google Earth software, it follows these
8  steps. They have ignored it because if they don't, then it's
9  not easy for them to get out of this case. Their software
10 performs these steps and they are fact issues that surround it.
11     THE COURT: A lot of software performs these steps to
12 the extent that the end user sits around scrolling, playing a
13 computer game or an educational computer application, any sort
14 of thing. Right?
15     MR. BURATTI: Maybe. Maybe. But, once again, the
16 fact issue exists as to whether or not the software embodies
17 the method portion of this claim when it's used with a
18 controlling features, and if it does, it infringes. Google
19 infringes.
20     THE COURT: Whether the software embodies the method
21 portion of this claim when it's used with a what?
22     MR. BURATTI: A scrolling means as claimed in the rest
23 of the patent claim. Google wants the scrolling means to be
24 just a mouse. Our position is that there are equivalents to
25 that structure, that there are additional structures disclosed

Page 51

1  in the specification. None of that has been put before the
2  Court because Google didn't put it before the Court when it
3  moved for summary judgment. Its software embodies the method
4  portion of this claim and if it's used with any kind of
5  scrolling mechanism, then it infringes.
6      THE COURT: Show me in your opposition what are the
7  disputed facts that present that?
8      MR. BURATTI: They are in the correspondence that
9  are --
10     THE COURT: I have your statement of undisputed facts,
11 your response to the statement of undisputed facts. That's
12 where you have to put forward of what facts you disputed.
13 Right?
14     MR. BURATTI: We responded to Google's disputed facts
15 there, Your Honor, yes. We're not cross-moving so we didn't
16 include our own statement of disputed facts.
17     THE COURT: What disputed facts have you advanced to
18 prevent the entry of summary judgment? That's your burden as
19 mountains nonmovant here.
20     MR. BURATTI: We have our analysis that's outlined in
21 our correspondence with Google at pages 5 through 8 of our
22 opposition paper.
23     THE COURT: What exhibit?
24     MR. BURATTI: Exhibits 1, 2, 4 and 5.
25     THE COURT: Letters from counsel are not --

Page 52

1      MR. BURATTI: These are letters from counsel, Your
2  Honor.
3      THE COURT: Are you asking me to take those as
4  disputed material facts for purposes of summary judgment?
5      MR. BURATTI: No, Your Honor. I'm asking you to
6  consider those -- you're asking what evidence did we cite.
7      THE COURT: You need to, as the nonmovant, come
8  forward and say "Here are the disputed material issues of fact"
9  and letters from counsel to each other are not the type of
10 evidence we look at at summary judgment for purposes of saying
11 "Here are disputed material facts that the trier of fact
12 needs to consider."
13     MR. BURATTI: Yes, Your Honor. Those arguments that
14 are advanced there depend upon the Google manual which
15 illustrates that the Google software has every single step
16 performed in the method --
17     THE COURT: Where is the Google manual?
18     MR. BURATTI: That, I believe, is Exhibit 9.
19     THE COURT: You are saying Exhibit 9 creates a triable
20 issue?
21     MR. BURATTI: I'm saying Exhibit 9 illustrates some of
22 the elements that are not addressed at all in Google's papers
23 but show the use of the software according to the patented
24 method, and, again, Your Honor, because we didn't -- we weren't
25 presented with arguments on claim construction, of course, and

Page 53

1  Google attempts to look at just the single other claim element,
2  I haven't really done a lot of work to amalgamize to all of the
3  questions I'm addressing now. I'm going to have to do this one
4  on the fly, but we, we argue that the Google manual shows all
5  of the steps in this method.
6      Google never made any argument except for on the
7  scrolling method. Let me show you where the scrolling method
8  is, the scrolling issue is. If you see on page 6 of 11 of
9  Exhibit 9, "Navigating Google Earth," and then, again, in the
10 subsection on mouse wheel on page 8 of 11.
11     THE COURT: I'm sorry. Let's start with "Navigating"
12 and "Google Earth." Where is the disputed material issue of
13 fact?
14     MR. BURATTI: It's the subsection on mouse wheel on
15 page 8 of 11 in the section that begins on 6 of 11.
16     THE COURT: "Mouse Wheel"?
17     MR. BURATTI: Right. It teaches you to use a mouse
18 wheel as a scrolling mechanism.
19     Now, there, of course, are any number of, as you asked
20 me in your hypothetical, there are any number of scrolling
21 means that could be used the same way that the mouse wheel is
22 used here, and because this software performs all the steps of
23 the method in combination with the scrolling means that's
24 claimed in the first part of the patent that doesn't require a
25 mouse, there are fact issues that remain unbriefed. They rely

Page 54

1  only on the scrolling mechanism.
2      Your question was about the software, but this is
3  broader than the issue that Google relies upon today and it's
4  outside the scope of all the motions papers, that Google
5  software performs all the rest of the patented method. The
6  scrolling means is what Google relies upon here and the Court's
7  hypothetical asks me to go beyond the issue that Google relies
8  upon in its papers and point out fact issues.
9      THE COURT: No, no. That's not true.
10     You are trying to defend not only a motion for summary
11 judgment, Mr. Buratti, but a motion for rule 11 sanctions.
12     MR. BURATTI: Yes.
13     THE COURT: It is your obligation as the nonmovant to
14 come forward on the first and show "Here are the disputed
15   material issues of fact."
16     So, my question asks you to address that which you
17 should have briefed most carefully in opposition and that you
18 should have been prepared to address today because it dovetails
19 into the request for rule 11 sanctions.
20     So, you're now going to the materials that you have
21 all supplied in opposition and you are saying "Here are" -- I
22 assume -- "Here are the disputed material issues of fact" and I
23 didn't understand your answer.
24     MR. BURATTI: Okay.
25     Google has a direction to its users to use a scrolling

Page 55

1  means that falls within the claim element.
2      Fact issue number one. Google uses mice. Google
3  employees use mice. Google developers use mice that have
4  scrolling features.
5      THE COURT: And if they used a mouse that's sold by
6  Logitech, is there any problem with that?
7      MR. BURATTI: That use by the user doesn't infringe.
8      THE COURT: What if Google had said "Use a scrolling
9    mouse and buy it from Logitech"?
10     MR. BURATTI: Well, then, that might be an instruction
11 that would relieve it of liability for contributory
12 infringement, if it said that and there were evidence that it
13 actually didn't care, that it knowingly and actively aided and
14 abetted another's direct infringement by getting a mouse A4Tech
15 and -- I'm looking at this slide that Google presented to us
16 this morning. We have got Dynapoint, Razor USA, Acrox
17 Technology, Patent Wireless, Addamax Technology. There are
18 five, six, seven other companies that Google clearly is aware
19 that are selling unlicensed mice that are in litigation right
20 now.
21     So, you know, if Google knows that people are doing
22 this and tells them to do it anyway --
23     THE COURT: It's not telling them to buy from folks
24 who don't have a license, are they?
25     MR. BURATTI: I understand that. I understand that.

Page 56

1      They point to the DSU Medical case in the context of
2  induced infringement. A claim in this case -- and I don't
3  think -- I mean, we've got a motion for summary judgment on
4  induced infringement in the reply brief. I didn't see one in
5  the opening brief.
6      THE COURT: It's in a footnote.
7      MR. BURATTI: It's not in the footnote. The footnote
8  in the opening brief assumed away the induced infringement
9  claim based on --
10     THE COURT: Based on what you all represented in the
11 joint discovery report.
12     MR. BURATTI: Based on what was written in the joint
13 discovery.
14     All I can say is that they are on notice of the claim
15 and the notice pleading requirements are met here. We have put
16 them on notice and we have made very clear in our prior
17 correspondence that post-date the joint discovery plan that
18 induced infringement is in this case and those are the exhibits
19 that I pointed out to you moments ago, Your Honor.
20     THE COURT: What disputed material issue of fact
21 exists that prevents the issue of summary judgment on the
22 induced infringement claim?
23     MR. BURATTI: Specific intent.
24     THE COURT: Where is the fact? What facts have you
25 put forward?

Page 57

1      MR. BURATTI: That Google specifically has knowledge
2  of companies -- knowledge of the patent.
3      THE COURT: Where is that? Show me the facts by
4  affidavit, by deposition, by anything that shows that.
5      MR. BURATTI: Okay.
6      The facts about knowledge of the patent -- I hope
7  you'll agree with me -- can come from notice by counsel that
8  there's a patent, and there are correspondence that pre-date
9  this case, that came after this case, that clearly discussed
10 the patent.
11     Google knew about the patent before the case was
12 filed. Google continued to act by distributing and selling and
13 making advertising money with its software, a software that
14 performs all the steps of the method, and that its own actual
15 literature teaches people to use a scrolling means that would
16 make and perfect infringement, and they, obviously, know about
17 companies -- and I'll use this as an exhibit, if I may, this
18 page -- they obviously know about these individuals using
19 these mice and the DSU standard doesn't change Manville Sales'
20 standard that the Federal Circuit announced previously.
21     This is a question of knowingly and actively aiding
22 and abetting another's infringement. If Google buys its
23 mice, and we don't know where they come from, but viewing the
24 facts as they exist and the factual inferences that the jury is
25 entitled to make in a light most favorable to the nonmovant

Page 58

1  here, that factual inference is Google specifically knows about
2  and intends for people to use its Google Earth with a scrolling
3  mouse that's not licensed.
4       That's not a factual inference that doesn't -- that
5  Google can assume away like it does in its reply brief. It's a
6  factual inference based on credibility of witnesses, weight of
7  evidence and other particular issues that are suited for the
8  jury.
9       THE COURT: What facts have you presented that Google
10 Earth specifically knows and intends for people to use Google
11 Earth with a scrolling mouse that is not licensed?
12      MR. BURATTI: It's a logical factual inference that
13 reasonable minds could differ on, Your Honor, based on Google's
14 education and knowledge of the patent of nonlicensed companies.
15      THE COURT: Because somebody knows that there are
16 people out there who infringe, therefore, the knowledge is
17 imputed that when I direct you to use a product and you could
18 buy an infringing product, that, therefore, I'm intending you
19 to buy the infringing one and not the legal one? Is that what
20 you are saying?
21      What case is there for that proposition? You are
22 saying that because I direct you to use a certain product and I
23 know that you can buy a licensed product or you can buy an
24 infringing product, that, therefore, I am inducing you to buy
25 the infringing one. What case stands for that proposition,

Page 59

1  Mr. Buratti, because you seem to be very well versed in patent
2  law, but I haven't seen one.
3       MR. BURATTI: I'm saying, Your Honor, that the
4  fundamental principles of law dictate that the jury is entitled
5  to make a factual inference if, in fact, there is one to be
6  made and we shouldn't be deprived the opportunity for both
7  discovery and --
8       THE COURT: Oh, you've had that, haven't you? You
9  have had months and months and months.
10      MR. BURATTI: I'll address that if you like right now,
11 but I'm almost hesitant to.
12      You may remember last December when we continued to
13 have week-long extensions for mediation and we were asking
14 Google in these 5 page and 6 page long statements of law and
15 fact and everything about all of our claims. Well, while we
16 were trying to get some resolution of these issues and being
17 threatened with sanctions and delaying our substantive
18 discovery requests, which are now pending, and Google told us
19 "No, we're not interested in mediation" after we worked
20 for a few months to try to get an early mediation, even after
21 we agreed on a mediator, to now have that kind of thrown at us
22 as, you know, it's our fault that we didn't ask for discovery
23 when we thought we were waiting to hear from them, I don't
24 know, three or four months that went by between our first
25 request with substantive -- all of the substantive issues that

Page 60

1  are in Google's brief we addressed in these letters and three
2  or four months went by and Google didn't respond, and rather
3  than respond, all of a sudden, we get one short one-liner from
4  Mr. Al-Salam that says "We're not interested in paying for
5  mediation" which would have cost a couple of thousand
6  dollars. We talked about doing it over the phone. Merit-based
7  mediation with a mediator we already agreed on, delay, delay,
8  delay, rule 11 motion.
9       Yeah, we didn't serve any discovery and we have now.
10 We have asked for deposition of the individual from Google
11 whose name escapes me right now. We served our document
12 request. We've served interrogatories. We've served requests
13 for admissions. They're all pending. We have a piece of
14 evidence that forms the basis for our rule 56(f) request, two
15 piece, in fact, the blogs and the manual from Google itself
16 that teaches the use of a scrolling means.
17      F&G's position is we have complied with rule 56(f) --
18      THE COURT: Let me interrupt you once more.
19      So, because they teach the use of a scrolling means,
20 you're saying it's irrelevant that the scrolling means is
21 lawful and is properly licensed to many companies from which
22 end-users can acquire them. Simply by virtue of the fact it
23 directs the use of a scrolling means, and "it," mainly Google,
24 is aware that there are infringers out there that, therefore,
25 it is contributing to and inducing infringement.

Page 61

1       MR. BURATTI: The user is not liable for contributory
2  infringement.
3       THE COURT: I understand.
4       "It," Google.
5       MR. BURATTI: Google may be liable for induced
6  infringement and if the other uses are not substantial, which
7  our position is it's a fact issue --
8       THE COURT: You haven't presented anything in
9  opposition to that, have you? What fact is there that the uses
10 are not substantial?
11      MR. BURATTI: The only thing that relieves Google from
12 a -- that gives Google a substantial use, defense to the claim
13 of contributory infringement, is a license, but 271(d) says
14 they can't free-ride on another person's license.
15      THE COURT: But that's not a factual issue. You
16 haven't presented a material issue of fact in opposition to
17 their position that there are substantial noninfringing uses
18 out there.
19      MR. BURATTI: No, our argument is primarily legal.
20      The fact issue is that the software performs all of
21 the claimed steps in the method and when used with a scrolling
22 device infringes.
23      Our position is that as a matter of law, it's not
24 proper to assert someone else's patent license to defend
25 against your own infringement.

Page 62

1  THE COURT: No, but that's not your claim, though, is
2  it?
3  MR. BURATTI: I'm sorry?
4  THE COURT: You're saying your position is that there
5  is infringement because Google instructs on all of the
6  steps of the method that your client has a patent for. Right?
7  MR. BURATTI: The Google software and Google Earth
8  software includes all of the steps for the method. When used
9  with the scrolling mouse, it infringes.
10 THE COURT: But that's not your claim in the Amended
11 Complaint.
12 MR. BURATTI: There's a 271(b) and (c) claim both in
13 the Amended Complaint. 271(a) appears in paragraph 3 of the
14 Amended Complaint, although not specifically stated.
15 THE COURT: It's not.
16 MR. BURATTI: I'm sorry. 271 et seq.
17 THE COURT: The entire 271?
18 So, where is the claim that you are articulating now
19 in your Complaint because what I see in paragraph 7, "Defendant
20 is willfully and deliberately infringing the patent by
21 distributing within the U.S. software compatible with the
22 scrolling mouse."
23 There is a lot of software out there that's compatible
24 with the scrolling mouse. You are looking at a whole universe
25 of possible defendants.

Page 63

1  MR. BURATTI: Yes, Your Honor.
2  Compatibility is not the question here. It's
3  suitability.
4  THE COURT: No, this is your allegation.
5  MR. BURATTI: I understand, as written. They're on
6  notice of our claim of patent infringement that's direct and
7  indirect and contributory --
8  THE COURT: Where is the direct? I'm looking at the
9  Amended Complaint. I know inducement. Inducement is alleged
10 in paragraph 12.
11 MR. BURATTI: I understand that it's not specifically
12 stated in the Amended Complaint.
13 THE COURT: So, it isn't there.
14 MR. BURATTI: 271(a). It's in the original Complaint.
15 THE COURT: But then you receded from that position
16 because you realized Google doesn't sell mice.
17 MR. BURATTI: But it's not the sales of the mouse
18 that's alleged to be infringing here. It's the sale of the
19 software that's used --
20 THE COURT: That's compatible.
21 MR. BURATTI: It only has one substantial use that
22 achieves its functionality, Your Honor, and that substantial
23 use is with a scrolling means. It doesn't need to be the
24 mouse, obviously, as I think we've kind of gotten down to,
25 software sales.

Page 64

1  THE COURT: So then all of the computer programs I
2  have at home and in my office, they are all compatible with
3  mice and scrolling mice and scrolling features.
4  MR. BURATTI: But some of them don't depend upon the
5  scrolling feature and don't perform all of the steps of the
6  patented method. Those softwares do not infringe.
7  Software like Google Earth that comprises all of the
8  steps in the method claim and uses a scrolling feature to
9  achieve its only real functionality, which we think is a fact
10 issue in this case based on the blogs and the factual
11 inferences that can be drawn therefrom, justify denial of
12 Google's motion on the basis there are genuine issues of fact
13 with factual inferences that reasonable minds could differ
14 about and that, therefore, should be the jury's call.
15 THE COURT: I don't know if you wanted to address the
16 rule 11 motion before I hear from Mr. Al-Salam.
17 MR. BURATTI: Only briefly.
18 I will point out first that we didn't understand when
19 we first got Google's papers that 271(d) issue because of the
20 Heidelberg case that's cited in our brief in the first excerpt
21 from letters from counsel and, consequently, took issue with
22 their notice under rule 11 and, second, that the level of
23 analysis that these respective law firms engaged in prior to
24 bringing suit is reflected by the correspondence identified in
25 pages 5 through 7 of the brief.

Page 65

1  THE COURT: Of which brief? I'm sorry.
2  MR. BURATTI: Our the opposition brief, of F&G's
3  opposition brief.
4  There was a lot of work that went into the maintenance
5  of this claim, and I think that the level of Google's endeavors
6  with their computer presentations and the mouse examples --
7  there's one other thing I do want to point out here. The
8  cherry-picked figure that was used only reflects one of the
9  preferred embodiments, and if you look at some of the other
10 figures that appear in the patent claim -- this is figure 6 --
11 you can see how a software can perform all the steps of this
12 patented method used with this scrolling mouse.
13 There are good bases for this claim. We did our
14 research. We provided claim charts. We provided analyses,
15 legal and factual, and there's no reason for sanctions to be
16 awarded for anybody in this case.
17 I have nothing further, unless the Court has any
18 questions.
19 Mr. Brufsky?
20 Your Honor, Mr. Brufsky has provided me with a
21 February 12th letter from Google's counsel, which I would like
22 to provide a copy of to the Court. We don't need to exhibit or
23 anything. It would just be for your edification.
24 In the letter, he identifies that -- this is Google's
25 request, four pages for claim construction, things we don't

17 (Pages 62 to 65)

February 22, 2007

Page 66

1  know about and didn't know about in this briefing schedule.
2  It's suggesting the construction under § 112 6th
3  paragraph, the means plus function section, of five different
4  claim elements, including many of the method claim elements
5  that pertain to the software I have just outlined.
6  In it Google says "We agreed that each definition
7  above applies to the claim term itself. Our agreement does
8  not address the existence or scope of equivalents under 35
9  USC § 112 6th paragraph and/or the Doctrine of
10  Equivalents."
11  In our view, this is an admission by Google that there
12  are fact issues with respect to the scope of equivalents
13  permissible for the structures that are disclosed in the
14  specification and for the Doctrine of Equivalents analysis of
15  infringement.
16  And the other point Google makes in the letter is a
17  disagreement between counsel, Mr. Brufsky and Mr. McBrayer,
18  Ryan McBrayer, an associate with Perkins Coie. He works with
19  Mr. Al-Salam.
20  The letter says "We disagree regarding whether the
21  computer hardware recited in the first 22 lines of claim 12
22  are required limitations." It cites the patent. "We will
23  present this issue to the Court."
24  These are underlying factual issues that relate to
25  claim construction and infringement analysis in the case, and

Page 67

1  Google's position is they need to be dispensed with by the
2  Court.
3  Under these circumstances, F&G submits that,
4  effectively, summary judgment isn't appropriate.
5  THE COURT: Mr. Buratti, thank you very much.
6  MR. BURATTI: Would you like a copy of the letter?
7  THE COURT: No. Thank you. You stood up to heavy
8  questioning and I thank you.
9  MR. BURATTI: Thank you.
10  THE COURT: Mr. Al-Salam.
11  MR. AL-SALAM: Thank you, Your Honor.
12  The Court, obviously, has a grasp of the issues, so I
13  don't want to belabor the issues. There are a few things I
14  want to go over that Mr. Buratti said.
15  One is claim construction. For one thing, claim
16  construction is an issue of law. It's not an issue of fact.
17  More importantly, I'm surprised to hear all of this
18  about claim construction when the parties filed a stipulation
19  that said they wanted to get this motion resolved before claim
20  construction. That's why we delayed the claim construction
21  schedule.
22  What Mr. Buratti is referring to now --
23  THE COURT: I'm sorry. Where is that stipulation?
24  MR. AL-SALAM: It was filed with the Court to continue
25  the claim construction schedule so that we could address this

Page 68

1  motion.
2  Secondly, Your Honor, I mean, what Mr. Buratti is
3  referring to, the letter from Mr. McBrayer, is simply we are
4  required, though, under the schedule to exchange our positions
5  on claim construction and we're doing so. It has nothing to do
6  with this motion.
7  As we pointed out, and as the Court has pointed out,
8  when it comes to claim construction, all one needs to do is
9  look at Exhibit 4 to their opposition, which is their claim
10  construction.
11  There's no question -- and I don't think Mr. Buratti
12  disputes this, although the argument went around in a manner
13  that I couldn't keep up -- but there it says "cordless optical
14  mouse," and when it comes to the performance of the
15  scrolling commands, it says the scrolling commands are
16  performed by a mouse.
17  THE COURT: He's saying that's just the preferred
18  embodiment.
19  MR. AL-SALAM: I'm not sure what that means.
20  It has to be performed by some piece of hardware and
21  they have licensed that hardware to a number of different
22  manufacturers. We don't sell that hardware. There is no way
23  this claim just covers software. Under their own claim
24  construction, it's not even plausible that our software
25  performs all of these functions.

Page 69

1  They, themselves, say -- by the way, there is no
2  specific term that says scrolling means, but there is a step of
3  scrolling and a scrolling direction. It says "The supplemental
4  control signal described above is generated by the pressing
5  of a mouse button and the subsequent movement of the mouse
6  up or down."
7  That's what's creating, generating the signals that
8  are the scrolling signals.
9  I mean, I don't think that's in dispute still because
10  I heard him say things like "The novel aspect of the patent is
11  the track ball, is the scrolling functionality," and as the
12  Court has picked up, what matters is are we -- well, let me
13  step back. One more thing: 271(d). 271(d), I heard
14  Mr. Buratti say it doesn't mention patent misuse. 271(d) says
15  that "No patent owner otherwise" -- otherwise -- "entitled to
16  relief for contributory" -- I'm sorry -- "for infringement
17  or contributory infringement of a patent shall be denied
18  relief or deemed guilty of misuse for illegal extension of
19  the patent right by reason of its having done one or more
20  of the following." One being "licensed or authorized
21  another to perform acts which if performed without its
22  consent would constitute contributory infringement."
23  That has nothing to do with whether or not you can be
24  liable for contributory infringement if you licensed direct
25  infringers.

Page 70

1  THE COURT: If someone else is licensed.
2  MR. AL-SALAM: Yes, the patentee. That's what I mean,
3  the patentee.
4  In fact, in the Anton/Bauer case -- and this is at
5  page 1350, 329 F.3d. This is the case that Mr. Brufsky was
6  involved in.
7  It says "if Anton/Bauer's customers have an implied
8  license to practice the patented combination, they cannot
9  infringe the '204 patent and Tag, the defendant, cannot be
10  liable for either inducement of infringement or
11  contributory infringement."
12  There's no question that if the underlying customers
13  are licensed, we cannot be liable for contributory infringement
14  or inducement of infringement.
15  When it comes to contributory infringement, it creates
16  a substantial noninfringing use. When it comes to inducement,
17  they have to show some active steps that we're trying to get
18  people to use unlicensed mice.
19  It doesn't even make sense. It was their burden to
20  put forth some factual evidence, some evidence that we have
21  done such a thing. There is no such evidence.
22  When it comes to discovery -- I mean, I'm not sure
23  what all that talk about mediation was, but we never suggested
24  or led them to believe that we were going to engage in early
25  mediation, and we certainly never did anything on which they

Page 71

1  could have relied not to take any discovery.
2  We served our motion on November 22nd. We never once
3  suggested that we were going to withdraw it. In fact, we
4  wanted to get this issue resolved as soon as possible and
5  before either party had to spend more money on claim
6  construction or anything else because, frankly, we think the
7  whole case is a waste of everybody's time and everybody's
8  money, and that's one of the reasons we're seeking our fees and
9  costs.
10  I think that's all I need to address, Your Honor,
11  unless the Court has any further questions.
12  I appreciate the Court's time and attention.
13  THE COURT: I don't know if Mr. Buratti has anything
14  else he wanted to add.
15  MR. BURATTI: No, I have nothing else, Your Honor.
16  THE COURT: I certainly won't be ruling today.
17  I would like the parties to advise me, -- and I will
18  give you a deadline, a reasonable time frame, next Friday.
19  I'll give you a full working week to let me know if I still
20  need to issue my written decision on this motion, and I say
21  that because not having rolled up my sleeves and sat down with
22  my computer and my mouse to put together the opinion, I am
23  strongly inclined to grant the motion in its totality, and
24  before I do that, I will give you both the opportunity to let
25  me know by next Friday if this is still an issue for the

Page 72

1  Court's resolution or if you have been able to reach agreement.
2  I don't grant rule 11 sanctions lightly. In fact, I
3  hardly ever do that, but this is one case where I'm very
4  tempted to do so.
5  As I say, I'm not issuing my ruling. I may change my
6  mind as I sit down and grapple with the writing of the opinion,
7  but if you don't want to see that opinion, you can let me know
8  by next Friday and I would just ask for a status report from
9  the parties that, yes, you do desire the Court to issue its
10  ruling on the summary judgment-rule 11 motion before I sit down
11  and start putting it together.
12  Is there anything additional?
13  MR. AL-SALAM: Nothing from our side, Your Honor.
14  MR. BRUFSKY: No.
15  THE COURT: I thank you all for fine argument.
16  Again, Mr. Buratti, I'm sorry if I bombarded you with
17  many questions.
18  You all have a day.
19  MR. AL-SALAM: Thank you, Your Honor.
20  MR. BURATTI: Thank you.

Page 73

1  CERTIFICATE
2  I hereby certify that the foregoing is an accurate
3  transcription of proceedings in the above-entitled matter.

DATE            BARBARA MEDINA
                Official United States Court Reporter
                301 North Miami Avenue, Suite 404
                Miami, FL 33128-7792   305.523.5518
                     (Fax) 305.523.5519
                Email: barbmedina@aol.com