UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NO. 06-60905-CIV-ALTONAGA/Turnoff

F&G RESEARCH, INC.,

                Plaintiff,

v.

GOOGLE INC.,

                Defendant.

## DEFENDANT GOOGLE INC.'S COMBINED: (1) REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT ON ISSUE DIRECT INFRINGEMENT AND (2) OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................... 1

II.  GOOGLE'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED............ 3

III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT TO GOOGLE ON
THE ISSUE OF DIRECT INFRINGEMENT .................................................... 4

IV.  THE COURT SHOULD NOT RE-ADDRESS THE ISSUE OF INDUCEMENT........... 5

V.  F&G'S REMAINING ARGUMENTS ARE IRRELEVANT, MISLEADING
AND ARE INCONSISTENT WITH ITS PRIOR POSITION ................................... 6

    A.  Claim Construction Is Not Required ............................................. 7

    B.  F&G's Proposed Claim Construction is Inconsistent With its Claim Charts
        and Its Own Arguments .............................................................. 7

    C.  F&G Misrepresents Google's Position ......................................... 11

    D.  F&G Misrepresents the Neutral Evaluator's Charge and Opinion .......... 12

    E.  The Authorities Relied Upon by F&G Do Not Support Its Position ......... 12

    F.  F&G's Arguments Concerning the Functionality of Google Earth Are
        Misleading or Irrelevant ............................................................ 13

VI.  THE COURT SHOULD AWARD GOOGLE ITS ATTORNEYS' FEES AND
COSTS .............................................................................................. 14

VII.  CONCLUSION ..................................................................................... 14

64968-0001/LEGAL13454996.4

## I.    INTRODUCTION

Defendant Google Inc. ("Google") moved on June 7, 2007 for reconsideration of the Court's March 7, 2007 Summary Judgment Order or, in the alternative, for summary judgment on the issue of direct infringement. Google seeks reconsideration on the basis that the Court erred in not dismissing the Amended Complaint in its entirety because: (a) the Amended Complaint does not state a claim for direct infringement; and/or (b) Google's summary judgment motion sought dismissal of the Amended Complaint in its entirety, regardless of the theory of infringement. In the alternative, Google seeks summary judgment on the issue of direct infringement.

F&G has filed a "Response to Google's motion for Summary Judgment for Direct Infringement" and a memorandum in support of a "Cross-Motion for Summary Judgment for Direct Infringement and/or, in the Alternative, for Active Inducement of Infringement." *F&G has filed no response, either in title or substance, to Google's motion for reconsideration.* F&G's response does not, for example, address the scope of Google's original summary judgment motion or the scope of the Amended Complaint. F&G's failure to respond to the motion for reconsideration is, in itself, a sufficient basis for granting of the motion.

Alternatively, the Court should grant Google's motion for summary judgment on direct infringement and deny plaintiff's cross-motion. The relevant legal principles and facts are undisputed. Google's distribution of Google Earth's software cannot, as a matter of law, constitute direct infringement of claim 12 of the '229 patent. Direct infringement requires that Google perform every step of the method, which is a detailed method of operating a computer with a scrolling mouse. F&G has offered no evidence that Google has ever performed the steps of the method, much less that it has done so using an unlicensed mouse.

Plaintiff's request for reconsideration of the Court's Order on inducement should also be denied. The Court granted summary judgment on the issue of inducement because inducement requires that Google have had a specific intent to induce infringement. Such intent requires,

among other things, that Google *knowingly* induce infringement by others. As the Court recognized in its Order (*See* Docket Entry ("DE") No. 67), Google has no policy or technical means to determine the specific type of mouse or input device used by a customer, and cannot know whether such a device is licensed or is being used in an infringing manner. F&G's papers do not address the issue of specific intent, much less offer any new arguments or evidence on the issue. F&G's failure to even address the basis for the Court's Summary Judgment Order is, in itself, a sufficient basis to deny the request.

F&G makes other arguments, but those arguments are irrelevant, frivolous, misleading and/or reflect a wholesale change in F&G's position. F&G now argues, for example, that the Court should have conducted claim construction before considering the summary judgment motion, although it previously argued that claim construction should occur *after* the summary judgment motion was considered. See D.E. 55, 63. F&G also now claims that the "supplementary control means" referenced in the claim language should not be interpreted under 35 U.S.C. § 112, ¶ 6 as a "means-plus-function" element. F&G previously conceded, however, that the term should be interpreted in that manner. *See* McBrayer Decl., Ex. 1.[1]

Perhaps most incredibly, F&G now asserts that the claim is infringed when Google software is used *without* a scrolling mouse. Although irrelevant to the issues raised by Google's motion, this argument has no legal support. The patent, the claim language, and F&G's own claim charts reflect that the claim is directed at a special type of a scrolling mouse that produces supplementary control signals. Nonetheless, F&G argues that the "supplementary control means" limitation is superfluous, and is part of a preamble that should not limit the claim. The closest case relied upon by F&G, however, reaches the opposite result. In particular, the Federal Circuit has made clear that where the body of a method claim refers to a previously identified structure, that structure is a limitation to the claim. In the instant case, the method steps in claim 12 refer to the previously identified ("said") "supplementary control signal," which is

---

[1] Google's Opposition to F&G's cross-motion is supported by the Declaration of Ryan McBrayer. Citations hereafter to "Ex. ___" are to exhibits in the McBrayer Declaration.

described as being generated by the "supplementary control means" of the mouse. Pursuant to 35 U.S.C. § 112, ¶ 6, the term is limited to the means disclosed in the patent for performing the function—a spring-biased lever on the side of a mouse. Plaintiff's contention that the navigation compass on Google Earth is somehow "equivalent" to a scrolling mouse is wrong, as a matter of law.

Accordingly, the Amended Complaint should be dismissed, and Google should be awarded its reasonable attorneys' fees and costs.

## II.    GOOGLE'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED

Google seeks reconsideration of the Court's March 7, 2007 Order to the extent the Order did not dismiss claims relating to "direct infringement." *See* Google Memorandum in Support of Motion at 2-6. As explained in Google's opening papers, there are at least two reasons why the Court should reconsider its Order. First, although plaintiff argued direct infringement in opposition to Google's motion for summary judgment, the Amended Complaint does not *plead* any claim for direct infringement. The Amended Complaint makes a general assertion that Google has infringed, but then "specifically" explains the basis for the claim as contributory infringement and inducement of infringement. *See Id.* at 2-4; Amended Complaint, ¶¶10-11.

Alternatively, Google's original motion for summary judgment requested that the Court "grant summary judgment to Google and dismiss the Amended Complaint with prejudice." Motion at 16. The motion was not a motion for *partial* summary judgment. Although Google did not discuss the theory of direct infringement in its original motion for summary judgment, because no such claim was articulated by F&G in the pleadings, its failure to address that theory did not limit the scope of the requested relief. Google's original motion was sufficient to encompass any theory of infringement—it was plaintiff's burden to create a genuine issue of fact on infringement.

F&G has not submitted any response to Google's motion for reconsideration. F&G's response does not, either in title or substance, address Google's arguments in support of its

motion for reconsideration. Accordingly, Google's motion for reconsideration should be granted. Local Rule 7.1(C) expressly provides that failure to oppose a written motion "may be deemed sufficient cause for granting the motion."

If the Court grants the motion, it need not consider the other issues raised by plaintiff.

## III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO GOOGLE ON THE ISSUE OF DIRECT INFRINGEMENT

Alternatively, to the extent the Court denies the motion for reconsideration, it should grant summary judgment to Google on the issue of direct infringement. There is no evidence that Google has directly infringed the patent, and plaintiff's arguments to the contrary are frivolous. F&G asserts, for example, that Google's distribution of Google Earth can constitute direct infringement "where as here 'the method claim [is] directed at the distribution of the software." Opp. at 12; *see also Id.* at 2 ("This memorandum will demonstrate that . . . the sale of the program directly infringe [sic] at least claim 12 of the '229 patent."). The argument has no support—claim 12 of the '229 patent is not directed to a method of distributing software and distributing software thus cannot directly infringe claim 12.

Claim 12 is directed at a "method of operating a computer," the computer having a "mouse connect[ed]," wherein the mouse has, among other things, a "supplementary control means for generating a supplementary control signal of variable size and magnitude . . .," and wherein the method "include[s] generating . . . scrolling commands including the steps of: . . . scrolling in a scrolling direction along said scrolling axis . . . according to a sign of said supplementary control signal." Even if a user of Google Earth could perform the claimed method by using Google Earth software with an unlicensed and infringing mouse, which Google disputes, Google could not be liable for *direct* infringement.

At most, Google could be liable for inducement of infringement or contributory infringement arising from its distribution of Google Earth. *See, e.g., Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1342 n.2 (Fed. Cir. 2001) ("[M]ore properly the allegation is that the operation of the devices directly infringes the method claims at issue, or that the sale of

the devices induces customers to infringe the method claims."); *Joy Techs., Inc. v. Flakt, Inc.*, 6

F.3d 770, 773 (Fed. Cir. 1993) ("The sale of the apparatus . . . was not a direct infringement

because a method or process claim is directly infringed only when the process is performed.").

The issues of contributory infringement and inducement of infringement have, however, already

been addressed and resolved by the Court's summary judgment Order. Accordingly, the specific

methods and/or devices used by the public when using Google Earth cannot, as a matter of law,

render Google liable for direct infringement.

There is no legal basis for F&G's claim that the distribution of Google Earth can

constitute direct infringement, and F&G has not provided any other facts that support its claim

for direct infringement. F&G has not presented any evidence, for example, that Google has

practiced the claimed method. For these reasons, the Court should grant summary judgment on

the direct infringement claim, and dismiss the Amended Complaint with prejudice.

## IV.    THE COURT SHOULD NOT RE-ADDRESS THE ISSUE OF INDUCEMENT

Most of the discussion in F&G's brief is directed at *inducement of infringement*. In

particular, most of the discussion is directed at the possibility that members of the public, when

using Google Earth, might use it in an infringing manner. F&G argues that such "users . . . are

actively induced by Google to infringe the method of the patent." Opp. at 2.

The Court has already granted summary judgment on the theory of inducement, and F&G

has not justified any reconsideration of the Court's Order on inducement. Most importantly,

F&G has not even addressed the basis for the Order. Inducement requires that the alleged

infringer know of the patent and have the *specific intent* to cause infringement. *DSU Med. Corp.*

*v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (en banc) (affirming that defendant was not liable for

inducing infringement because, although it knew of the patent, there was evidence that it had a

good faith belief that it was not infringing). In particular, the defendant must have "actively and

*knowingly* aid[ed] and abet[ted] another's direct infringement." *Id.*, 471 F.3d at 1305 (quoting

*Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 6628 (Fed. Cir. 1988) (emphasis in original)).

-5-

"[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and actions to induced infringement must be proven." *Id.* at 1305.

The lack of evidence of specific intent was the basis for the Court's summary judgment ruling. The Court noted that plaintiff's only evidence of intent was the Google Earth user manual, including instructions on how to use Google Earth with a scrolling mouse, and a user's blog referring to the benefits of using a mouse with Google Earth. *See* Order at 17. The Court also noted that it was undisputed that Google has no policy or procedure, and no technical means, to determine the specific mouse or input device that a Google Earth user utilizes with the software. *Id.* at 18. Finally, the Court noted that F&G has admitted that it knows of no action that Google has taken to induce users to use non-licensed infringing mice with Google Earth. *Id.* Based on these undisputed facts, the Court held that there was insufficient evidence to establish the specific intent necessary for inducement. *Id.*

F&G's briefing does not address the Court's reasoning. It does not address the issue of specific intent, much less set forth any new or different evidence on the issue. F&G's brief does not contain any argument or evidence addressing the fundamental fact that Google Earth can neither control nor determine the specific type mouse or input device used by users. There is no basis for the Court to reconsider its order on inducement.

## V.    F&G'S REMAINING ARGUMENTS ARE IRRELEVANT, MISLEADING AND ARE INCONSISTENT WITH ITS PRIOR POSITION

As discussed above, Google's motion should be granted because: (a) F&G has not responded to the motion for reconsideration; (b) there is no evidence that Google has engaged in direct infringement; and (c) there is no basis for reconsideration of the Court's Order on inducement. The discussion above is sufficient to resolve the issues raised by Google's motion. F&G makes various other arguments and contentions, all of which are irrelevant, frivolous, misleading and/or contrary to its earlier positions. Although these arguments are not relevant to the issue of direct infringement (or inducement), Google is reluctant to ignore them, and their lack of merit supports Google's request for fees.

### A.    Claim Construction Is Not Required

F&G spends much of its briefing addressing claim construction, asserting that the "Court abdicated and refused to [engage in such claim construction]." Opp. at 5. F&G's position is contrary to its position prior to the original motion for summary judgment. At that time, F&G twice moved to extend claim construction briefing, arguing that it would be "beneficial to resolve the issues presented in the Summary Judgment Motion before engaging in claim construction." Joint Motion for Enlargement of Time for Claim Construction Briefing [D.E. 55] at 1; *see also* Joint Motion for Continuance of Claim Construction Deadlines [D.E. 63]. Amazingly, after twice seeking extensions of claim construction, so that the Court could rule on the summary judgment motion, plaintiff now claims that the Court "abdicated" its responsibility in not pursuing claim construction *earlier.*

### B.    F&G's Proposed Claim Construction is Inconsistent With its Claim Charts and Its Own Arguments

F&G's substantive arguments on claim construction are contrary to its own claim charts, and its prior positions. F&G now argues that the claims are directly infringed when used *without* a scrolling mouse. *See* Opp. at 3-4 ("There are alternative methods of operation of GE; one which may not be infringing—the activation of the same by use of a scrolling mouse; while the other—activation of the GE navigation compass embedded in the GE software by use of any mouse or equivalent input device (e.g., by holding down the left button)—is infringing." (bold in original; footnote omitted.)) The argument borders on the absurd. The '229 patent is directed at a specific type of mouse. This is reflected in the title of the patent ("Mouse and Method for Concurrent Cursor Position and Scrolling Control"), the abstract of the patent ("In a manual input device for controlling a cursor on a computer display (e.g., a mouse), a supplemental proportional control device including a spring-loaded lever . . ."); the figures; the specification, and the claims. The first eleven claims begin with the word "mouse." Claims 12-16 recite a method of "operating a computer" using a mouse. Claim 12, for example, the broadest of the

method claims, specifies that a computer include a display and a "mouse connect[ed] to said computer." The claim specifies that the mouse has specific "means," including the following:

(a)   "means for generating x-y incremental movement information for positioning a cursor at any of a plurality of positions displayed on said display means during interactive operation;"

(b)   "binary control means for generating binary control commands for said computer;"

(c)   "supplementary control means for generating a supplementary control signal with variable sign and magnitude under control of said user;" and

(d)   "communication means for transmitting said movement information and said binary control information to said computer."

Further, and as reflected in the file history, the inventors did not invent scrolling mice, or even techniques for navigating on a computer display.[2] Instead, claim 12 relates to a method of operating a computer using a specific type of mouse having a "supplementary control means" and a very specific technique of "analyzing a trail of [] cursor . . . at periodic time intervals," "dynamically setting a status variable according to a dominant access," "setting a scrolling access to a direction option," and "scrolling in a direction . . . according to a sign of such supplementary control signal and status of said status variable."

In the claim chart that it prepared for Google Earth, F&G admitted that the supplementary control means disclosed in the patent is the spring-biased lever on the side of the mouse, and claimed that Google Earth infringed because it uses a mouse with "an equivalent

---

[2] The file history of the '229 patent confirms that the applicants did not invent scrolling mice or on-screen navigation tools. The applicants originally sought broad claims, but they were rejected because, among other reasons, the prior art included mice that allowed a user to scroll using additional controls on the mouse such as a scrolling wheel. See Declaration of Ryan McBrayer, Ex. 2 (U.S. Patent No. 5,095,303 to Clark disclosing scrolling wheels on a mouse). The patentee amended the claims to distinguish such prior art and argued that the spring-loaded lever (not a scrolling wheel) made the invention novel. *Id*, Ex. 3. The patentee also did not invent the use of mouse buttons (e.g. left- or right-clicks) to engage on-screen buttons or other controls to cause scrolling of the computer display. First, the patent itself distinguishes such use of a mouse to click on "predetermined areas" as inferior prior art. See '229 patent, col. 2, ll. 33-63; col. 3. ll. 35-40. Second, the use of mouse buttons to engage on-screen controls was a well-known method to cause scrolling of the computer displays. See McBrayer Decl., Exhibit 4 (U.S. Patent No. 5,485,174 to Henshaw and No. 5,333,247 to Gest, both disclosing clicking an on-screen button or control to cause scrolling).

scroll wheel and optical encoders, optical detectors, and shaft angle encoders, to generate supplementary control signals." *See* D.E. 49 (F&G's earlier Opposition), Ex. 4, pp 4-5.

Nevertheless, plaintiff now takes the position that the patent requires no mouse whatsoever. According to F&G, the "particular mouse details in the claim are superfluous, as it has admitted that the method can be embodied in an electronic computer software program or virtual means rather than the mechanical structure, and thus the mouse details are not limitations in the practice of the method by the interactive user." Opp. at 7-8. On the other hand, F&G admits that the reference in claim 12 to following a trail of the cursor means a cursor "of the mouse shown on the computer display means." *See* Opp. at 6. F&G does not explain how a claim could be infringed if there were no mouse cursor trail to analyze.

F&G argues that claim 12's reference to a "supplementary control means" is not a limitation of the claim. *See* Opp. at 5-6. The argument is frivolous, and has no factual or legal support. In support, for example, F&G cites *Eaton Corp. v. Rockwell Int'l. Corp.*, 323 F.3d 1332 (Fed. Cir. 2003) for the proposition that a preamble does not limit the invention unless it "recites essential structure or steps . . . necessary to give 'life, meaning, and vitality' to the claim." Opp. at 7. *Eaton* does not support F&G's position in any manner; it is directly contrary. In *Eaton*, the court *reversed* the district court's failure to limit a method claim to a specific structure recited in the preamble. In particular, the method claim was directed at a "multiple step method for controlling an automatic mechanical vehicle drive line system." 323 F.3d at 1335. The preamble described the structure of the system, and then set forth two specific steps of the method. *Id.* at 1336. The claim was analogous to claim 12 of the '229 patent. In interpreting the claim, the Federal Circuit noted that when "limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Id.* at 1332. In the claim in *Eaton*, the court noted that the steps of the method referred to specific structures described in the preamble by use of the term "said":

> Moreover, the claim language makes clear that not any vehicle
> clutch or drive train will do. When the body of the claim refers to

-9-

'*said* vehicle master clutch (8),' and '*said* drive train," it is referring back to the particular clutch and the particular drive train previously described in the preamble.

323 F.3d at 1339 (emphasis in original).

Accordingly, the court limited the claim language to the specific structures disclosed in the preamble. [3]

The same reasoning applies to the '229 patent. The '229 patent requires, in the body of the claim, that scrolling commands include scrolling along an axis "according to the sign of *said* supplementary control signal and the status of *said* variable." (emphasis added). The "said" supplementary control signals refer to the preamble, which describes such a signal as being generated by a "supplementary control means" contained in a "mouse." In particular, the claim refers to "said supplementary control signal [generated] by operation of said supplementary control means." Accordingly, the "supplementary control means" is a necessary limitation in the claim.

Because it uses of the word "means," there is a presumption that must be interpreted under 35 U.S.C. § 112, ¶6. *See Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). F&G previously conceded that the element was a means plus function element. *See* McBrayer Decl. Ex. 1 (correspondence confirming treatment as means-plus-function element). F&G Offers no support, however, and there is now, for the suggestion F&G now, however, suggests that "supplementary control means" should *not* be interpreted under Section 112 ¶ 6 (See Opp. at 8) F&G offers no support, however, and there is none, for the suggestion under 35 U.S.C. § 112 ¶6), the term is limited to the structure disclosed in the patent for performing the function, as well as its equivalents. F&G also concedes the *only structure* disclosed in the patent for generating a supplementary control means is the lever on the side of a mouse. Accordingly, the claim must be limited to a lever on the side of a mouse or some "equivalent." Although the

---

[3] The remaining cases cited by F&G with respect to preambles (*see* Opp. at 8) are distinguishable based on the claim language at issue. In none of those cases, for example, did the body of the claim refer back (e.g., use "said") to the preamble.

term "equivalents" may allow some other structures to fall within the claim, the software functionality of Google Earth cannot, as a matter of law, be considered as equivalent to a spring-loaded lever on the side of a mouse.

## C.   F&G Misrepresents Google's Position

F&G's brief repeatedly misrepresents Google's position. The brief begins, for example, by arguing that Google has moved for summary judgment "that the method practiced by the users of the Google Earth software program . . . do not directly infringe the method claims of the '229 patent." Opp. at 1. That is not true. Google's motion is based on the fact that F&G has presented no evidence that *Google* (not users of Google Earth) has directly infringed the '229 patent.

At page 4, F&G argues Google has "agreed" that if "such 'virtual means' were embodied in the software, there would be direct infringement of the steps of the method claim." Google has never "agreed" to that proposition, and F&G's cited evidence—page 1 of Google's opposition to plaintiff's motion to compel discovery—does not have any statements suggesting that Google has adopted this position. Claim 12 of the '229 patent specifies that the mouse must contain a "supplementary control means" to generate a "supplementary control signal." To the extent the patent applicants invented anything, they invented a special type of mouse with a lever on the side. They did not invent computer mice in general, or software that allows computer users to navigate across computer screens using computer mice. See footnote two.

On page 12, F&G argues that Google has agreed that "the distribution of the software" can constitute a direct infringement "where as here, 'the method claim [is] directed at the distribution of the software." *Id.* at 12. Google does not agree that claim 12 is directed at a method of distributing software. In fact, claim 12 clearly is directed at a method "of operating a computer." The claim language has nothing to do with distributing software.

**D.    F&G Misrepresents the Neutral Evaluator's Charge and Opinion**

Like many of F&G's other arguments, the opinion of the neutral evaluator is not relevant to the issue of direct infringement or inducement. The opinion may, however, be relevant to the issue of attorneys' fees. At the least, Google does not want the Court to be misled as to either his charge or his opinion.

In that regard, F&G asserts that the evaluator was "not employed to opine on infringement, but only on the scope and meaning of the claim." Opp. at 5 (bold omitted). F&G also asserts he concluded that "if the software performed [the claimed function] there could be an infringement." Brufsky Decl., ¶ 7.

This was neither the charge of the evaluator nor his conclusion. The briefing of the parties (without exhibits) is attached hereto. *See* McBrayer Decl., Ex. 5. The briefing reflects that the "parties have agreed that the mediation will focus on a single question – whether plaintiff F&G Research, Inc. ("F&G") is likely to prevail on its claim that Google *directly* infringes claim 12 [of the '229 patent"] by its distribution of Google Earth software." *Id.*, Google brief at 1 (emphasis in original). The briefing reflects that Google explained there were two reasons why Google did not directly infringe: (1) "The distribution of software cannot, as a matter of law, constitute direct infringement of a method claim"; and (2) "the steps of claim 12 require the use of a mouse that generates a 'supplementary control signal.'" *Id.*

There is also no dispute that Mr. Flinn concluded that F&G was not likely to prevail on its claim. Mr. Flinn suggested that F&G not pursue the claim. McBrayer Decl. ¶ 6.

**E.    The Authorities Relied Upon by F&G Do Not Support Its Position**

The authorities cited by F&G do not support its position. As discussed above, the *Eaton* decision does not support its argument that the preamble does not limit the claims.

Similarly, F&G cites *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005) for the proposition that direct infringement exists "if the steps [of a method claim] are embodied in a software sold by the defendant or alleged infringer." Opp. at 3 (bold omitted). *Eolas* does not stand for that proposition. First, *Eolas*, at the page cited by F&G, was not

-12-

addressing direct infringement under § 271(a). Instead, it considered the scope of § 271(f), which provides that infringement exists where a party exports from the United States "all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the patent if such a combination occurred within the United States." Second, and perhaps more importantly, *Eolas* discussed a *product claim*, not a method claim. *See* 399 F.3d at 1330 (reciting claim 6 and noting that it is directed at a "computer program product"); *id.* at 1339 (applying § 271(f) to claim 6). *Eolas* does not, in any manner, support F&G's position that a method claim can be infringed by the distribution or sale of software.

**F.      F&G's Arguments Concerning the Functionality of Google Earth Are Misleading or Irrelevant**

F&G discusses at length the fact that the navigation compass on Google Earth allows navigation across the screen. Opp. at 9-15. F&G states that this functionality "was never brought to the Court's attention during the proceedings." *Id.* at 12. First, Google Earth can be used for free, and the functionality of its navigation compass is publicly available. To the extent these facts were not brought to the Court's attention, it was because F&G failed to do so.

Second, however, and more importantly, the facts are irrelevant. Google does not deny that its Google Earth software allows a user to navigate across the screen. This navigation ability does not infringe the '229 patent. F&G did not invent mice, scrolling mice, or software that allows navigation across a screen. *See* footnote two. The '229 patent is not directed at software navigation; it is directed at a method of operating a computer using a particular type of mouse. Although F&G may wish that it had invented tools for navigation on a display, the '229 patent does not, as a matter of law, have such a scope.

## VI.    THE COURT SHOULD AWARD GOOGLE ITS ATTORNEYS' FEES AND COSTS

Plaintiff's opposition supports Google's request for fees and costs. As discussed above, the opposition (1) fails to address the key arguments and issues, (2) is rife with misrepresentations, and (3) makes frivolous and unsupportable arguments concerning the scope of protection afforded by the '229 patent. F&G has abused the judicial process by filing this action, and has exacerbated that abuse by its continued pursuit of claims that it knows or should know have no merit.

## VII.    CONCLUSION

For the reasons set forth above, Google's pending motion for reconsideration or, in the alternative, for summary judgment on the issue of direct infringement should be granted. The Court should award Google its reasonable attorneys' fees and costs associated with having to defend this action. In response, Google will provide more detailed facts concerning such fees and costs.

Respectfully submitted this 13th day of August, 2007.

FELDMAN GALE, P.A.

/s/ Christina DeAngelis

Christina D. DeAngelis (Fla. Bar 664456)
One Biscayne Tower, 30th Floor
2 South Biscayne Blvd.
Miami, FL 33131
Tel: 305-358-5001
Fax: 305-358-3309

Ramsey M. Al-Salam, (*Pro Hac Vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
ralsalam@perkinscoie.com

Attorneys for Defendant Google Inc.

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the document listed above is being served this day on Allen D. Brufsky, Esq., Allen Brufsky, P.A., 475 Galleon Drive, Naples, Florida 34102, via transmission of Notices of Electronic Filing generated by CM/ECF.

_____s/ Christina DeAngelis_____

64968-0001/LEGAL13454996.4