UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

06-60905-CIV-ALTONAGA/Turnoff

F & G RESEARCH, INC.,

        Plaintiff,

vs.

GOOGLE INC.,

        Defendant.

## GOOGLE INC.'S BRIEF TO MEDIATOR

# EXHIBIT 5

41063-0039/LEGAL13220551.1

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1
II. FACTUAL BACKGROUND ................................................................................................ 1
    A. Overview of the '229 Patent ...................................................................................... 1
    B. The Allegations of Infringement ............................................................................... 2
    C. Google's Summary Judgment Motion ....................................................................... 3
    D. The Summary Judgment Order ................................................................................. 4
III. CLAIM 12 IS NOT DIRECTLY INFRINGED BY GOOGLE ........................................... 5
    A. Google Cannot Directly Infringe By the Distribution of Software ........................... 5
    B. Claim 12 Cannot Be Directly Infringed Without Use of a Mouse or Equivalent Hardware .................................................................................................. 5
    C. The "Supplementary Control Means" Is Part of a Mouse or Equivalent Hardware ................................................................................................................... 8
IV. CONCLUSION ..................................................................................................................... 9

**EXHIBIT 5**

## I. INTRODUCTION

Pursuant to the mediation procedure agreed upon by the parties, defendant Google Inc. ("Google") submits this mediation brief to Patrick Flinn of Alston & Bird LLP. The brief has been served, but not filed with the Court.

The parties have agreed that the mediation will focus on a single question—whether plaintiff F&G Research, Inc. ("F&G") is likely to prevail on its claim that Google *directly* infringes claim 12 of U.S. Patent No. 5,313,229 (the "'229 patent") (Exhibit[1] 1) by its distribution of Google Earth software. As explained below, Google does not directly infringe for at least two reasons. First, the distribution of software cannot, as a matter of law, constitute direct infringement of a method claim. Second, the steps of claim 12 require the use of a mouse that generates a "supplementary control signal." The Google Earth software alone, without the use of a mouse or equivalent hardware, cannot perform each step of the claim.

## II. FACTUAL BACKGROUND

### A.   Overview of the '229 Patent

The specification of the '229 patent emphasizes that the alleged invention is a specific type of scrolling computer mouse. In particular, the patent, which is entitled "Mouse and Method for Concurrent Cursor Position and Scrolling Control," is directed to a special type of computer mouse, with a "supplementary control means" that allows a user to scroll at variable speeds. The Abstract of the Patent, which is intended to provide notice to the public of the subject matter of the patent,[2] reads in part:

> In a manual input device for controlling a cursor on a computer
> display (*e.g.*, a mouse) a supplementary proportional control
> device including a spring-loaded lever displaceable from the

---

[1] All cited exhibits are collected in the Appendix provided with this memorandum.
[2] 37 C.F.R. § 1.72 provides that the "purpose of the abstract is to enable the United States Patent Trademark Office and the public generally to determine quickly from a cursory inspection the nature and gist of the technical disclosure."

**EXHIBIT 5**

equilibrium position in either of two directions and protruding out of the mouse housing is provided for concurrently controlling the scrolling operation.

The first sentence of the "Summary of the Invention," describes the inventors' desire for "a new mouse and associated method for improving its control capabilities." '229 patent, col. 3, ll. 25-27. The "Summary of the Invention" goes on, *for two columns*, to describe the mouse in detail.

The first five drawings (Figures 1A, 1B, 1C, 2, and 3) illustrate the physical mouse and its "supplementary control means." The remaining drawings show the electrical or algorithmic functionality of the mouse. The written description then describes a scrolling mouse with a "supplementary control means," mouse driver software for reading the signals generated by the "supplementary control means," and a method for using the mouse. Lastly, the patent ends with 17 patent claims. The first 11 claims begin with the word "mouse" and require a "supplementary control means." The next five claims, including the only asserted claim – claim 12 – claim a method of scrolling that uses the mouse.

### B.    The Allegations of Infringement

The Complaint in this action alleges that Google infringes the '229 patent by "distributing and selling within the United States and/or importing into the United States for sale its various line of scrolling wheel computer mice." Complaint, ¶ 7. The Complaint is based on a form complaint used against the distributors of various scrolling computer mice, including Logitech, Primax Electronics Ltd., Acco Brands, Inc., Sony Corporation, Spec Research, Inc. and Chicony Electronics Co. Each of these companies have taken a license to the '229 patent. In addition, plaintiff has recently sued Microsoft, another supplier of scrolling mice.

After being informed that Google is not in the business of distributing or selling "scrolling wheel computer mice" (or any other mice), plaintiff amended the Complaint. The

**EXHIBIT 5**

Amended Complaint (Exhibit 2) alleges that Google is "willfully and deliberately infringing the '229 patent by distributing within the United States, software *compatible* with the scrolling mouse of the '229 patent." Amended Complaint, ¶ 7 (emphasis added).

### C. Google's Summary Judgment Motion

The only theories of infringement articulated in the Amended Complaint are contributory infringement and inducement of infringement, both based on Google's distribution of software "compatible" with the patented mouse. In the parties' Joint Discovery Plan and Schedule (Exhibit 3), F&G alleged contributory infringement only and only with respect to Google's distribution of its Earth[3] software. Similarly, in reply to Google's counterclaim (Exhibit 4), F&G only articulated a claim for contributory infringement, again only against Google's distribution of its Earth software.

Google repeatedly tried to convince F&G and its counsel that the claim for contributory infringement had no merit because there were substantial non-infringing uses for the Google Earth software. The software works, for example, without a mouse, or with a non-scrolling mouse. The software also works with *licensed* mice, and plaintiff has licensed a substantial portion of the mouse industry. Thus, there are "substantial" non-infringing uses for the Earth software.

F&G refused to relent, however, forcing Google to file a motion for summary judgment of non-infringement and for sanctions under Rule 11 and 28 U.S.C. § 285. Based on the earlier pleadings and court papers, Google focused its motion on contributory infringement and, in the reply memorandum, on the issue of inducement. For the Mediator's convenience, Google's opening memorandum, F&G's opposition, and Google's reply memorandum are included in the Appendix as, respectively, Exhibits 5, 6 and 7.

---

[3] The Google Earth software can be downloaded for free at www.earth.google.com.

### EXHIBIT 5

### D. The Summary Judgment Order

On March 28, 2007, the Court granted summary judgment on the claims of contributory infringement and inducement of infringement. Exhibit 8. The Court did not dismiss the Amended Complaint, however, holding that the complaint states a claim for direct infringement and that the issue of direct infringement was not raised by Google's motion. *See* Order at 2 n.1.[4] For that reason, the Court deferred the issue of attorneys' fees and sanctions. *Id.* at 19.

In granting summary judgment, the Court reviewed and interpreted the patent claims. The Court held that all the claims, including claim 12, involve the use of a computer mouse. *See* Order at 3-6. In so holding, the Court relied on, among other things, the claim charts prepared by F&G. *See* Exhibit 9. The claim charts define each step in claim 12 as involving the "use of a computer mouse." Order at 5. Nevertheless, in connection with this mediation, plaintiff takes the position that no mouse or equivalent device is required to infringe claim 12. In particular, plaintiff asserts that claim 12 can be *directly* infringed by the distribution or use of the Google Earth software.

In lieu of proceeding with claim construction and a motion focused on the direct infringement claim, the parties agreed to this mediation/evaluation proceeding. Pursuant to the agreement of the parties, the mediator/evaluator has been asked to opine as to whether F&G is likely to prevail on its claim that the Google *directly* infringes claim 12 of the '229 patent by its distribution or internal use of Google Earth software.

---

[4] Google believes that its motion encompassed any theory of infringement, insofar as the motion sought summary judgment dismissing the Amended Complaint in its entirety. But for the parties' agreement to participate in this mediation, Google would have moved for reconsideration on the issue and/or filed a motion on the issue of direct infringement.

**EXHIBIT 5**

### III. CLAIM 12 IS NOT DIRECTLY INFRINGED BY GOOGLE

#### A. Google Cannot Directly Infringe By the Distribution of Software

As mentioned above, the critical issue in this mediation/evaluation is whether F&G is likely to prevail on its claim that Google directly infringes claim 12 of the '229 patent. Google cannot, as a matter of law, directly infringe claim 12 by its distribution of software. Method claims are not infringed by the sale or distribution of products. *See, e.g., Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The sale of the apparatus . . . was not a direct infringement because a method or process claim is directly infringed only when the process is performed."). This fundamental principle is sufficient, in itself, to find that F&G is unlikely to prevail on its claim of direct infringement by distribution of Google Earth software.

#### B. Claim 12 Cannot Be Directly Infringed Without Use of a Mouse or Equivalent Hardware

F&G also claims that the *use* of Google Earth software, even without any mouse or equivalent hardware, performs every step of claim 12. In particular, F&G claims that claim 12 does not require any use of a scrolling mouse or equivalent hardware. F&G is wrong.

Claim 12 has a long preamble, and then four distinct method steps. The fourth step requires scrolling "according to a sign of said supplementary control signal." *See* method step (d). For the convenience of the mediator, claim 12 is set forth in below, with some of the relevant parts highlighted:

> Method of operating a computer in an interactive manner by a user, said computer including a display means and a mouse connect[ed] to said computer, said mouse comprising means for generating x-y incremental movement information for positioning a cursor at any of a plurality of positions displayed on said display means during interactive operation, binary control means for generating binary control commands for said computer, supplementary control means for generating a supplementary control signal of various variable sign and magnitude under control of said user after said user, and communication means for transmitting said movement information

## EXHIBIT 5

and said binary control information to said computer; programmable circuit means in said computer for generating said display means, said display means including display areas accessible by said cursor for trigging excecution[sic] of scrolling commands under on receipt of said binary control means while said cursor is positioned on said predetermined display areas; said method comprising generating scrolling commands to move information items or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means by said user, said method including generating of said scrolling commands including the steps of:

a) analyzing a trail of said cursor at periodic time intervals;

b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals;

c) according to the status variable determined in step b), setting a scrolling access to a direction option, said direction options including an up-down option, a left-right option and an in-out option; and

d) scrolling in a scrolling direction along said scrolling access determined in step c) according to a sign of said supplementary control signal in the status of said status variable.

As is evident from the claim language, the steps expressly require that the scrolling occur according to "said supplementary control signal." The antecedent basis for "said supplementary control signal," is in the preamble, which provides that the mouse includes a "supplementary control means" that generates the "supplementary control signal." The claim itself is thus sufficient to establish that the use of a mouse is a required element. In particular, the claim requires a "mouse connect[ed] to said computer, said mouse comprising . . . supplementary control means for generating a supplementary control signal . . . ."

F&G apparently takes the position that the preamble does not, in any manner, limit the claim. Plaintiff is wrong. The preamble of a claim is a limitation when the preamble provides an antecedent basis for language in the body of the claim. *Electro Scientific Indus. v. Dynamic*

## EXHIBIT 5

*Details, Inc.*, 307 F.3d 1343 (Fed. Cir. 2002). More specifically, structure or hardware in a method claim preamble is a limitation when it provides an antecedent basis for the method steps. *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339-42 (Fed. Cir. 2003).

In *Eaton*, the claim was a method claim with two steps. The Federal Circuit held that a structural limitation in the preamble was a limitation, because it provided an antecedent basis to the language in the body:

> The body of the claim has two steps. The first step requires 'retaining said vehicle master clutch (8) engaged during the gear ratio shift in said drive train.' This step refers to structure that is identified and defined in the preamble: the vehicle master clutch and a drive train (which the parties agree is the same thing as the driveline). From the preamble we know that the drive train to be controlled has, among other things, a transmission with 'a plurality of gear ratio combinations [that are] selectively engagable' and that the 'transmission input shaft [is] operatively connected to said engine by means of a selectably engagable and and disengagable master clutch.' . . . The plain language of the claim requires the operation of this structure as the first step of the claimed method. Moreover, the claim language makes clear that not any vehicle clutch or drive train will do. When the body of the claim refers to '*said* vehicle master clutch (8),' and '*said* drive train,' it is referring back to the particular clutch and the particular drive train previously described in the preamble.

*Eaton*, 332 F.3d at 1339.

The same analysis applies to "supplementary control means" in the preamble of claim 12. Claim 12 requires, among other things, "scrolling in a scrolling direction...according to a sign of said supplementary control signal." Further, the preamble explains that the supplementary control signal is generated by a "supplementary control means," which is part of a "mouse." "Said supplementary control signal" is meaningless without reference to the preamble, and the explanation that it is a signal generated by a "supplementary control means." For these reasons, claim 12 requires the use of a scrolling mouse to perform the method. The *only* structure disclosed in the specification for generating a supplementary control signal is the mouse.

# EXHIBIT 5

C.  The "Supplementary Control Means" Is Part of a Mouse or Equivalent Hardware

As discussed above, the claim language, by itself is sufficient to establish that a mouse is a necessary part of claim 12. The preamble provides that the mouse includes the supplementary control means.

In addition, the parties have agreed that the "supplementary control means" in Claim 12 is a means-plus-function element under 35 U.S.C. § 112, ¶ 6, and that the relevant function is "generating a supplementary control signal of various sign and magnitude . . . ." *See* Exhibit 10 (correspondence confirming means plus function element). Accordingly, the term "supplementary control means" is limited to the structure disclosed in the specification for performing the function.

The '229 patent provides only one example of the "supplementary control means," pictured in Figure 1a at left and Figure 2b on the right:



**EXHIBIT 5**

"The mouse 10 includes supplementary control means 40 [with] a spring-loaded mechanism designed to be operated by a thumb of the same hand which holds and moves the mouse." *Id.* at 6:5-10. The supplementary control means contains a "lever 78" on a semi-circular "moveable part 42." *Id.* at 10-14. This assembly is mounted on an axle and held in an equilibrium position by a spring. *Id.* at 6:14-21. The lever protrudes through the side of the mouse so it can be manipulated by the user's thumb. *Id.* at 6:15-18. The lever can extend through either side of the mouse to allow for right-handed or left-handed operation. *Id.* at 6:60-63. This one supplementary control means—a spring-loaded lever coming out the side of the mouse—is the only mechanism the patent describes for generating a "supplementary control signal" as required by Claim 12.

Accordingly, the "supplementary control means" in claim 12 must be construed as the spring-loaded lever extending from the mouse that generates the supplementary control signal. There is no other disclosure in the specification for performing the function. Google Earth software is software, and does not contain any hardware elements. Because the software does not perform every step of the method by itself, the use of the software alone cannot directly infringe the claim.

## IV. CONCLUSION

For the reasons set forth above, F&G is unlikely to prevail on its claim that Google directly infringes claim 12 of the '229 patent.

# EXHIBIT 5

Respectfully submitted this 9th day of May, 2007.

By: _____
Ramsey M. Al-Salam, (Pro Hac Vice)
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
ralsalam@perkinscoie.com

Attorneys for Defendant Google Inc.

**EXHIBIT 5**

**ALLEN D. BRUFSKY, P.A.**
*REGISTERED PATENT ATTORNEY*
475 GALLEON DRIVE
NAPLES, FLORIDA 34102
Tel: (239) 963-9641
Fax: (239) 263-3441
Cell: (239) 851-0403
e-mail:allen@abpalaw.com
abrufs@aol.com

RECEIVED
MAY 11 2007
PERKINS COIE

May 10, 2007

Patrick J. Flinn, Esq.
Alston &Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

        Re:    F&G Research, Inc. v. Google,Inc.
                  Claim Construction

Dear Mr. Flinn:

      We hereby submit the following for your consideration as a neutral-evaluator in connection with the construction of claims of the US Patent 5,313,229 [1]("the '229 patent"), issued May 17,1994, owned by F&G. Certain claims in the patent relating to the method of operating a computer (claims 12-16) are alleged to be directly infringed in the above suit by Google. A subsidiary of Google, Goggle Earth ("GE") provides and/or sells over the internet, software embodying the method steps of operation of the computer, as claimed in the '229 patent.

A. The Invention of the '229 Patent

      The '229 patent relates as stated in its title to a computer "mouse and method for concurrent cursor position and scrolling control", commonly referred to as a "scrolling mouse".As stated in the Abstract and disclosed in detail in the Specification, a spring loaded lever or its equivalent such as a rotatable wheel protruding from the mouse housing displaceable from an equilibrium or zero position is provided for concurrently controlling a scrolling operation on the computer screen or display. A supplementary control signal is generated in response to operation of the lever or rotation of the protruding wheel driven by the thumb of the same hand which holds the mouse. The control signal varies according to displacement amount or rotation of the lever or wheel from its equilibrium position in the displacement direction and is thus used as a scrolling rate and direction control.

---

[1] Exhibit 1

**EXHIBIT 5**

An associated method is disclosed for setting the scrolling direction of the computer cursor on the computer display in correspondence to the dominant axis of the cursor's trail during its movement in an X or Y direction on the display. Detecting an approximately circular movement of the cursor or the equivalent of depressing the wheel, sets the scrolling axis perpendicular to the display screen plane, or in and out, i.e., in a third dimension or Z-direction.

Various mechanical or electronic means are disclosed and claimed for performing these functions in the Specification of the patent.[2]

B. <u>Claim Construction</u>

What is of issue here are the construction and meaning of the method claims defining the invention, and particularly the method of claims 12, 13, 14, 15 and 16. These are reproduced below for reference:

"**12. Method of operating computer in an a interactive manner by a user, said computer including a display means and a mouse connected to said computer, said mouse comprising means for generating x-y incremental movement information for positioning a cursor at any of a plurality of positions displayed on said display means during interactive operation, binary control meansfor generating binary control commands for said computer, supplementary control means for generating a supplementary control signal of variable sign and magnitude under control of said user, and communication means for transmitting said movement information and said binary control information to said computer; programmable circuit means in said computer for generating said display means, said display means including display areas accessible by said cursor for triggering execution of scrolling commands on receipt of said binary control commands while said cursor is positioned on said predetermined display areas; said method comprising generating scrolling commands to move information items or characters displayed on said display means from [a] said supplementary control signal [generated] by operation of said supplementary control means by said user, said method including generating of said scrolling commands including the steps of:**
    **a) analyzing a trail of said cursor [of the mouse shown on the computer display means] at periodic time intervals;**
    **b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals;**
    **c) according to the status variable determined in step b), setting a scrolling axis to a direction option, said direction options including an up-down option; a left-right option and a in –out option; and**
    **d) scrolling in a direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal and the status of said status variable.**

---

[2] A diagram and detailed explanation illustrating the operation of the method and apparatus disclosed as the preferred embodiment in the '229 patent is attached as Exhibit 2

2

**EXHIBIT 5**

13. Method as defined in claim 12, further comprising scrolling in said scrolling direction at a rate determined by said magnitude of said supplementary control signal.

14. Method as defined in claim 12, wherein said supplementary control signal is a periodic signal and comprising scrolling in said scrolling direction at a rate determined by said period of said periodic signal.

15. Method as defined in claim 12, wherein said analyzing includes determining a position of said cursor on said display means at said periodic time intervals in terms of a coordinate system consisting of a plurality of Cartesian coordinates determined by a plurality of cartesian axes.

16. Method as defined in claim 15, wherein said setting of said scrolling is such that said scrolling occurs along the one of said cartesian axes along with a cursor position difference during travel of said cursor along the said trail is larger than another cursor position difference along the other cartesian axes."

F&G contends that what is shown in bold font is the claimed method(s) and the remaining portions of the claims, particularly in independent claim 12 is superfluous.[3] The preferred embodiment of the scrolling mouse *apparatus* has mechanical means to generate the supplementary control signals to issue scrolling commands as stated in claims 1 to 11. However, claim 12 and dependent claims 13-16, relates to a *method* for generating such signals beyond the scope of mechanical structures. For example, virtual means in the GE program interactive with the user through a computer display would be covered. Reference in the the claims to mechanical structures or "means" is for reference and background only as to one type of device which could accomplish the practice of the method. However, these references are not limitations in the practice of the method. For example, GE admits that the method embodied in the software it makes and supplies for interactive use can be operated by any mouse[4], albeit the scrolling mouse is preferred in their literature[5].

The only structure recited in claim 12 necessary to give "life and vitality" to the method invention recited in claim 12 is the use of a computer having a mouse (scrolling or non-scrolling) or other input device (such as a trackball, touch pad or keyboard) to interactively generate the control signals in the electronic software program by moving the mouse cursor on the display means or screen.

---

[3] Attached is a letter dated February 12, 2007 from Google's counsel discussing what is necessary to be determined in the claim construction phase of the litigation. At the bottom of page 1 it is stated: "We disagreed regarding whether the computer hardware recited in the first 22 lines of claim 12 (see '229 patent, at 5:28-50) are required limitations". This refers to the non-bold font portion of claim 12 above. Further, the agreement as to what the claim terms may mean "does not address the existence or scope of equivalents under 35 U.S.C. § 112 ¶6 and/or the doctrine of equivalents.
[4] See website instructions as to mode of virtual operation of GE software as Exhibit 4.
[5] See instruction manual for use of Google Earth software (not provided).

3

**EXHIBIT 5**

In general, a preamble limits the claimed invention if it recites essential structure or steps ..necessary to give "life, meaning, and vitality" to the claim. *Eaton Corp. v. Rockwell International Corp. et al*, 323 F.3d 1332 (Fed. Cir. 2003). When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention. *Id* at 1339. The method claims in this case require only a computer and mouse, with the computer having a display (screen), for interaction with the user of the method. These structures are set forth in the preamble for antecedent basis for the manipulative method steps of generating scrolling commands to move information items or characters displayed on the computer screen. The particular mouse details in the claim are superfluous, as it is admitted that the method can be embodied in an electronic computer software program or virtual means rather than in a mechanical structure, and thus the mouse details are not limitations in the practice of the method by the interactive user. *Accord:Schumer v. Laboratory Computer Systems, Inc. et al*, 308 F.3d. 1304 (Fed. Cir. 2002).

Further, the mere fact that a method claim (e.g., claim 12) was drafted with language parallel to an apparatus claim (e.g., claims 1 to 11) with means –plus –function language does not mean that the method claim should be subject to an analysis under 35 U.S.C. § 112, para. 6. *Generation II Orthotics Inc. et al v. Medical Technology Inc.*, 263 F.3d 1356 (Fed. Cir. 2001). Here the steps of the method recited in claim12 are the limitations and stand on their own ordinary meaning.

**The preamble language of the method steps expressing the purpose of the method is also non-limiting,** for example, to generate scrolling commands **by operation of a supplementary control means by the the user,** *see Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc. et al*, 246 F.3d 1368,1375 (Fed. Cir.2001); **the essential limitations being the method steps for generating the scrolling commands as** expressed in the lettered paragraphs a) –d), inclusive, namely– "analyzing", "dynamically setting","according to the status variable" and "scrolling".*See: O. I. Corp. v. Tekmar Co, Inc.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997) [ process or method steps described by an "ing" verb are given their ordinary meaning and not subject to a section 112, para.6 analysis limiting them to a preferred embodiment disclosed in the patent].Accordingly, the Federal Circuit has determined that the detailed mouse structure recited in the method claims as the **preferred embodiment for practicing the method is immaterial and non-binding as presenting limitations to the invention when expressed in a method claim.** *Vaupel Textilmaschinen KG et al v. Meccanica Euro Italia S.P.A. et al*, 944 F.2d 870 (fed. Cir. 1991).

C. Infringement Analysis

Google through its Google Earth program and software is extending the benefits of the patented method to users of non-scrolling mice and other equivalent input devices such as touchpads and trackballs. The preferred embodiment disclosed in the '229 patent of the use of a scrolling mouse to generate the control signals has mechanical means to generate the supplementary signals to issue scrolling commands according to claims 1 to 11. However, claims 12-16, expands the scope of infringement beyond mechanical

4
**EXHIBIT 5**

structures to the virtual means supplied by GE on the display screen of the computer when the GE program is activated, graphically represented as four arrows disposed in four cardinal headings plus a central spot over which the mouse cursor is placed to start the method steps. The use of the virtual display accurately and literally reads on claim 12 of the '229 patent as shown in the diagram below. Infringement occurs because by incorporating this virtual device in the screen (instead of in the mouse) GE provides the interactive user with the "means" to generate signals to issue scrolling commands that are missing in all non-scrolling mice and track balls and touch pads. All that the input device must be capable of doing is to drive the mouse cursor, which is essential to practice of the method.

The infringing operation of Google Earth software is illustrated in the Diagram below coupled by with the zoom, and x-y coordinate movement features perform the



Scroll set according to direction, dominant axis and magnitude of displacement of mouse cursor from red spot.

Non Scrolling
Mice
Trackballs     =  TO A SCROLLING
Touch pads       INPUT DEVICE
Etc.

(RED) SPOT

Virtual means displayed in the commands bar of Google Earth to generate signals in conjunction with non-scrolling mice, Trackballs, Touch Pads, etc. to issue scrolling commands along the predominant axe and in a heading according to the steps described in the patented method described in claim 12 of the 229 Patent.

claimed method steps. This is confirmed by the GE website disclosure of Exhibit 4.

By including the method of claim 12 in their software [6], GE is made more appealing for users because it allows the user the unique experience of literally flying over the planet surface while controlling direction and speed.

Google Earth is a software program used to navigate through satellite images. The method of the '229 patent enhances navigation dramatically by allowing users to make gestures with the mouse cursor to tell the GE software, in an intuitive and effective way, the direction and speed in which he wishes to navigate. GE directly infringes the '229 patent because it supplies the patented method stepsby including it its software code as the principal feature of its functionality.

Sincerely,

Allen D. Brufsky

Cc: Ramsey M. Al-Salam
    Perkins Coie LLP

---

[6] The deposition of the software designer, McClendon, has been noted to confirm that the operation of the software is designed to generate the claimed method steps in F&G's construed claim interpretation.