# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 06-60905-CIV-ALTONAGA/Turnoff

**F & G RESEARCH, INC.,**

      Plaintiff,

vs.

**GOOGLE INC.,**

      Defendant.

_____/

### ORDER

**THIS CAUSE** came before the Court for a hearing on September 5, 2007, upon Defendant,

Google Inc.'s ("Google['s]") Motion for Summary Judgment and Attorneys' Fees [D.E. 43], filed

on December 19, 2006; Google's Motion for Reconsideration of Summary Judgment Order or, in the

Alternative, for Summary Judgment on Issue of Direct Infringement [D.E. 77], filed on June 7, 2007;

and Defendant, F & G Research Inc.'s ("F&G['s]") Cross Motion for Summary Judgment of Direct

Infringement, and in the Alternative for Active Inducement of Infringement [D.E. 108], filed on

August 2, 2007.  Although not titled as such, F&G's Cross Motion for Summary Judgment, with

respect to the claim of infringement by inducement, is, in fact, a motion asking the Court to

reconsider an Order of March 29, 2007 ("Previous Order").  In that Order, the Court entered partial

summary judgment in Google's favor as to F&G's contributory patent infringement and infringement

by inducement claims.  Consequently, the Court will address that portion of F&G's Cross Motion for

Summary Judgment as a motion for reconsideration.

      F&G is the owner of the right, title, and interest in and to U.S. Patent No. 5,313,229 ("the

'229 patent") by virtue of an assignment.  The '229 patent relates to an invention entitled "MOUSE

AND METHOD FOR CONCURRENT CURSOR POSITION AND SCROLLING CONTROL."
(*Amd. Compl.* [D.E. 4] ¶ 6) (emphasis in original).  F&G's Amended Complaint alleges that Google
infringes the '229 patent by distributing software within the United States that is compatible with a
scrolling mouse.  (*See id.* ¶ 7).  Specifically, F&G alleges that Google directly infringes the '229
patent, pursuant to 35 U.S.C. § 271(a), contributorily infringes, pursuant to 35 U.S.C. § 271(b), and
induces infringement, pursuant to 35 U.S.C. § 271(c), by the distribution of its software, which falls
within the scope of at least one claim of the '229 patent.  (*See id.* ¶¶ 9, 11-12).

On December 19, 2007, Google filed its Motion for Summary Judgment and Attorneys' Fees.
As stated, on March 29, 2007, the Court issued its Order Granting Partial Summary Judgment in
favor of Google with respect to F&G's contributory infringement and infringement by inducement
claims.  The Court did not address F&G's direct infringement claim because Google had not clearly
raised the issue in its Motion for Summary Judgment.  The Court also reserved its determination of
whether Google should recover attorneys' fees and costs, pursuant to Fed. R. Civ. P. 11 and 35
U.S.C. § 285, given that F&G's direct infringement claim remained.

Both parties now move the Court to reconsider portions of the Previous Order and for
summary judgment as to F&G's direct infringement claim.  Google seeks reconsideration of the
Court's conclusions that F&G stated a claim for direct infringement in its Amended Complaint and
that Google's Motion for Summary Judgment did not seek dismissal of the Amended Complaint in
its entirety.  F&G moves for reconsideration of the summary judgment entered in favor of Google
as to F&G's inducement claim.  Additionally, both Google, in the alternative, and F&G move for
summary judgment as to F&G's direct infringement claim.

Case No. 06-60905-CIV-ALTONAGA/Turnoff

## I. <u>STATEMENT OF FACTS</u>[1]

### *Introduction*

The Court has previously summarized the facts of this matter in detail in the Previous Order. Consequentially, the undersigned briefly reviews the facts and procedural posture of this case pertinent only to the motions presently before the Court.

### *The Patent and Prior Interpretation of Claim 12 of the Patent*

The invention described in the '229 patent consists of a special type of computer mouse that includes a "supplementary control" for "scrolling." (*See generally, '229 Patent* [D.E. 4], Ex. A). The '229 patent has 17 claims, that include both product and method claims. (*See id.*). The product and method claims of the '229 patent involve a computer mouse equipped with a mechanism (the supplemental control means) that transmits a signal (the supplementary control signal) to a computer that allows users to scroll through information displayed on a computer screen. (*See id.* col. 30, lns. 25-40). The Summary of the Invention of the '229 patent instructs that the basic object of the invention is to "provide a mouse which not only enables the user to drive a cursor over a screen of a display means, but also to smoothly scroll the displayed information at a plurality of speeds and at the same time to control the cursor position." (*Id.* col. 3, lns. 35-40).

Claim 12 of the '229 patent, the claim that F&G maintains Google directly and indirectly infringes, claims a "method of operating a computer in an interactive manner by a user . . . ." (*Id.* col. 15, lns. 28-29). During oral argument on Google's Motion for Summary Judgment, F&G contended

---

[1] Where any material facts are disputed, this is explained and noted.

that Claim 12 was a means plus function claim,[2] and, accepting F&G's interpretation of the '229 patent, the Court evaluated it as such.  (*See Feb. 22, 2007 Hearing Tr.* at 38).  In its present Motion, however, F&G has altered its interpretation of Claim 12.  F&G now contends that Claim 12 is not a means plus function claim.  The undersigned notes that the parties are still in agreement that Claim 12 is a method claim.

In the Previous Order, the Court analyzed Claim 12 as a means plus function claim given the fact that it instructs that the method involves "said computer including a display means and a *mouse connect* [sic] to said computer, said *mouse* comprising means for generating x-y incremental movement information . . . ."  (*Id.* col. 15, lns. 29-31).  Claim 12 further instructs that the method involves the generating of "scrolling commands to move information items or characters displayed on said display means from said supplementary control signal by operation of said supplementary control means . . . ," by way of the following steps:

> a) analyzing a trail of said cursor at periodic time intervals;
>
> b) dynamically setting a status variable according to a dominant axis of said cursor trail at said time intervals;
>
> c) according to the status variable determined in step b), setting a scrolling axis to a direction option, said direction options including an up-down option; a left-right option and a [sic] in-out option; and

---

[2] A means plus function claim is "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof," and the "claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6; *see also Faroudja Laboratories, Inc. v. Dwin Elec., Inc.*, 76 F. Supp. 2d 999, 1004 (N.D. Cal. 1999) (explaining that means plus function claims require that the method claimed be limited to the means defined in the patent's specification and its equivalents).  "If the word 'means' appears in a claim element in association with a function," courts presume that section 112, ¶ 6 applies.  *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999) (citation omitted).  The "presumption collapses, however, if the claim itself recites sufficient structure, material, or acts to perform the claimed function."  *Id.*

d) scrolling in a scrolling direction along said scrolling axis determined in step c) according to a sign of said supplementary control signal and the status of said status variable.

(*Id.* cols. 15-16, lns. 46-61, 1-4).

In communications with Google and in its Opposition [D.E. 49] to Google's Motion for Summary Judgment, F&G presented two claim charts proposing a claim construction for Claim 12.[3] The charts are respectively entitled "Infringement Analysis Re: Cordless Optical Mouse" (the "Cordless Mouse Chart") and "Infringement Analysis Re: the Computer Mouse" (the "Computer Mouse Chart") (collectively, the "Claim Construction Charts"). The Claim Construction Charts describe Claim 12 as "[a] method of operating a computer in an interactive manner . . . [in which] the computer is used in an interactive manner and includes a display monitor *and a mouse*." (*Cordless Mouse Chart* [D.E. 49], Ex. 2, at 1) (emphasis added).

Both charts define each step in Claim 12 through the use of a computer mouse that has a supplementary scrolling means. For example, the Computer Mouse Chart construes the meaning of Step (b) as follows: "[o]ne of ordinary skill in the art would understand that programmed logic in the computer sets a status variable according to the cursor's trail; the Mouse generates a SCROLL variable in the instantaneous value of the roller [sic] exceeds the threshold level." (*Computer Mouse Chart* [D.E. 49], Ex. 2, at 7). In both charts, the method is explained in terms of a computer mouse with a scrolling control means. In the Previous Order, the Court accepted F&G's proposed claim

---

[3] At oral argument on February 22, 2007, counsel for F&G objected to Google's use of the Claim Construction Charts because they were part of written settlement negotiations. The charts, however, were submitted by F&G with its Opposition to Google's Motion for Summary Judgment. Because the charts were submitted by F&G, and Google accepted the claim construction proposed by F&G in those charts for purposes of its Motion for Summary Judgment, it was proper for the Court to consider them.

construction of Claim 12 and evaluated F&G's claims pursuant its own construction of the '229

patent.

> Specifically, the Court construed Claim 12 to
>
> requir[e] the use of a computer mouse, either wired or cordless, to complete the patented method – "to generate scrolling commands to move information items on said display means from said supplementary control signal by operation of said supplementary control means." (*'229 patent* col.15, lns. 46-50). The charts define the term supplementary control means, which is the item used to complete the steps in the method, as the scrolling wheel of a computer mouse as described in other claims of the '229 patent. Consequently, each step of Claim 12 requires the use of a mouse that contains the scrolling means described in the patent specification. Such an interpretation of Claim 12 is proper given the specification of the '229 patent. *See Faroudja Laboratories, Inc.*, 76 F. Supp. 2d at 1003 (noting that "claim elements expressed as a means or step for performing a specified function are construed to cover the corresponding 'structure, material or acts described in the patent specification' and their 'equivalents'") (quoting 35 U.S.C. § 112, ¶ 6).

(*Previous Order* [D.E. 67] at 11) (footnote omitted).

Unhappy with the Previous Order, F&G now contends that its proposed claim construction

should not apply. F&G requests that the Court disregard the proposed claim construction F&G

submitted to the Court and conduct a new construction of Claim 12. Moreover, F&G now maintains

that the method described in Claim 12 does not include any structural limitation.

***Procedural Background***

F&G initiated this lawsuit on June 26, 2006. In its original Complaint [D.E. 1], F&G alleged

that Google is "willfully and deliberately infringing the '229 patent by distributing and selling within

the United States and/or importing into the United States for sale its various lines of scrolling wheel

computer mice." (*Compl*. [D.E. 1] ¶ 7). Upon service of the initial Complaint, Google's in-house

counsel informed F&G's counsel that Google does not sell computer mice and requested that F&G

withdraw the lawsuit.  (*See Decl. of Ramsey M. Al-Salam* [D.E. 43], Ex. B ¶ 2).

Rather than withdraw the lawsuit, on July 6, 2006, F&G filed the Amended Complaint [D.E. 4], alleging infringement by Google through its acts of distribution of "software compatible with the scrolling mouse of the '229 patent."  (*Amd. Compl.* ¶ 7).  The Amended Complaint further alleges that

> Google has provided . . . software [that] constitutes a material part of the invention covered by the '229 patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use and therefore, the use of the software in conjunction with a scrolling mouse, constitutes [contributory] infringement of the '229 patent under 35 U.S.C. § 271(c).

(*Id.* ¶ 11).  F&G also alleges that Google induced infringement of the '229 patent in violation of 35 U.S.C. § 271(b).  Additionally, the Amended Complaint includes more generalized allegations that Google's software directly infringes the '229 patent.  (*See id.* ¶ 7).

In the parties' Joint Discovery Plan and Scheduling Report, filed on October 2, 2006, F&G stated that the Amended Complaint charges Google with contributory infringement based upon Google's distribution of Google Earth ("GE").[4]  (*See Joint Discovery Plan & Scheduling Rep.* [D.E. 26] at 1).  F&G further contended that GE contributorily infringes a method claim in the '229 patent. (*See id.* at 2).  F&G made no reference to any claim of induced infringement or direct infringement in the Joint Discovery Plan.

Based on F&G's representations, on December 19, 2006, Google filed its Motion for

---

[4] As described in more detail in the Previous Order, Google Earth ("GE") is a computer software program that allows users to view and navigate satellite images of the Earth.  (*See Decl. of Brian McClendon* [D.E. 43] ¶ 3).  Google distributes GE to users for free but also offers enhanced versions of GE for a fee, including "Google Earth Plus" and "Google Earth Pro."  (*See id.* ¶ 2).  GE may be used with a keyboard, a computer mouse, or a scrolling computer mouse, which is allegedly covered by the '229 patent.  (*See id.* ¶ 4).

Summary Judgment as to F&G's contributory and inducement of infringement claims. In its Motion, Google contended that GE does not contributorily infringe the '229 patent because GE has substantial noninfringing uses. The undersigned agreed, as explained in the Previous Order. Applying F&G's proposed claim construction of Claim 12, the Court entered summary judgment as to F&G's claims of contributory and induced patent infringement and deferred its ruling on Google's request for attorneys' fees and costs. The Court also concluded that F&G's Amended Complaint could be interpreted to include a claim for direct infringement and that Google's Motion for Summary Judgment did not encompass that claim.

Google contends that thereafter, in an attempt to resolve the direct infringement claim, the parties obtained the assistance of a patent attorney, Patrick Flinn of Alston & Bird in Atlanta, for a neutral evaluation of the likelihood that F&G could prevail on a claim of direct infringement. (*See June 7, 2007 Decl. of Ramsey M. Al-Salam* [D.E. 77], Ex. A ¶ 5; *Google's Brief to Mediator* [D.E. 114], Ex. 5 at 1). According to Google, on May 17, 2007, Mr. Flinn issued his opinion that F&G was unlikely to prevail on a claim of direct infringement. (*See June 7, 2007 Decl. of Ramsey M. Al Salam* ¶ 6).

In contrast to Google's position, F&G contends that Mr. Flinn was not retained to evaluate F&G's direct infringement claim, but was only retained to conduct "an 'early' non-binding read on the scope and meaning of the claim, which this Court abdicated and refused to do." (*Mem. in Support of Cross-Mot. for Summ. J.* [D.E.112] at 5).[5] F&G states that Mr. Flinn's sole conclusion

---

[5] F&G has not submitted an affidavit in support of its contention, nor has either party provided Mr. Flinn's opinion.

was that Claim 12 required hardware to complete the method described. F&G's brief to Mr. Flinn includes a section entitled "Infringement Analysis," in which F&G details its argument that Google's GE software directly infringes Claim 12 of the '229 patent. (*See F&G's Brief to Mediator* [D.E. 114], Ex. 5 at 4-7).

In any event, after Mr. Flinn issued his opinion, Google again requested that F&G drop its remaining claims. (*See June 7, 2007 Decl. of Ramsey M. Al Salam* ¶ 7). F&G declined, and soon thereafter moved the Court to compel Google to produce witnesses for depositions. (*See id.*).

On June 7, 2007 Google filed the present Motion for Reconsideration. Subsequently, on June 13, 2007, F&G filed a Request for Reconsideration on Rulings of Partial Summary Judgment of Non-Infringement, in which it requested "reconsideration of the Court's Ruling of March 27, 2007, granting partial summary judgment of non-infringement based on the user committing direct infringement by using a *scrolling* mouse." (*June 13, 2007 Mot. for Reconsideration* [D.E. 85] at 4).[6] F&G contended, as it does in its present Motion, that the Court should reconsider its Previous Order and conduct a claim construction. (*See id.*). On June 14, 2007, the Court entered an Order denying F&G's Request on the basis that the Court had adopted F&G's proposed claim construction in resolving Google's Motion for Summary Judgment.

On August 3, 2007, F&G filed its Cross Motion for Summary Judgment of Direct Infringement, and in the Alternative for Active Inducement of Infringement [D.E. 108]. In the Motion, F&G requests, *inter alia*, that the Court conduct a new claim construction and reconsider

---

[6] F&G's Request did not clarify which portions of the Previous Order it wished the Court to reconsider. During the September 5, 2007 hearing on F&G's present Motion, however, F&G contended that its June 13, 2007 Request related to the Court's ruling on F&G's contributory infringement claim. (*See Sept. 5, 2007 Hearing Tr.* at 38).

Case No. 06-60905-CIV-ALTONAGA/Turnoff

the Previous Order with respect to F&G's infringement by inducement claim. The Court addresses the parties' motions for reconsideration, cross motions for summary judgment as to F&G's direct infringement claim, and Google's request for attorneys' fees and costs in turn.

## II.  STANDARD OF REVIEW

### A.  Motion for Reconsideration

"Courts will deny a motion for reconsideration unless there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error or manifest injustice." *Spanish Broadcasting System, Inc. v. Clear Channel Communications*, No. 02-21755, 2003 WL 21877614, at *1 (S.D. Fla. Aug. 6, 2003) (citing *Z.K. Marine, Inc., v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). It is well established that arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration. *Gougler v. Sirius Products, Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005) (citation omitted). The reconsideration decision "is vested in the district court's sound discretion, and the grant of a motion to reconsider is an extraordinary remedy employed sparingly." *Center for Biological Diversity v. Hamilton*, 385 F. Supp. 2d 1330, 1337-38 (N.D. Ga. 2005) (citing *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health and Rehabilitative Servs.*, 225 F.3d 1208, 1216 (11th Cir. 2000); *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)).

### B.  Motion for Summary Judgment

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Amer.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## III. ANALYSIS

### A. Google's Motion for Reconsideration

In its Reconsideration Motion, Google contends that the Court erred in the Previous Order by concluding that F&G had set forth a claim of direct patent infringement in the Amended Complaint. Google argues that F&G failed to state a claim for direct infringement because the Amended Complaint does not specifically include a reference to the direct infringement statute, 35 U.S.C. § 271(a), but does, in contrast, explicitly reference 35 U.S.C. §§ 271(b) and (c), the contributory and inducement of infringement statutes, respectively. In addition, Google asserts that because F&G did not mention any claim of direct infringement in the parties' Joint Discovery Plan and Scheduling Report [D.E. 26] or F&G's Reply to Counterclaim [D.E. 23], F&G failed to raise a claim of direct infringement. Google's arguments do not persuade.

Under Federal Rule of Civil Procedure 8(a), a plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, Rule 8(e)(1) requires that pleadings be "simple, concise, and direct." A complaint meets the applicable "notice" pleading standard if it notifies the adverse party of the claim and the proposed relief to a degree sufficient to enable the adverse party to formulate a response. *See*, *e.g., Hamilton v. Allen-Bradley, Co., Inc.*, 244 F.3d 819, 823 (11th Cir. 2001) (holding that a short and plain statement of claim showing entitlement to relief is all that is required) (citations omitted).

F&G's Amended Complaint sufficiently states a claim for direct infringement under the liberal standard of Rule 8. The Amended Complaint alleges, *inter alia*, that the cause of action is one for patent infringement "arising under the united [sic] States Patent Laws at Title 35, United States Code, 35 U.S.C. §§§ 271 et seq.," and that, "as a direct and proximate result of Defendant's *infringement* of the '229 patent, F&G has suffered and continues to suffer damages. . . ." (*Amd. Compl.* ¶¶ 3, 10) (emphasis added). F&G also alleges that the "use of Defendant's software falls within the scope of at least one claim of the '229 patent, thereby its actions constitute acts of infringement of the patent." (*Id.* ¶ 9). Although F&G could have stated its claims in a clearer fashion, these allegations sufficiently placed Google on notice of F&G's direct infringement claim.

Alternatively, Google contends that because its previous motion was entitled "Motion for Summary Judgment" as opposed to "Motion for Partial Summary Judgment," Google's Motion requested that the Court enter summary judgment as to all of F&G's claims, including its direct infringement claim. It is, however, the substance of a motion, not its title, that dictates the relief requested.

Google argues that because, generally, a defendant moving for summary judgment in a patent infringement case need only point out that the patentee "ha[s] no evidence of infringement," it need not raise specific arguments as to F&G's direct infringement claim to succeed on summary judgment. *See Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006). The substance of Google's Motion for Summary Judgment, however, was *silent* as any claim for direct infringement and focused entirely on F&G's contributory and inducement of infringement claims. Google's arguments as to F&G's direct infringement claim were first asserted in Google's Reply

memorandum [D.E. 51], and thus, were not properly presented. *See Pattee v. Georgia Ports Auth.*, 477 F. Supp. 2d 1272, 1274 (S.D. Ga. 2007) (citations omitted); S.D. Fla. L. R. 7.1(C) (stating that "reply memorandum shall be strictly limited to rebuttal"). Consequently, F&G has failed to demonstrate any clear error in the Previous Order.

### B. F&G's Motion for Reconsideration

In its Reconsideration Motion, F&G contends that the Court erred in entering summary judgment in favor of Google as to F&G's inducement of infringement claim. F&G argues that because "this Court abdicated and refused" to conduct a claim construction of Claim 12 before addressing Google's Motion for Summary Judgment, the Previous Order was in error and should be reconsidered. (*See Mem. in Support of Cross-Mot. for Summ. J.* at 5).

F&G asserts that the Court should ignore the Claim Construction Charts *F&G submitted to the Court* in its Opposition to Google's Motion for Summary Judgment,[7] which interpret the method described in Claim 12 to require the use of a mouse containing a scrolling means as described in the '229 patent specification. Instead, F&G argues that the "particular mouse details in the claim are superfluous . . . [because] the method can be embodied in an electronic computer software program or virtual means rather than in a mechanical structure, and thus the mouse details are not limitation in the practice of the method by the interactive user." (*Mem. in Support of Cross-Mot. for Summ. J.* at 7) (citation omitted). According to F&G, under this new claim construction, Google is liable for inducement of infringement by supplying GE software to users who then practice the method

---

[7] During oral argument, F&G's counsel represented that F&G never submitted the Claim Construction Charts to the Court. (*See Sept. 5, 2007 Hearing Tr.* at 40). That representation was incorrect. It was F&G that submitted the Claim Construction Charts for the Court's consideration in its Opposition to Defendant Google Inc.'s Motion for Summary Judgment and for Attorneys' Fees. (*See Claim Construction Charts*).

described in Claim 12 when using GE.

F&G's argument lacks any basis in fact or in law. First, F&G *moved* for a continuance of the claim construction deadlines in both the parties' Joint Motion for Enlargement of Time for Summary Judgment and Claim Construction Briefing [D.E. 45] and in the parties' Joint Motion for Continuance of Claim Construction Deadlines [D.E. 63]. In those joint motions, the parties, including F&G, represented to the Court that "[b]oth parties will benefit if the issues presented therein are resolved before claim construction" and that "the Parties believe it will be beneficial to resolve the issues presented therein before engaging in claim construction." (*Joint Mot. for Enlargement of Time for Summ. J. & Claim Construction Briefing* at 1; *Joint Mot. For Continuance of Claim Construction Deadlines* at 1). Incredibly, at oral argument F&G misrepresented to the Court that it was not a party to either of the motions requesting that the Court postpone claim construction until after a ruling on summary judgment. (*See Sept. 5, 2007 Hearing Tr.* at 37-38).

Similarly, F&G's present insistence that the Court is required to conduct a formal claim construction prior to resolving a motion for summary judgment is equally disingenuous, given F&G's representation in another case pending before the undersigned. F&G has recently filed a cross motion for summary judgment, prior to any claim construction, in *F & G Research, Inc. v. Creative Technology Ltd.*, 06-61748-Civ (S.D. Fla. filed Sept. 5, 2007). Moreover, F&G's position that the Court must conduct a claim construction before ruling on a motion for summary judgment is simply a misstatement of patent law. *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (noting that "a district court may engage in claim construction during various phases of the litigation, not just in a *Markman* order"). For F&G to now contend that the Court "abdicated"

its responsibility to conduct a claim construction, after F&G asked it not to do so, is, for lack of a better word, remarkable.

Second, the claim construction utilized by the Court in the Previous Order was *submitted by F&G in its Opposition to Google's Motion for Summary Judgment.* (*See Claim Construction Charts*). *The Court did not need to conduct a formal claim construction analysis because it accepted F&G's interpretation of Claim 12.* It is proper in a motion for summary judgment to accept the claim construction proposed by the party opposing summary judgment if such construction is not disputed by the moving party. *See Rogers v. Desa Int'l, Inc.*, 166 F. Supp. 2d 1202, 1204 (E.D. Mich. 2001) (applying proposed claim construction for purposes of summary judgment), *aff'd*, 198 Fed. Appx. 918, 921 (Fed. Cir. 2006). Here, Google did not oppose F&G's proposed construction.

F&G now wishes to change its proposed claim construction of Claim 12. At the recent oral argument, F&G stated that the proposed claim construction it submitted to the Court in its Opposition to Google's Motion for Summary Judgment was based on the incorrect assumption that Google sold computer mice. (*See Sept. 5, 2007 Hearing Tr.* at 40-41). F&G asserts that because its proposed claim construction was based upon the erroneous assumption that Google sold mice, it should now be permitted to put forward a new and different claim construction. According to F&G, new information regarding GE obtained during the deposition of Brian McClendon, engineering director for the Google GEO Group, should allow F&G to alter its interpretation of Claim 12. This argument simply does not persuade.

F&G's representation that at the time it submitted the original proposed claim construction to the Court, F&G was unaware that Google did not sell computer mice, is patently false and clearly

16

contradicted by the record. Google put F&G on notice that it did not sell computer mice in June of 2006, and as a result of that information, F&G filed its Amended Complaint on July 6, 2006. Thus, F&G was aware that Google did not sell computer mice for over six months before submitting its original proposed claim construction to the Court.

More importantly, however, is that what Google and GE do or do not do bears no relevance on how Claim 12 is to be construed. Claim construction analysis is independent of the accused infringing device or method. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'") (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) (noting that "the analytical focus of claim construction must begin, and remain centered, on the language of the claims themselves") (citations omitted); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("It is well settled that an infringement analysis involves two steps: the claim scope is first determined, *and then* the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent.") (citation omitted) (emphasis added).

F&G's reliance on *Beckson Marine Inc. v. NFM, Inc.*, 292 F.3d 718, 726 (Fed. Cir. 2002), for the proposition that F&G may alter its construction of Claim 12 at this stage of the litigation, is misplaced. *Beckson Marine* held that a patentee's previous infringement claim against what it later discovered was prior art did not, without more, constitute an admission that the patent was invalid as obvious or already anticipated by prior art. *See id. Beckson Marine* does not support F&G's

17

argument that F&G may completely alter its construction of Claim 12 because its earlier construction was submitted before F&G had a "clear" understanding of Google and/or GE's operations.

F&G proposed a claim construction for Claim 12, and the Court accepted it. F&G cannot now ask the Court to revisit the construction of Claim 12 simply because it is displeased with the result. Because reconsideration of the Court's Previous Order is unwarranted, the Court now turns to the parties' respective Cross Motions for Summary Judgment as to F&G's direct infringement claim.

### C. The Cross Motions for Summary Judgment as to Direct Infringement

The parties move for summary judgment as to F&G's remaining claim for direct infringement. Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." "To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (citation omitted)..

However, "[u]nder section 271(a), the concept of 'use' of a patented method or process is fundamentally different from the use of a patented system or device." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (citations omitted). Moreover, "'[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.'" *Id.* at 1318 (quoting *Roberts Dairy Co. v. United States*, 530 F.2d 1342, 1354 (Ct. Cl. 1976)). Consequently, a method claim is not directly infringed by a party that

Case No. 06-60905-CIV-ALTONAGA/Turnoff

does not perform any of the claim's operative steps. *See epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 629 (E.D. Tex. 2007).

F&G claims that Google, through its distribution of the GE program to users, directly infringes Claim 12 of the '229 patent. According to F&G, GE's navigation compass, which users may manipulate *via* any mouse or keyboard to generate scrolling commands "accurately and literally reads on" portions of the method described in Claim 12. (*Mem. in Support of Cross-Mot. for Summ. J.* at 9). F&G contends that Google's distribution of GE to users constitutes a direct infringement of Claim 12 under F&G's new construction of the claim, which construes the method as not requiring the use of a scrolling mouse, or any mouse for that matter. (*See id.* at 11, 14).

F&G's claim for direct patent infringement fails, however, as a matter of law, because Claim 12 is a method claim.[8] A method claim is infringed only by *practicing* the method. *See NTP, Inc.*, 418 F.3d at 1319 ("'A method claim is *directly* infringed only by one practicing the patented method.'") (quoting *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993)) (emphasis in original). The sale of or distribution of computer software cannot constitute direct infringement of a method claim. *See Enpat, Inc. v. Microsoft Corp.*, 26 F. Supp. 2d 811, 814 (E.D. Va. 1998) (noting that the distribution of computer software cannot constitute direct infringement of a method claim because such a claim "is infringed only by practicing the patented method"). Consequently, even assuming that F&G's new claim construction applied and that the GE software directly reads upon the steps described in Claim 12, Google's distribution of GE cannot directly infringe Claim 12

---

[8] It is undisputed that Claim 12 is a method claim. (*See, e.g., Sept. 5, 2007 Tr.* at 39).

19

pursuant to 35 U.S.C. § 271(a).[9]

As all of F&G's claims have now been fully adjudicated, the Court now turns to Google's request for attorneys' fees and costs pursuant to Fed. R. Civ. P. 11 and 35 U.S.C. § 285.

### D. Google's Request for Attorneys' Fees and Costs

In its initial Motion for Summary Judgment, Google requested its attorneys' fees and costs in defending the lawsuit because F&G's allegations and submissions to the Court were rife with frivolous factual and legal assertions. Google contended that the allegation that Google sold computer mice, made in the original Complaint, was frivolous and demonstrated a lack of reasonable inquiry on the part of F&G's counsel, Mr. Allen Brufsky and the law firm of Christopher & Weisberg, P.A..[10] In addition, Google argued that the claims for direct infringement, contributory infringement, and inducement of infringement made by F&G in the Amended Complaint and advanced in F&G's briefs were frivolous and were based upon misstatements of both fact and patent law.

### 1. Standard of Review

Federal Rule of Civil Procedure 11 imposes a duty upon an attorney to certify by his or her

---

[9] F&G argues that distribution of software that would perform a patented method may constitute direct infringement under 35 U.S.C. 271(a). In support, F&G relies on *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005). *Eolas Tech.*, however, involved a product claim, not a method claim. *See id.* at 1330. Moreover, the portion of the *Eolas Tech.* opinion cited by F&G addresses not a claim of direct infringement but rather the scope of 35 U.S.C. § 271(f), which relates to the export of patented components from the United States.

[10] On February 13, 2007, the Court entered an Order granting Christopher & Weisberg, P.A.'s Unopposed Motion for Withdrawal and Substitution of Counsel and substituting Allen D. Brufsky of Allen D. Brufsky, P.A. as counsel for F&G. Mr. Brufsky, who has been named counsel for F&G from the inception of the case, apparently parted ways with Christopher & Weisberg, P.A. and is now F&G's sole counsel. Because Christopher & Weisberg, P.A. and its attorneys were named counsel for F&G until February 13, 2007, a portion of the sanctions issued in this Order shall apply to Christopher & Weisberg, P.A. and its attorneys Allen M. Weisberg and Joseph R. Englander in addition to Mr. Brufsky. Members of Christopher & Weisberg, P.A. were present during and participated in the February 22, 2007 hearing on Google's Motion.

signature that, to the best of the attorney's knowledge, information and belief formed after an inquiry reasonable under the circumstances, the pleading, written motion, or other paper that the attorney filed with the court (1) is not being presented for any improper purpose and that (2) the claims, defenses, and other legal contentions presented are warranted by existing law, or by a nonfrivolous argument for the extension of existing law; (3) the allegations and other factual contentions have evidentiary support, or are likely to have evidentiary support; and (4) any denials of factual contentions have evidentiary support, or are based upon a lack of information. *See* Fed. R. Civ. P. 11(b). In addition, Rule 11 "reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making [] representations to the court for an improper purpose." *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1225 (M.D. Fla. 2004) (citing Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendments).

Rule 11 sanctions are justified in a patent case when the claims alleged are neither well-founded nor the subject of a reasonable inquiry. *See View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 985 n.4 (Fed. Cir. 2000) (affirming the imposition of Rule 11 sanctions to defendant's counterclaims for patent infringement because defendant had no factual basis for counterclaims). "[O]ral statements that 'later advocat[e]' untenable contentions made in previously-filed papers are sanctionable under Rule 11," as well. *Phonometrics, Inc. v. Econ. Inns of Am.*, 349 F.3d 1356, 1361 (Fed. Cir. 2003) (citation omitted).

"In deciding the propriety of Rule 11 sanctions, a Court first determines whether the party's claims are objectively frivolous and then, if so, whether the signatory to the pleading should have been aware that they were frivolous – whether he would have been aware of the frivolousness if he had

made a reasonable inquiry." *Footman*, 314 F. Supp. 2d at 1224 (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996); *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)).  If the attorney failed to make such a reasonable inquiry, the court *must* impose sanctions. *See Universal Communications Sys., Inc. v. Turner Broad. Sys., Inc.*, 2005 WL 3956648, at *1 (S.D. Fla. 2005) (citing *Worldwide Primates, Inc.*, 87 F.3d at 1254).

Similarly, 35 U.S.C. § 285 provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party."  A case is deemed "exceptional" when the plaintiff has engaged in "misconduct during litigation," "vexation or unjustified litigation," or a "frivolous suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (citation omitted). "A suit is frivolous where the patentee knew, or should have known by reasonable investigation, that the suit was groundless." *Enpat, Inc.*, 26 F. Supp. 2d at 813 (citing *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993)).

A case is also deemed "exceptional" when a patentee maintains its claims after realizing, or on reasonable investigation should know, that its claims are baseless. *See Phonometrics, Inc. v. Choice Hotels Int'l, Inc.*, 186 F. Supp. 2d 1231, 1232 (S.D. Fla. 2002) (citation omitted).  Moreover, "a court may infer bad faith where a 'patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court.'" *Enpat, Inc.*, 26 F. Supp. 2d at 813 (quoting *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990)).  When considering a request for attorney fees under § 285, "the trial judge undertakes a two-step inquiry: he or she must determine whether there is clear and convincing evidence that the case is 'exceptional,' and if so, whether an award of attorney fees to the prevailing party is warranted." *Interspiro USA, Inc. v. Figgie Int'l Inc.*,

Case No. 06-60905-CIV-ALTONAGA/Turnoff

18 F.3d 927, 933 (Fed. Cir. 1994) (citation omitted).

With these precepts at hand, the Court considers whether F&G's pleadings and other submissions to the Court warrant sanctions under Fed. R. Civ. P. 11 and 35 U.S.C. § 285.

> ### 2. F&G's Pleadings, Submissions to the Court, and Statements Made During Oral Argument Warrant Sanctions.

This case should have never been filed. As evinced by its initial Complaint and its subsequent submissions to the Court, F&G has put forth frivolous legal claims and has failed to conduct any reasonable inquiry into either the facts of the case or the applicable law. On multiple occasions, F&G was correctly informed by Google and an independent mediator, Mr. Flinn, that its legal theories were baseless.

F&G, however, has failed to heed those warnings and continues to litigate this matter. In doing so, F&G's counsel has continually misrepresented the factual record and the law in submissions to the Court and during oral argument. As a result, Google has been forced to expend significant time and resources defending a baseless lawsuit, and the Court has devoted its resources to address issues that should have never been before it. Indeed, the purpose of Rule 11 and 35 U.S.C. § 285 is to prevent cases such as this one from being filed.

> ### a. F&G's Initial Complaint

F&G's initial Complaint clearly warrants Rule 11 and 35 U.S.C. § 285 sanctions. In its initial Complaint, F&G alleged that Google was "willfully and deliberately infringing the '229 patent by distributing and selling within the United States and/or importing into the United States for sale its various lines of scrolling wheel computer mice." (*Compl.* ¶ 7). It is common knowledge that Google does not sell or distribute computer mice. A two-minute perusal of Google's website,

23

Case No. 06-60905-CIV-ALTONAGA/Turnoff

www.google.com, would have informed counsel for F&G of this fact.

The allegations made in the initial Complaint were frivolous, lacked any reasonable factual basis, and demonstrate that counsel made no reasonable inquiry into the veracity of the allegations. Indeed, it appears that F&G merely cut and pasted Google's name into its stock pleadings, of which the Court is familiar.[11] Consequently, F&G's filing of its initial Complaint mandates an award of sanctions against F&G's counsel pursuant to Rule 11. *See View Engineering, Inc.*, 208 F.3d at 985 n.4. Moreover, because the claims made in the initial Complaint were frivolous, an award of sanctions against F&G is also proper pursuant to 35 U.S.C. § 285. *See Enpat, Inc.*, 26 F. Supp. 2d at 813.

Upon service of the initial Complaint, Google's in-house counsel informed F&G's counsel that Google does not sell computer mice and requested that F&G withdraw the lawsuit. (*See Decl. of Ramsey M. Al-Salam* ¶ 2). F&G did not do so. Instead, F&G filed its Amended Complaint, alleging direct infringement, contributory infringement, and inducement of patent infringement by Google through its acts of distribution of "software compatible with the scrolling mouse of the '229 patent." (*Amd. Compl.* ¶ 7). F&G's claims, as stated in the Amended Complaint and enunciated in the Opposition to Google's Motion for Summary Judgment and F&G's Cross Motion for Summary Judgment, were similarly frivolous and demonstrate an unreasonable interpretation of patent law.

As discussed *supra*, F&G proposed a claim construction for Claim 12 in its Opposition to Google's Motion for Summary Judgment that was unopposed by Google and subsequently adopted

---

[11] F&G has a number of cases before the undersigned, and in each case, F&G's complaint is nearly identical to the initial Complaint filed regarding the '229 patent. *See, e.g.*, *F & G Research, Inc. v. Wal-Mart Stores, Inc.*, 07-60928-Civ; *F & G Research, Inc. v. Micro Innovations Corp.*, 06-61746-Civ; *F & G Research, Inc. v. Creative Tech. Ltd.*, 06-61748-Civ; and *F & G Research, Inc. v. Paten Wireless Tech., Inc.*, 06-60292-Civ.

24

by the Court for purposes of adjudicating Google's Motion for Summary Judgment. F&G's claim construction provided that each step of Claim 12 requires the use of a mouse that contains a scrolling means described in the patent specification. (*See generally, Claim Construction Charts*). In other words, a scrolling mouse is required to practice the method described in Claim 12. Given that construction of Claim 12, F&G's contributory and inducement of infringement claims, as stated in its Opposition to Google's Motion for Summary Judgment, were based upon objectively frivolous legal theories.

### b. *F&G's Contributory Infringement Claim*

F&G's claim for contributory infringement pursuant to 35 U.S.C. § 271(c) was objectively frivolous because it ran contrary to F&G's own proposed initial claim construction.[12] A patentee asserting a contributory infringement claim must demonstrate, *inter alia*, that the item sold by the defendant is not a staple article or commodity of commerce suitable for substantial noninfringing use. *See Scandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp. 2d 1327, 1331 (N.D. Cal. 2000). F&G argued that Google's distribution of GE is contributory patent infringement because GE utilizes a material part of the method in Claim 12, which in turn permits users to carry out and infringe the process stated in Claim 12. (*See Opp. to Summ. J.* at 7). It was undisputed, however, that GE is capable of substantial noninfringing uses – GE may be used with a licensed scrolling mouse, keyboard, or non-scrolling mouse. (*See Statement of Undisputed Facts* [D.E. 50] ¶¶ 6-7). Given F&G's construction of Claim 12, its contributory infringement claim, in light of the agreed, undisputed facts of this case, was objectively baseless.

---

[12] The March 29, 2007 Order Granting Partial Summary Judgment provides more detailed discussion as to why F&G's contributory infringement claim had no reasonable basis in law.

Instead of abandoning the claim, however, F&G put forth two legal arguments that contradicted its own claim construction of Claim 12 and misstated patent law. First, F&G contended that the method in Claim 12 is completely embodied in GE and does not require the use of a scrolling mouse. According to F&G, by distributing GE, Google aids users who would directly infringe the '229 patent by using GE even with a licensed scrolling mouse. F&G's argument ran contrary to its own claim construction for Claim 12, which clearly indicated that the method requires the use of the scrolling mouse described in the patent. F&G's argument was objectively unreasonable given F&G's own claim construction, and as the author of its proposed claim construction, F&G must have been aware of this inconsistency. Indeed, making contradictory arguments "give[s] rise to an inference that at least one half of each mutually exclusive pairing is a potential violation of Rule 11(b)(2)." *HD Brous & Co., Inc. v. Mrzyglocki*, 2004 WL 376555, at *14 (S.D.N.Y. 2004) (issuing order to show cause why party has not violated Rule 11 by proffering contradictory arguments).

Second, F&G argued that the use of a licensed scrolling mouse by GE users should not be considered a noninfringing use pursuant to 35 U.S.C. § 271(d). F&G's reliance on section 271(d) was a clear misstatement of patent law. The purpose of section 271(d) is to declare certain practices not to be patent misuse even though those practices might otherwise be subject to scrutiny under antitrust laws. *See U.S. Philips Corp. v. Int'l Trade Com'n*, 424 F.3d 1179, 1185-86 (Fed. Cir. 2005). Section 271(d) does not apply to F&G's claim.

Consequently, F&G's argument was at best an unwarranted extension of a legal argument, and at worst a blatant misstatement of law. Either way, F&G's actions warrant sanctions under Rule 11 and 35 U.S.C. § 285. *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991)

Case No. 06-60905-CIV-ALTONAGA/Turnoff

(affirming grant of Rule 11 sanctions where the plaintiffs presented "no argument, let alone good faith argument" for the reversal or modification of existing law); *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 279 (7th Cir. 1989) (affirming issuance of Rule 11 sanctions on party for misstatement of law and fact); *Enpat, Inc.*, 26 F. Supp. 2d at 814 (awarding attorneys' fees pursuant to 35 U.S.C. § 285 for raising infringement claims lacking any basis in law).

### c. *F&G's Inducement of Infringement Claim*

F&G's inducement of infringement claim suffers the same infirmity as its contributory infringement claim.[13] To succeed in an inducement of infringement claim, a plaintiff must establish (1) direct infringement of its patent; (2) that the defendant's actions induced infringing acts; and (3) that the defendant knew or should have known that its actions induce actual infringement. *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348-49 (Fed. Cir. 2003) (citation omitted). In addition, a plaintiff has the burden to demonstrate that the defendant was aware of the patent and actively and knowingly aided and abetted another's direct infringement. *See DSU Med. Corp. v. JMS Co, Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (citation omitted). As stated in its Opposition to Google's Motion for Summary Judgment, F&G contended that Google had knowledge of the '229 patent and through its distribution of GE to consumers, Google induced infringement because it was aware that the software could be used with unlicensed scrolling computer mice.

F&G's claim lacked any reasonable basis in law or fact. Initially, the undersigned notes that the Amended Complaint included no allegation that Google received notice or otherwise knew of the patent before F&G's initial Complaint was filed. Moreover, it was undisputed that GE does not

---

[13] The March 29, 2007 Order Granting Partial Summary Judgment provides more detailed discussion as to why F&G's inducement of infringement claim had no reasonable basis in law.

require the use of an unlicensed scrolling mouse, the only possible way that Claim 12 in the '229 patent could be infringed by GE users pursuant to F&G's proposed claim construction. Indeed, as with F&G's contributory infringement claim, F&G's proposed claim construction failed to support its theory of induced infringement.

In addition, the only evidence presented by F&G to demonstrate Google's specific intent was that the GE manual provides instructions on how to use the program with a scrolling mouse. That argument was baseless considering that the instructions also include explanations on how to use GE without a mouse. Even if the instructions only explained how to use GE with a scrolling mouse, F&G's claim would still fail because the instructions would benefit users who use licensed computer mice with GE, which does not directly infringe the '229 patent. Consequently, the Court concludes that F&G's inducement of infringement claim lacked any reasonable basis in fact or law, and F&G should have known, after making a reasonable inquiry, that this was the case.

### d.  *F&G's Direct Infringement Claim*

F&G's claim of direct infringement, as already discussed in detail, also lacked any legal support and included a blatant misstatement of patent law. Specifically, F&G's contention that a defendant may directly infringe a patent by distributing software that permits users to practice the patented method is a clear misstatement of law. It is a "basic patent principle that a method claim is infringed only by practicing the patented method." *Enpat, Inc.*, 26 F. Supp. 2d at 814.

The case upon which F&G relies, *Eolas Tech. Inc.*, 399 F.3d at 1339, in no uncertain terms, does not support F&G's position. As already discussed, *Eolas* involved a product claim, not a method claim. *See id.* Indeed, at least one other court has imposed sanctions, pursuant to 35 U.S.C.

§ 285, on a patentee who advanced the identical argument. *See id.* (imposing sanctions on patentee for arguing that sale and distribution of software directly infringed its method claim). Moreover, F&G was put on notice that its direct infringement claim lacked merit *via* the opinion of Mr. Flinn. (*See June 7, 2007 Decl. of Ramsey M. Al-Salam* ¶ 5).

F&G's claim for direct infringement had no legal basis and was, at best, an unreasonable misunderstanding of patent law formed as a result of counsel's failure to conduct a reasonable inquiry, and, at worst, a deliberate misstatement of law intended to deceive the Court. Either way, F&G's claim was frivolous and merits sanctions pursuant to Rule 11 and 35 U.S.C. § 285.

### e.  *F&G's Arguments Regarding Claim Construction*

F&G's contention, made in its Cross Motion for Summary Judgment and at the September 5, 2007 hearing, that the Court had "abdicated" its responsibility by not conducting a claim construction for Claim 12 of the '229 patent before ruling on Google's Motion for Summary Judgment, also warrants sanctions. In essence, F&G argued that the Court should reconsider the Previous Order because it failed to conduct a full claim construction of Claim 12 of the '229 patent. F&G also proposed a new claim construction for Claim 12, which was completely at odds with the earlier claim construction F&G had presented to the Court. F&G's arguments and misrepresentations demonstrate F&G's counsel's failure to make a reasonable inquiry into the '229 patent itself and patent law.

First, F&G's contention that the Court erred by not conducting a claim construction before ruling on Google's Motion for Summary Judgment is a misstatement of the record and of patent law. F&G's representation was contradictory to its earlier motions in which it requested that the Court

resolve the issues presented in Google's Motion for Summary Judgment *prior* to conducting a claim construction. (*See Joint Mot. for Enlargement of Time for Summ. J. & Claim Construction* at 1) ("Both parties will benefit if the issues presented therein are resolved *before claim construction*, and the parties have accordingly requested commensurate extensions of the claim construction briefing deadlines.") (emphasis added); (*Joint Mot. for Continuance of Claim Construction Deadlines* at 1) ("Given the nature of the Summary Judgment Motion, the Parties believe it will be beneficial to resolve the issues presented therein before engaging in claim construction."). Amazingly, at oral argument counsel for F&G denied having filed those motions. (*Sept. 5, 2007 Hearing Tr.* at 38). That denial was a misstatement of the record. (*See Joint Mot. for Enlargement of Time for Summ. J. & Claim Construction* at 1). F&G's argument that the Court had erred in not conducting a claim construction, after F&G had previously asked the Court not to do so, was blatantly frivolous.

In addition, F&G's contention that the "law on the subject of determining patent infringement is set in stone" and requires the Court to first conduct a claim construction before ruling on a motion for summary judgment, was patently incorrect. (*Mem. in Support of Cross-Mot. for Summ. J.* at 2). As already discussed, it is proper to conduct a claim construction during various phases of the litigation; there is no requirement that the Court conduct a formal claim construction before ruling on a motion for summary judgment. *See Conoco, Inc.*, 460 F.3d at 1359. More importantly, however, the Court did adopt a claim construction for Claim 12 – F&G's own proposed construction – when analyzing Google's Motion for Summary Judgment. And, even more telling are the actions of F&G, through the same counsel, in filing a cross motion for summary judgment before claim construction in *F & G Research, Inc. v. Creative Tech. Ltd.*, 06-61748-Civ (S.D. Fla. filed Sept. 5,

2007), demonstrating that F&G could not have believed in good faith that the legal theory presented here was correct.  Indeed, such action clearly demonstrates that F&G's argument was frivolous, raised in bad faith, and warrants sanctions pursuant to Rule 11 and 35 U.S.C. § 285.

Second, as explained in section III(B) *supra*, F&G's attempt to propose an alternate claim construction of Claim 12 in its cross motion lacked any basis in law and demonstrates that F&G's Cross Motion for Summary Judgment was filed in bad faith.  The undersigned has already addressed the factual and legal infirmities of F&G's argument and does not repeat them here.  The Court stresses that F&G's argument was clearly frivolous and that its attempt to propose a new claim construction for Claim 12 at this stage in the litigation demonstrates, at best, that F&G's initial claim construction was submitted without counsel for F&G undertaking a reasonable inquiry of the '229 patent, and, at worst, that F&G submitted its initial proposed claim construction for the improper purpose of misleading Google and the Court as to the method described in Claim 12.

### 3. *Google Should be Awarded Attorneys' Fees and Costs*

The undersigned concludes that F&G's counsel failed to conduct a reasonable inquiry into the matter and that counsel's initiation of this lawsuit and the subsequent submissions were frivolous and done in bad faith.  Accordingly, pursuant to Rule 11, sanctions in the form of an award of attorneys' fees and costs to Google should be imposed upon F&G's counsel.  *See Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) ("One aspect of a court's inherent power is the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

In addition, the Court concludes that there is clear and convincing evidence demonstrating that this case is "exceptional" pursuant to 35 U.S.C. § 285. Therefore, F&G shall also be liable for a portion of Google's attorneys' fees. *See generally, Enpat, Inc.*, 26 F. Supp. 2d at 814 (awarding attorneys' fees to prevailing party in patent infringement suit); *Kaehni v. Diffraction Co.*, 342 F. Supp. 523, 536 (D. Md. 1972) (noting that 35 U.S.C. § 285 is to apply to the parties and not the parties' counsel). Counsel for Google estimates that Google has incurred approximately $125,000 in attorneys' fees and costs in connection with this case. (*See June 7, 2007 Decl. of Ramsey M. Al-Salam* ¶ 8). The undersigned, however, reserves a determination as to the amount and any apportionment between F&G and its counsel until the conclusion of any appeal, or until this case becomes final, whichever should occur first. At that time, Google may file an affidavit detailing all of the attorneys' fees and costs it has expended throughout the course of this litigation and a proposed order awarding such fees and costs.

## IV.  CONCLUSION

In accordance with the foregoing analysis, it is

**ORDERED AND ADJUDGED** as follows:

1. Google's Motion for Attorneys' fees **[D.E. 43]** is **GRANTED**. Upon the conclusion of this case and any appeals, Google may submit an affidavit detailing all of the attorneys' fees and costs it has expended throughout the course of the case.

2. Google's Motion for Reconsideration of Summary Judgment Order or, in the Alternative, For Summary Judgment on Issue of Direct Infringement **[D.E. 77]** is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion, as it pertains to Google's Motion for Reconsideration of

Case No. 06-60905-CIV-ALTONAGA/Turnoff

Summary Judgment Order, is **DENIED**.  The Motion, as it pertains to Google's Motion for Summary Judgment on the Issue of Direct Infringement, is **GRANTED**.

3.  F&G's Cross Motion for Summary Judgment, and in the Alternative for Active Inducement of Infringement **[D.E. 108]** is **DENIED**.

4.  The Clerk of the Court is instructed to **CLOSE** the case, and all pending motions are **DENIED AS MOOT**.

5.  A final judgment will be entered separately pursuant to this Order.

**DONE AND ORDERED** in Chambers at Miami, Miami-Dade County, Florida, this 20th day of September, 2007.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   Magistrate Judge William C. Turnoff
      counsel of record
      Alan Michael Weisberg, Esq.
      Joseph Robert Englander, Esq.

33